**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 1 5 2019

IN THE UNITED STATES DISTRICT COURT JAMES W. McCORMACK, CLERK
EASTERN DISTRICT OF ARKANSAS By:— ~~~~~~~~
DEP CLERK

GRACIE FOSTER,
PEARLIE BOYD,
MONICA ROBINSON,
JODIE ROSKYDOLL,
JOE ESQUIVEL,
CHRIS PETTIT,
TALITHA HOFFLERR-FRAZIER,
LEONSHAY TULLER,
JOHN ALMQUIST, JR.,
FREDERICK COFFEY,
GLORIA CZIGLE,
TORRIN PERRY,
JESSICA BEALL,
AMANDA RHORER,
KRIS CUNNINGHAM,
MARY SUSAN DUBINSKY,
DIANNE WALTON,
AMY SLANE,
TINA BROWN,
JENNIFER EDMARK,
LILLIAN RUDD,
DONNIE BROWN,
JUSTIN CASTILYN,
CLARENCE GATEN,
BRENDA SHALEY,
RYAN D'ANGELO,
BRIAN RUSH,
HEIDI HORNE,
T.W. PRESCOTT,

                    Plaintiffs.

v.


WALMART, INC.,

WALMART STORES OF
ARKANSAS LLC and

WALMART STORES EAST, L.P.,

                    Defendants.

CASE NO.  4:19-cv-571-BSM

This case assigned to District Judge ___Miller___
and to Magistrate Judge___Kearney___

## COMPLAINT – CLASS ACTION

Plaintiffs identified below, individually and on behalf of the Classes defined below of similarly situated persons, file this Class Action Complaint. Plaintiffs allege the following claims against Walmart Stores East, L.P., Walmart, Inc., and Walmart Stores Arkansas, LLC (collectively referred to in this complaint as "Walmart" or "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## STATEMENT OF JURISDICTION AND VENUE

This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(B). This action is filed under rule 23 of the Federal Rules of Civil Procedure, is brought by one or more representative persons as a class action, at least one plaintiff is diverse from at least one defendant, the action involves an amount in controversy requirement greater than $5 million (including compensatory, statutory, and punitive damages, as well as attorneys fees and equitable relief). There are more than 100 putative class members.

This Court has jurisdiction over the Defendants because the company maintains it principal places of business in Arkansas, regularly conducts business in Arkansas, and has sufficient minimum contacts in Arkansas. Defendants intentionally avail themselves to this jurisdiction by marketing and selling products from Arkansas to millions of consumers nationally, including in Arkansas.

Venue is proper under 28 U.S.C. § 1391(d) in that Walmart resides in the Eastern District of Arkansas because it is subject to the court's personal jurisdiction with respect to the civil action in the Eastern District of Arkansas in that its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state because a substantial portion of the events concerning representative plaintiff Jodie Roskydoll ("Plaintiff Roskydoll") occurred at or

near Humnoke, Arkansas, located southeast of Little Rock, and the Defendants committed one or more of the tortious and illegal acts described herein in the Eastern District of Arkansas.

## SUMMARY OF ACTION

1.      For a number of years Walmart has been aware that thousands of Walmart Gift Cards it sold to consumers across the United States had been tampered with before Walmart sold the Gift Cards. Walmart knew that scammers would enter its stores, remove the security tape from its Gift Cards, log the card's PIN, and use the PIN to remove customer funds after the customer loaded money onto the Gift Card. Consumers have lost millions of dollars that they loaded onto the Gift Cards because Walmart failed to take adequate and reasonable measures to ensure that scammers did not tamper with the Gift Cards and failed to disclose to its customers the material fact that it was possible that the Gift Cards had been tampered with. These failures, among others, caused substantial consumer harm and injuries to consumers across the United States.

2.      The exact number of Walmart customer affected by Walmart's failure to secure the Gift Card number and PIN is unknown; however, Walmart is the United States' largest retailer with gross revenues in excess of $485,000,000,000.00. It is likely that thousands of customers have been harmed and suffered losses totaling millions of dollars.

3.      Plaintiffs seek to remedy these harms, and prevent their future occurrence, on behalf of themselves and all similarly situated consumers whose Gift Card funds were stolen as a result of Walmart's failures. Plaintiffs assert claims against Walmart for violations of state consumer laws, negligence, breach of implied contract, bailment, and unjust enrichment. On behalf of themselves and all similarly situated consumers, Plaintiffs seek to recover damages, including actual and statutory damages, exemplary and/or punitive damages as allowed, and

equitable relief, including injunctive relief to abate the practice and prevent a reoccurrence of the Gift Card tampering, restitution, disgorgement and costs and reasonable attorney fees.

**PARTIES**

4.      Plaintiffs identified below and the proposed classes include all persons in the United States who purchased compromised Walmart Gift Cards from Walmart retail stores, and who loaded money onto the Gift Card, and who either (a) had the funds loaded on the Gift Card used by a third party as a result of the tampering or (b) had the cards deactivated by Walmart prior to use and where Walmart refused to replace the card, reactivate the card or refund the money loaded on the card ("Gift Cards").

5.      Plaintiff Pearlie Boyd ("Plaintiff Boyd"), a citizen and resident of Pinson, Alabama, purchased a Walmart Gift Card in June 2017 and loaded $50.00 onto the card. She tried to use the Gift Card later that month, but the funds had already been used by a third party.

6.      Plaintiff Monica Robinson ("Plaintiff Robinson"), a citizen and resident of Tucson, Arizona, purchased a Walmart Gift Card and loaded $20.00 on the card. When she attempted to use the Gift Card two months later, she was unable to do so because the funds had already been used by a third party or because Walmart had deactivated her Gift Card account.

7.      Plaintiff Jodie Roskydoll ("Plaintiff Roskydoll"), a citizen and resident of Humnoke, Arkansas, purchased a Walmart Gift Card on August 3, 2018 and loaded $75.00 onto the ecard. She tried to use the card on August 18, 2018, but Walmart had already deactivated her Gift Card account. Plaintiff Roskydoll subsequently filed a complaint with Walmart online.

8.      Plaintiff Joe Esquivel ("Plaintiff Esquivel"), a citizen and resident of Brawley, California, purchased a Walmart Gift Card on November 7, 2017 and loaded $100.00 on the card. When he attempted to use the card on December 20, 2017, Walmart had already

deactivated his Gift Card account. Plaintiff Esquivel complained about the loss of his Gift Card funds at the local Walmart store and with Walmart's main customer service department.

9.      Plaintiff Chris Pettit ("Plaintiff Pettit"), a citizen and resident of Loveland, Colorado, purchased a Walmart Gift Card on September 10, 2017 and loaded $500.00 onto the card. When he attempted to use the Gift Card on September 15, 2017 the funds had already been used by third parties. Plaintiff Pettit filed a complaint with Walmart online and at the local Walmart store.

10.      Plaintiff Talitha Hofflerr-Frazier ("Plaintiff Hofflerr-Frazier"), a citizen and resident of Bridgeport, Connecticut, purchased a Walmart Gift Card on December 3, 2017 and loaded $35.00 onto the Gift Card. When she attempted to use the Gift Card on December 26, 2017, Walmart had already deactivated her Gift Card account. Plaintiff Hofflerr-Frazier filed a complaint with Walmart online and at the local Walmart.

11.      Plaintiff Leonshay Tuller ("Plaintiff Tuller"), a citizen and resident of Wilmington, Delaware, purchased a Walmart Gift Card on November 15, 2018 and loaded $300.00 onto the Gift Card. When Plaintiff Tuller attempted to use the Gift Card on December 5, 2018, Walmart had already deactivated the Gift Card account. Plaintiff Tuller filed a complaint with Walmart's customer service department.

12.      Plaintiff John Almquist, Jr. ("Plaintiff Almquist"), a citizen and resident of Washington, District of Columbia, purchased a $500.00 Walmart Gift Card on July 3, 2017. When Plaintiff Almquist attempted to use the Gift Card the next day, Walmart had already deactivated his Gift Card account. He complained at the local Walmart store about the deactivation.

13.     Plaintiff Frederick Coffey ("Plaintiff Coffey"), a citizen and resident of Urbana, Illinois, purchased a Walmart Gift Card on October 11, 2018 and loaded $200.00 onto the Gift Card. When he attempted to use the Gift Card on December 5, 2018, Walmart had already deactivated the Gift Card account. Plaintiff Coffey filed a complaint with Walmart online.

14.     Plaintiff Gloria Czigle ("Plaintiff Czigle"), a citizen and resident of Arlington Heights, Illinois, purchased a Walmart Gift Card on July 17, 2017 and loaded $350.00 onto the Gift Card. When she attempted to use the Gift Card on July 18, 2017, Walmart had already deactivated the Gift Card account. Plaintiff Czigle filed a complaint with Walmart's customer service department.

15.     Plaintiff Torrin Perry ("Plaintiff Perry"), a citizen and resident of Chicago, Illinois, purchased a Walmart Gift Card on December 18, 2017, loaded $100.00 onto the Gift Card, and gave the Gift Card to a friend. When Plaintiff Perry's friend attempted to use the Gift Card, the funds had already been used by third parties. Plaintiff Perry complained at the local Walmart store and filed a complaint with Walmart's customer service department.

16.     Plaintiff Jessica Beall ("Plaintiff Beall"), a citizen and resident of Muncie, Indiana purchased a Walmart Gift Card on September 12, 2018 and loaded $150.00 onto the Gift Card. When she attempted to use the Gift Card the next day, Walmart had already deactivated the Gift Card account. Plaintiff Beall complained at the local Walmart store and filed a complaint with Walmart's customer service department.

17.     Plaintiff Amanda Rohrer ("Plaintiff Rohrer"), a citizen and resident of Victoria, Kansas, purchased a Walmart Gift Card in October 2017 and loaded $300.00 onto the Gift Card. When she attempted to use the Gift Card in December 2018, Walmart had already deactivated

the Gift Card account. Plaintiff Rohrer called and complained to Walmart's customer service department.

18.     Plaintiff Kris Cunningham ("Plaintiff Cunningham"), a citizen and resident of Hebron, Kentucky purchased a Walmart Gift Card on October 15, 2018 and loaded $125.00 onto the Gift Card. When Plaintiff Cunningham attempted to use the Gift Card on November 3, 2018, the funds had already been used by third parties. Plaintiff Cunningham complained at the local Walmart store and filed a complaint with Walmart's customer service department.

19.     Plaintiff Mary Susan Dubinsky ("Plaintiff Dubinsky"), a citizen and resident of Greenwell Springs, Louisiana, purchased a Walmart Gift Card on September 22, 2018 and loaded $300.00 on the Gift Card. When she attempted to use the Gift Card on November 20, 2018, the funds had already been used by third parties. Plaintiff Dubinsky filed a complaint with Walmart's customer service department.

20.     Plaintiff Dianne Walton ("Plaintiff Walton"), a citizen and resident of Water Valley, Mississippi, purchased two Walmart Gift Cards on December 26, 2016 and loaded $75.00 on each card. When she attempted to use the cards on January 10, 2017, the funds had already been used by third parties. Plaintiff Walton complained at the local Walmart store and filed a complaint with Walmart's customer service department.

21.     Plaintiff Gracie Foster ("Plaintiff Foster"), a citizen and resident of Kansas City, Missouri, purchased a Walmart Gift Card on May 13, 2018 and loaded $75.00 on the Gift Card. When she attempted to use the Gift Card in July 2018, the funds had already been used by third parties. Plaintiff Foster complained at the local Walmart store and filed a complaint with Walmart's customer service department.

22.     Plaintiff Amy Slane ("Plaintiff Slane"), a citizen and resident of Battle Mountain, Nevada, purchased a Walmart Gift Card on December 15, 2018 to give to her children as a Christmas gift. She loaded a total of $400.00 on the Gift Cards. Her children attempted to use the Gift Cards on December 22, 2018, but the funds had already been used by third parties. Plaintiff Slane complained at the local Walmart store and filed a complaint with Walmart's customer service department.

23.     Plaintiff Tina Brown ("Plaintiff Brown"), a citizen and resident of Beacon, New York, purchased a Walmart Gift Card in December 2017 and loaded $100.00 onto the Gift Card. When she attempted to use the Gift Card in January 2018, Walmart had already deactivated the Gift Card account. Plaintiff Brown complained at the local Walmart store and filed a complaint with Walmart's customer service department.

24.     Plaintiff Jennifer Edmark ("Plaintiff Edmark"), a citizen and resident of Leland, North Carolina, purchased a Walmart Gift Card in November 2018 and loaded $50.00 onto the Gift Card. When she attempted to use the Gift Card in November 2018, the funds had already been used by third parties. Plaintiff Edmark filed a complaint with Walmart's customer service department.

25.     Plaintiff Lillian Rudd ("Plaintiff Rudd"), a citizen and resident of Cleveland, Ohio, purchased a Walmart Gift Card on November 23, 2017 and loaded $125.00 onto the Gift Card. When she attempted to use the Gift Card on December 20, 2017, the funds had either already been used by third parties or Walmart had deactivated her Gift Card account. Plaintiff Rudd filed a complaint with Walmart's customer service department.

26.     Plaintiff Donnie Brown ("Plaintiff Brown"), a citizen and resident of McCloud, Oklahoma, purchased a Walmart Gift Card on June 14, 2018 and loaded $275.00 onto the Gift

Card. When he attempted to use the Gift Card on July 1, 2018, the funds had already been used by third parties. Plaintiff Brown filed a complaint with Walmart's customer service department.

27.     Plaintiff Justin Castilyn ("Plaintiff Castilyn"), a citizen and resident of Butler, Pennsylvania, purchased a Walmart Gift Card in November 2017 and loaded $100.00 onto the Gift Card. When he attempted to use the Gift Card, Walmart had already deactivated the Gift Card account. Plaintiff Castilyn complained at the local Walmart store and filed a complaint with Walmart's customer service department.

28.     Plaintiff Clarence Gaten ("Plaintiff Gaten"), a citizen and resident of Allentown, Pennsylvania, purchased a Walmart Gift Card in May 2018 and loaded $100.00 onto the Gift Card. When he attempted to use the Gift Card in November 2018, the funds had already been used by third parties. Plaintiff Gaten filed a complaint with Walmart's customer service department.

29.     Plaintiff Brenda Shaley ("Plaintiff Shaley"), a citizen and resident of New Castle, Pennsylvania, purchased a Walmart Gift Card in March 2018 and loaded $100.00 onto the Gift Card. When she attempted to use the Gift Card in April 2018, the funds had already been used by third parties. Plaintiff Shaley filed a complaint with Walmart's customer service department.

30.     Plaintiff Ryan D'Angelo ("Plaintiff D'Angelo"), a citizen and resident of Nashville, Tennessee, purchased a Walmart Gift Card in July 2017 and loaded $150.00 onto the Gift Card. When he attempted to use the Gift Card in August 2017, Walmart had already deactivated the Gift Card account.

31.     Plaintiff Brian Rush ("Plaintiff Rush"), a citizen and resident of Corinth, Texas, received a Walmart Gift Card in connection with a credit card transaction on March 24, 2018 that was loaded with $177.88. When he attempted to use the Gift Card on March 31, 2018, the

funds had already been used by third parties. Plaintiff Rush filed a complaint with Walmart's customer service department.

32.     Plaintiff Heidi Horne ("Plaintiff Horne"), a citizen and resident of American Fork, Utah, purchased a Walmart Gift Card in December 2018 and loaded $500.00 onto the Gift Card. When she tried to use the Gift Card later that month, Walmart had already deactivated her Gift Card account. Plaintiff Horne filed a complaint with Walmart's customer service department.

33.     Plaintiff T.W. Prescott ("Plaintiff Prescott"), a citizen and resident of Milwaukee, Wisconsin, purchased a Walmart Gift Card on October 17, 2017 and loaded $25.00 onto the Gift Card. When Plaintiff Prescott attempted to use the Gift Card the next day, the funds had already been used by third parties. Plaintiff Prescott filed a complaint with Walmart's customer service department.

34.     Plaintiffs would not have purchased Walmart Gift Cards had Walmart informed them that they had insufficient measures in place to ensure that scammers did not tamper with the 's and that it was possible that the Gift Cards had been tampered with.

35.     Plaintiffs suffered actual injury from having the funds they loaded on the Walmart Gift Cards stolen by third parties after Walmart failed to ensure that scammers did not tamper with the Gift Cards or from having their Gift Card accounts frozen by Walmart.

36.     Walmart did not reimburse any of the Plaintiffs the funds they lost from their Walmart Gift Cards.

37.     Defendant, Walmart Stores East I, L.P. is a Delaware limited partnership with its principal place of business located at 702 SW 8th St. Bentonville, Arkansas 72716-0555.

38.     Defendant Walmart, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th St. Bentonville, Arkansas 72716-0555.

39.     Defendant Walmart Stores Arkansas, LLC is an Arkansas limited liability company authorized to do business in Arkansas with its principal place of business located at Sam M. Walton Development Complex, 2001 SE 10th St. Bentonville, Arkansas 72716-0550.

40.     Defendant Wal-Mart Inc. is a Delaware corporation, authorized to do business in Arkansas, and can be served at 708 SW 8th Street Bentonville, AR 72716.

41.     Defendant Wal-Mart Stores East, LP, is a Delaware limited partnership, authorized to do business in Arkansas, and can be served at 708 SW 8th Street Bentonville, AR 72716 .

## GENERAL ALLEGATIONS

42.     Walmart is the world's largest retailer with annual revenue in 2018 of $500.3 billion     (https://news.walmart.com/2018/04/20/walmart-releases-2018-annual-report-proxy-statement-global-responsibility-report-and-global-ethics-and-compliance-program-update).

43.     For some time, Walmart has known that third parties have tampered with Walmart Gift Cards resulting in the taking of funds loaded onto the cards by Walmart customers.

44.     Walmart could easily have prevented the tampering from occurring but has done nothing. For example, under certain circumstances, Walmart will provide an "email with a password to activiate [the] Gift Card" (https://www.walmart.com/cp/gift-cards/96894). However, Walmart did not make this option available to Plaintiffs and the Class members.

45.     In fact, in some instances, Walmart froze Plaintiffs' and Class members' Gift Card accounts, thereby preventing them from accessing their funds.

46.     Walmart failed to take adequate and reasonable measure to ensure that third parties did not tamper with its Gift Cards and to protect its customers from having their Gift Card balances used by third parties.

47.     Furthermore, Walmart failed to disclose to Plaintiffs and Class members that it had failed to adequately safeguard the Gift Cards and the Gift Card accounts to ensure that the cards were not tampered with.

48.     As a direct and proximate result of Walmart's conduct, Plaintiffs and Class members suffered injury.

49.     Prior to the sale of the Gift Cards, third parties tampered with and/or otherwise compromised the Gift Cards so that the third parties could withdraw the cash loaded onto the cards by Walmart customers.

50.     Any party having knowledge of the public facing Gift Card numbers along with the secret eight numbers hidden by the security tape can utilize a loaded card for online purchases from Walmart.

51.     Walmart was aware that third parties were tampering with its Gift Card inventory and obtaining knowledge of the secret eight digits printed on the Gift Card.

52.     Walmart knew or should have known that one method the third parties were using to learn the secret eight digits involved the third parties taking possession of the cards, removing the security tape covering the PIN numbers on the Gift Cards, recording the eight digits and replacing the tamper evident tape with a commercially available equivalent substantially similar, but not identical, to the original tamper evident tape or other such means.

53.     Walmart knew or should have known that third parties were also utilizing computer software called "bruteforcing software" to determine the PIN for the Gift Cards by cycling through all 10,000 possible PIN combinations. According to one report, this process may take as few as ten minutes to complete. See "Hacking Retail Gift Cards Remains Scarily Easy," Andy Greenberg, Wired.com, August 31, 2017, https://www.wired.com/story/gift-card-hacks/.

The practice by third parties of tampering with and compromising Gift Cards was common and known to Walmart.

54.     Walmart received enough customer complaints alerting Walmart that its Gift Cards were being tampered with and customers were being denied access to the money they loaded on the cards to put Walmart on notice that the secret numbers on the cards were not guaranteed to be secure prior to or at the moment of first commercial sale at the registers in its stores.

55.     In addition to complaints received at its headquarters in Bentonville, Arkansas, Walmart employees and agents received in-store complaints from customers regarding Gift Card tampering prior to sale and these complaints were sufficient to put Walmart on notice that the secret numbers on the cards were not guaranteed to be secure prior to or at the moment of first commercial sale at the registers in its stores.

56.     The Gift Cards purchased by Plaintiffs and Class members were tampered with and compromised prior to the moment of sale.

57.     Thereafter, third parties utilized the card's secret eight digits to exhaust the balance on one of the Gift Cards by making consumer purchases of goods at "Walmart.com".

58.     Walmart maintains records indicating when the Gift Cards are loaded, when they are redeemed, and how and where they are redeemed.

59.     Walmart has failed and refused to replenish the balance on Plaintiffs' and Class members' Gift Cards, refund the money, or reactivate the frozen cards.

60.     At all times relevant to this complaint, Walmart deactivated thousands of Gift Cards so as to deny Plaintiffs and Class members access to the money loaded onto the card and failed and refused to replace them with a suitable, functioning Gift Card.

61.     Defendants implicitly represented to all purchasers, including Plaintiffs and Class members, that their Gift Cards are not tampered with or adulterated prior to first sale in the stream of commerce.

62.     Alternatively, Defendants failed to warn Gift Card purchasers, including Plaintiffs and Class members, of the probability and/or possibility that their Gift Cards had been tampered with, that other third parties have knowledge of the secret eight digits, and that Walmart is not the only entity in possession of the Gift Card's PIN.

63.     Walmart failed to inform or disclose to the public, including Plaintiffs and Class members, material facts that would have influenced the purchasing decisions of Plaintiffs and Class members.

64.     Walmart failed to disclose to the public, including Plaintiffs and Class members, that its Gift Card policies and security practices were inadequate to safeguard customers' Gift Card accounts and personal identifying information against theft.

65.     Plaintiffs and Class members believed that Walmart would maintain their Gift Card funds and Gift Card account information reasonably secure.

66.     Had Walmart disclosed to Plaintiffs and members of the Class that Walmart did not have adequate systems, policies, and security practices to secure customers' Gift Card account information and Gift Card funds, Plaintiffs and members of the Class would not have purchased the Walmart Gift Cards.

67.     Walmart does not adequately train or require its associates to carefully and consistently inspect Gift Cards prior to sale for evidence of tampering, which includes but is not limited to: (a) crooked security tape; (b) scrape marks from tape removal; (c) application of non-factory original security tape; (d) tape residue edge marks from original security tape.

68.     No reasonable consumer, including Plaintiffs and Class members, would knowingly purchase a Gift Card where there was a probability and/or possibility that, prior to sale, the secret eight digits were known to third parties other than Walmart or an entity with a "need to know."

69.     Plaintiffs and Class members were damaged in the amount of the money loaded on the cards but lost due to a third party using the funds or due to Walmart freezing the Gift Card accounts. Additionally, Plaintiffs and Class members suffered embarrassment, humiliation and distress associated with giving valueless Gift Cards to family members, friends, and others.

70.     The problem with the Walmart Gift Cards is rampant and widespread and Walmart is well-aware of the problem, yet Walmart continues to sell insecure Gift Cards.

71.     Defendants sell Gift Cards that they know or should know have been tampered with and/or fail to take reasonable precautions to discover and/or prevent tampering.

72.     Walmart    publishes    its    Gift    Card    terms    and    conditions    at http://help.walmart.com/app/answers/detail/a_id/57/~/gift-card-terms-and-conditions?u1=&oid=223073.1&wmlspartner=bipa7LLjXFc&sourceid=06169867294246116240&affillinktype=10&veh=aff.

73.     Although Walmart sells tampered Gift Cards whose secret eight digits are known to third parties prior to the first consumer sale, it purports to disclaim liability associated with stolen Gift Cards as shown below:

> **Lost or Stolen Gift Card.** Lost or stolen cards will not be replaced. Neither Wal-Mart.com USA, LLC nor Wal-Mart Stores Arkansas, LLC shall have liability to you for (i) lost or stolen Walmart Gift Cards or (ii) use of any Walmart Gift Cards by third parties through your Walmart.com account. You are solely responsible for keeping the password for your Walmart.com account safe and for any activity conducted under your account. If the eGift Card is from your Savings Catcher account, go to https://savingscatcher.walmart.com/

## CLASS ACTION ALLEGATIONS – LOCAL RULE 23.1

74.     Plaintiffs repeat and re-allege every allegation above as if set forth in full herein.

75.     Pursuant to Fed. R. Civ. P. 23(b)(3) and (2), Plaintiffs bring this suit on their own behalf and on behalf of a proposed national class of all other similarly situated persons ("Nationwide Class") consisting of:

> All purchasers of the compromised Walmart Gift Cards from Walmart retail stores, and who loaded money onto the Gift Card, and either (a) who had the funds loaded on the Gift Card used by a third party as a result of the tampering; or (b) lost the use of the funds on the card because Walmart deactivated the card prior to the time it was first used and refused to either replace the card, reactivate the card or refund the money loaded on the card.

76.     Pursuant to Federal Rule 23(b)(3) and (2)  Plaintiffs bring this suit on their own behalf and on behalf of a proposed class of all other similarly situated persons asserting claims that Walmart violated state consumer statues (Count I) on behalf of separate statewide classes in and under the respective consumer laws of each state of the United States and the District of Columbia as set forth in Count I. These classes are defined as follows:

> **Statewide Consumer Law Classes:**
>
> All residents of [name of State or District of Columbia] whose purchased compromised Walmart Gift Cards from Walmart retail stores, and who loaded money onto the Gift Card, and either (a) who had the funds loaded on the Gift Card used by a third party as a result of the tampering; or (b) lost the use of the funds on the card because Walmart deactivated the card prior to the time it was first used and refused to either replace the card, reactivate the card or refund the money loaded on the card.

77.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring their separate claims for fraud (Count II), unjust enrichment (Count III), breach of contract (Count IV), negligent enrichment (Count V), breach of warranty (County VI), and breach of implied warranty (Count VII) on behalf of separate statewide classes in and under the respective laws of each state of the United

States and the District of Columbia as set forth in Counts II, III, IV, V, VI, and VII. These classes are defined as follows:

> **Statewide Consumer Law Classes:**
>
> All residents of [name of State or District of Columbia] whose purchased compromised Walmart Gift Cards from Walmart retail stores, and who loaded money onto the Gift Card, and either (a) who had the funds loaded on the Gift Card used by a third party as a result of the tampering; or (b) lost the use of the funds on the card because Walmart deactivated the card prior to the time it was first used and refused to either replace the card, reactivate the card or refund the money loaded on the card.

78.   Excluded from each of the classes above are defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Walmart, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Walmart. Also excluded are the judges and court personnel in this case and any members of their immediate families.

79.   The size of the above referenced classes is currently unknown but is believed to exceed 100,000 consumers.

80.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same exclusive and common evidence as would be used to prove those elements in individual actions alleging the same claims.

81.   All members of the proposed classes are readily ascertainable using objective information. Walmart has access to the personal information of thousands of Class members, which can be used for providing notice to the class.

82.     The class is so numerous that joinder of all members would be impracticable. While the exact number of Class members has not yet been determined, Walmart has sold thousands of compromised Gift Cards during the proposed class period.

83.     The claims of the named Plaintiffs are typical of the claims of the class they seeks to represent, in that each named Plaintiff and all members of the class purchased or received a Gift Card from Defendants and the funds associated with the card were stolen or misappropriated or the cards were deactivated without refund or replacement.

84.     All Plaintiffs and similarly situated Class members seek a refund of, and restitution for, monies lost from their Gift Card accounts, which occurred as a result of the Defendants' wrongful and improper conduct.

85.     Plaintiffs and members of the Class seek to disgorge Defendants of the monies they inappropriately acquired as a result of the loss of the Gift Card funds.

86.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class they represent.

87.     The representative Plaintiffs have retained counsel competent and experienced to represent them and the members of the class.  Accordingly, the interests of the Class will adequately be protected and advanced.  In addition, there is no conflict of interest among the representatives of the class.

88.     The interests of all Class members are aligned because they have a strong interest in obtaining the refunds, reimbursements, and disgorgement of funds.  In addition, the members of the Class have an interest in securing their right to compensatory damages.

89.     Notice can be provided to Class members by a combination of published notice and first-class mail and email using techniques and forms of notice similar to those customarily

used in class action cases.  Further, Defendants maintain a database of the contact information of its customers.

90.     Certification of the Class is appropriate because the questions of law and fact common to the members of this Class predominate over any questions affecting only individual members.  These questions of law and fact include, but are not limited to:

a.   Whether Defendants were aware of the third parties' tampering of the cards;

b.   Whether Defendants should have known that third parties tampered with its Gift Cards;

c.   Whether Defendants had a duty to disclose to Gift Card purchasers the probability and/or possibility that a Gift Card had been tampered with by a third party at the time of sale;

d.   Whether Defendants had a duty to disclose to Gift Card purchasers the probability and/or possibility that the secret eight digits on the card(s) were known to third parties who did not have a need to know the digits.

e.   What steps Defendants took to protect Gift Card purchasers from losing the funds loaded onto the Gift Cards to third parties;

f.   Whether or not the limitations of liability in the terms and conditions are unconscionable or unenforceable.

g.   Whether or not the terms of service constitute a contract of adhesion and are unenforceable.

h.   Whether or not Walmart is required to replace or refund Gift Cards with positive balances that it deactivates.

i.   Whether or not Walmart made intentional, negligent and/or fraudulent representations or omissions of material fact concerning the security of Gift Cards;

j.   Whether Defendants violated the consumer protection statues of the several states;

k.   Whether Defendants breached the warranty of merchantability implicit in all contracts for the sale of goods under the Uniform Commercial Codes of the various states;

l.   Whether Defendants were unjustly enriched as a result of their conduct in relation to the sale of the tampered with Gift Cards;

m.  Whether Defendants negligently mispresented the condition of the Gift Cards at the time of their sale;

n.   Whether Defendants acted fraudulently in connection with the sale of compromised Gift Cards; and

o.   The extent to which Plaintiff and Class members are entitled to damages, including compensatory damages, statutory damages, and punitive damages or equitable relief, including disgorgement.

91.    This class action is superior to other available remedies for the fair and efficient adjudication of this controversy because the amount in controversy for each individual class member is relatively small such that it would be impracticable for putative Class members to file individual actions.

92.    Defendants marketed and sold the Gift Cards in the course of its business.

93.    The sale of all Gift Cards constituted a "consumer sale" within the meaning of the consumer protection laws of the 50 states.

**NATIONWIDE CLASS COUNT I**

A. **Claims Brought on Behalf of the Alabama Subclass**

### VIOLATION OF ALABAMA CONSUMER PROTECTION ACT
### (ALA. CODE § 8-19-1, ET SEQ.)

94.     Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

95.     Plaintiff Pearlie Boyd is a citizen and resident of Alabama and was a resident of Alabama when the data breach occurred.  Plaintiff Boyd brings this Count on her own behalf and on behalf of the members of the Alabama Subclass.

96.     The Alabama Unfair Trade Practices Act (AUTPA) prohibits the following conduct in trade or commerce: (2) "Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" (5) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;" (7) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" (9) "Advertising goods or services with intent not to sell them as advertised;" (27) "Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

97.     Prior to the filing of this Complaint, counsel for Plaintiffs provided Walmart with written pre-suit demands pursuant to Ala. Code § 8-19-10(e).

98.     Walmart's acts and omissions affect trade and commerce and affect sponsorship of goods and services in Alabama.

99.     Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff which amounted to deception, fraud, false

pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiff and class members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties.

100.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

101.    Defendants intended for Plaintiff to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

102.    At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

103.    Walmart has committed acts of unlawful trade practices in violation of Ala. Code § 8-19-5. Walmart falsely represented to the Plaintiffs and the other Alabama Subclass members that the value of the Gift Card provided in the sales transactions would be safe and secure from theft and unauthorized used, when, in truth, Walmart was aware of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

104.   Walmart has violated Ala. Code § 8-19-5 (2) and (5) through its representations that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have…."

105.   Walmart has also violated Ala. Code § 8-19-5 (7) because it represented that its goods and services were of a "particular standard, quality, or grade," when in truth and fact, they were not.

106.   Walmart has also violated Ala. Code § 8-19-5 (9) because it induced transactions with consumers under the false auspices that it reasonably protected the value of the Gift Card from third-party tampering.

107.   Walmart conducted the practices alleged herein in the course of its business, pursuant to standardized practices that it engaged in both before and after the Plaintiffs in this case were harmed, these acts have been repeated numerous of times, and many consumers were affected.

108.   Walmart's misrepresentations and omissions were material to Plaintiffs and other Alabama Subclass member's transactions with Walmart and were made knowingly and with reason to know that Plaintiffs and the Alabama Subclass would rely on the misrepresentations and omissions.   Had Plaintiffs and the Alabama Subclass members known about the high likelihood that the Gift Cards had been tampered with—such that they had no value and/or greatly diminished value—they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.

109.   Plaintiffs and the Alabama Subclass members reasonably relied on Walmart's misrepresentations and omissions and suffered harm as a result.   Plaintiffs and the Alabama

Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain. These injuries are the direct and natural consequences of Walmart's misrepresentations and omissions.

110.    Plaintiffs and the Alabama Subclass seek actual and statutory damages, to the full extent permitted under applicable law.

B. **Claims Brought on Behalf of the Alaska Subclass**

## VIOLATION OF ALASKA UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION ACT
## (ALASKA STAT. § 45.50.471, ET. SEQ.)

111.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

112.    Plaintiffs bring this Count on behalf of the Alaska Subclass.

113.    The Alaska Unfair Trade Practices and Consumer Protection Act ("UTPCPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; and "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471(b).

114.    Prior to the filing of this Complaint, counsel for Plaintiffs provided Walmart with written pre-suit demands pursuant to Alaska Stat. Ann. § 45.50.535(b).

115.    For the reasons discussed above, Walmart violated (and, on information and belief, continues to violate) the Alaska UTPCPA by engaging in the above-described and prohibited unlawful, unfair, fraudulent, deceptive, untrue, and misleading acts and practices.

116.    Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiff and Alaska Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties.

117.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

118.    Defendants intended for Plaintiff to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

119.    At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

120.    Walmart's above-described wrongful acts and practices constitute "unfair" business acts and practices, in that they have the capacity or tendency to deceive. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980). The harm caused by Walmart's above wrongful conduct outweighs any utility of such conduct, and such conduct (i) offends public policy, (ii) is improper, unfair, oppressive, deceitful, and offensive, and/or (iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiffs and the Class. There

were reasonably available alternatives to further Walmart's legitimate business interests, including using best practices to protect the Gift Cards from third-party tampering, other than Walmart's wrongful conduct described herein.

121.    "A person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by Alaska Stat. 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. The court may provide other relief it considers necessary and proper." Alaska Stat. § 45.50.531(a). Attorneys' fees may also be awarded to the prevailing party. Alaska Stat. § 45.50.531(g).

122.    On information and belief, Walmart's unlawful, fraudulent, and unfair business acts and practices, except as otherwise indicated herein, continue to this day and are ongoing. As a direct and/or proximate result of Walmart's unlawful, unfair, and fraudulent practices, Plaintiffs and the Alaska Subclass have suffered injury in fact and lost money in connection with theft, for which they are entitled to compensation, as well as restitution, disgorgement, and/or other equitable relief.

123.    Plaintiffs and the Alaska Subclass were injured in fact. Had Plaintiffs and the Alaska Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the other Alaska Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain. These injuries are the direct and natural consequences of Walmart's omissions and misrepresentations, all of which have an ascertainable value to be proven at trial.

C. **Claims Brought on Behalf of the Arizona Subclass**

### VIOLATION OF CONSUMER FRAUD ACT
### (ARIZ. REV.STAT. §44-1521, ET.SEQ.)

124.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

125.    Plaintiffs bring this Count on behalf of the Arizona subclass

126.    Plaintiffs and the Arizona Class members are consumers who purchased Walmart Gift Cards primarily for personal, family or household purposes.

127.    Walmart, Plaintiffs and the Arizona Subclass are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), ARIZ.REV.STAT. §44-1512(6).

128.    The Gift Cards are "merchandise" within the meaning of ARIZ. REV. STAT. §44-1521(5). The Arizona CFA proscribes:  "The Arizona CFA proscribes "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby." ARIZ. REV. STAT. § 44-1522(A).

129.    In the course of its business, Walmart failed to disclose and actively concealed that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission in connection with the sale of the Gift Cards.

130.    Walmart is engaged in, and its acts and omissions affect, trade and commerce.

131.    Walmart owed Plaintiffs and the Arizona Subclass a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and otherwise engaged in activities with a tendency or capacity to deceive.

132.    Walmart engaged in the conduct described more fully above and in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiffs and the Arizona Subclass members.

133.    Walmart's acts, practices, and omissions were done in the course of Walmart's business of marketing, offering for sale and selling goods and services throughout the United States, including in Arizona.

134.    Walmart's conduct as alleged in this complaint constitutes unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices.

135.    By engaging in such conduct and omissions of material facts, Walmart has violated state consumer laws prohibiting representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," representing that "goods and services are of a particular standard, quality or grade, if they are of another", and/or "engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding"; and state consumer laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices.

136.    Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Arizona Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that

Defendants sold Gift Cards to Plaintiff and the Arizona Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties.

137.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Arizona Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

138.    Defendants intended for Plaintiffs and the Arizona Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

139.    At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

140.    Defendants' representations and omissions described herein constitute concealment, suppression, or omission of issues and were material to Plaintiffs' and the Arizona Subclass members decisions to purchase the Gift Cards.

141.    Plaintiffs and the Arizona Subclass members had no knowledge of Walmart's concealment, fraud, misrepresentations and omissions of material fact.

142.    Plaintiffs and the Arizona Subclass members personally or through their designees, demanded replacement or refund of the money loaded on the card and Walmart refused.

143.     Defendants' deactivation of Plaintiffs and the Arizona Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact.

144.     As a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendant, Plaintiffs and the Arizona Subclass has suffered an ascertainable monetary loss, to wit: the loss of the funds associated with their Gift Cards.

145.     That the conduct of Defendant in the foregoing respects was willful, intentional, and malicious and without just cause or excuse, entitling Plaintiffs and the Arizona Subclass members to actual and punitive damages.

146.     Defendants' violations present a continuing risk to Plaintiffs and the Arizona Subclass as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

147.     Plaintiffs and the Arizona Subclass seek monetary relief against the Defendants in an amount to be determined at trial. Plaintiffs and the Arizona Subclass also seek punitive damages because the Defendants engaged in aggravated and outrageous conduct with an evil mind.

148.     Plaintiffs and the Arizona Subclass also seek attorneys' fees and any other just and proper relief available.

D.  **Claims Brought on Behalf of the Arkansas Subclass**

### VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### (ARK. CODE ANN. §§ 4-88-101, *ET SEQ.*)

149.     Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

150.    Plaintiff Jodie Roskydoll is a citizen and resident of Arkansas and was a resident of Arkansas when the data breach accurred.  Plaintiff Roskydoll brings this Count on her own behalf and on behalf of the members of the Alabama Subclass.

151.    The Arkansas Deceptive Trade Practices Act ("DTPA") prohibits "deceptive and unconscionable trade practices," which include but are not limited to a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10).

152.    The Plaintiff, members of the Arkansas Subclass, and the Defendants are "persons" within the meaning of the Arkansas DTPA. Ark. Code Ann. § 4-88-102(5).

153.    The conduct of Walmart as set forth herein constitutes deceptive and unconscionable trade practices because Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to the Plaintiff and the Arkansas subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiff and Arkansas Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties.

154.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiff and the Arkansas Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

155.    Defendants intended for Plaintiff and the Arkansas Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

156.    At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

157.    Defendants' conduct was unconscionable because it affronts the sense of justice, decency, or reasonableness, including as established by public policy and the state and federal laws enumerated herein. Defendants' unconscionable and deceptive trade practices occurred or were committed in the course, vocation, or occupation of its business, commerce, or trade. Defendants are directly liable for these violations of law.

158.    Defendants engaged in a deceptive trade practice when it failed to disclose material information concerning the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

159.    The information withheld was material in that it was information that was vitally important to consumers. Defendants' withholding of this information was likely to mislead consumers acting reasonably under the circumstances. Defendants' conduct proximately caused injuries to the Plaintiff and Arkansas Subclass.

160.    Plaintiff and the Arkansas Subclass were injured as a result of Defendants' conduct as alleged herein. These injuries are the direct and natural consequence of Walmart's unconscionable conduct, misrepresentations, and omissions.

161.    Plaintiff and other members of the Arkansas Subclass are entitled to recover actual damages, as well as reasonable attorneys' fees, for Defendants' unlawful conduct.

E. **Claims Brought on Behalf of the California Subclass**

**CALIFORNIA COUNT I**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

162.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

163.    Plaintiffs bring this Count on behalf of the California Subclass.

164.    Plaintiffs Joe Esquivel and Lanette Hall are citizens and residents of California and were residents of California when the data breach occurred.  Plaintiffs Esquivel and Hall bring this Count on their own behalf and on behalf of the members of the California Subclass.

165.    Plaintiffs Equivel and Hall and the California Subclass members are "person[s]" as defined in Cal. Bus. & Prof. Code § 17201 who purchased Walmart Gift Cards primarily for personal, family or household purposes.

166.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

167.    Walmart's conduct, as described herein, was and is in violation of the UCL. Walmart's conduct violates the UCL in at least the following ways:

a.  Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and California Subclass members which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and California Subclass members when Defendants knew or

should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

b.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the California Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

c.  Defendants intended for Plaintiffs and California Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

d.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN; and

e.  Defendants' deactivation of Plaintiffs and California Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact.

168.  Walmart's misrepresentations and omissions alleged herein caused Plaintiffs and the other California Subclass members to purchase Walmart Gift Cards.  Absent those misrepresentations and omissions, Plaintiffs and California Subclass members would not have purchased the Walmart Gift Cards.

169.    Plaintiffs and the California Subclass suffered ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs and California Subclass members who purchased the Gift Cards either would not have purchased the Gift Cards had Walmart disclosed that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or diminished value.

170.    Accordingly, Plaintiffs and California Subclass members have suffered injury in fact, including lost money or property, as a result of Walmart's misrepresentations and omissions.

171.    Plaintiffs and California Subclass members seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Walmart under Cal. Bus. & Prof. Code § 17200.

172.    Plaintiffs and California Subclass members request that this Court enter such orders or judgments as may be necessary to enjoin Walmart from continuing its unfair, unlawful, and/or deceptive practices; to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 & 3345; and for such other relief set forth below.

## CALIFORNIA COUNT II

### VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### (Cal. Civ. Code §§ 1750, et seq.)

173.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

174.    Plaintiffs Joe Esquivel and Lanette Hall are citizens and residents of California and were residents of California when the data breach occurred.  Plaintiffs Esquivel and Hall bring this Count on their own behalf and on behalf of the members of the California Subclass.

175.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

176.    The Gift Cards are "goods" as defined in Cal. Civ. Code § 1761(a).

177.    Plaintiffs and the California Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the California Subclass members, and Walmart are "persons" as defined in Cal. Civ. Code § 1761(c).

178.    As alleged above, Walmart made numerous representations concerning the benefits, efficiency, performance, and safety features of the Gift Cards that were misleading.

179.    In purchasing the Walmart Gift Cards, Plaintiffs and California Subclass members were deceived by Walmart's failure to disclose and active concealment that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value.

180.    Walmart's conduct, as described herein, was and is in violation of the CLRA. Walmart's conduct violates at least the following enumerated CLRA provisions:

      a.    Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification of goods;

      b.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

      c.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

    d.  Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

    e.  Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

181.    Plaintiffs and the California Subclass members have suffered injury in fact and actual damages resulting from Walmart's material omissions and misrepresentations and its concealment of and failure to disclose material information. Plaintiffs and California Subclass members who purchased the Gift Cards would not have purchased the Gift Cards had Walmart disclosed that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or diminished value.

182.    Walmart knew, should have known, or was reckless in not knowing that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and not suitable for their intended use.

183.    The facts concealed and omitted by Walmart to Plaintiffs and California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Gift Cards. Had Plaintiffs and California Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.

184.    In accordance with Cal. Civil Code § 1780(a), Plaintiffs and California Subclass members seek injunctive and equitable relief for Walmart's violations of the CLRA, including an injunction to enjoin Walmart from continuing its deceptive advertising and sales practices.

185.    Prior to the filing of this Complaint, counsel for Plaintiffs provided Walmart with written pre-suit demands pursuant to Cal. Civ. Code § 1782(a).

186.    Plaintiffs and California Subclass members' injuries were proximately caused by Walmart's fraudulent and deceptive business practices.

187.    Therefore, Plaintiffs and California Subclass members are entitled to equitable and monetary relief under CLRA.

## CALIFORNIA COUNT III

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

188.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

189.    Plaintiffs Joe Esquivel and Lanette Hall are citizens and residents of California and were residents of California when the data breach occurred.  Plaintiffs Esquivel and Hall bring this Count on their own behalf and on behalf of the members of the California Subclass.

190.    Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

191.    Walmart caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have

been known to Walmart, to be untrue and misleading to consumers, including Plaintiffs and the California Subclass members.

192.    Walmart has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as set forth in this Complaint, were material and likely to deceive a reasonable consumer.

193.    Plaintiffs and the California Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Walmart's unfair, unlawful, and/or deceptive practices.    In purchasing the Gift Cards, Plaintiffs and the California Subclass members relied on the misrepresentations and/or omissions of Walmart regarding the high likelihood that the Gift Cards had been tampered with such that they had no value/and or greatly diminished value.    Had Plaintiffs and the California Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.    Accordingly, Plaintiffs and the California Class members overpaid for the Gift Cards and did not receive the benefit of their bargain.

194.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Walmart's business.    Walmart's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

195.    Plaintiffs, individually and on behalf of the other California Subclass members, request that this Court enter such orders or judgments as may be necessary to enjoin Walmart from continuing their unfair, unlawful, and/or deceptive practices, to restore to Plaintiffs and the

California Subclass members any money Walmart acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

F. **Claims Brought on Behalf of the Colorado Subclass**

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. §§ 6-1-105, ET SEQ.)

196.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

197.    Plaintiff Charles Pettit is a citizen and resident of Colorado and was a resident of Colorado when the data breach occurred.  Plaintiff Pettit brings this Count on his own behalf and on behalf of the members of the Colorado Subclass.

198.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods…" or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods…"; "[r]epresents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another,"; or [f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105(1)(b), (e), (g) and (u).

199.    Defendants each constitute a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

200.    In the course of Walmart's business, it failed to disclose, and actively concealed, the high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value as described above. Accordingly, Walmart engaged in conduct likely to deceive.

201.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

202.    Walmart's conduct proximately caused injuries to Plaintiff and the Colorado Subclass members.

203.    Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff and the Colorado Subclass members which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Colorado Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties.

204.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiff and the Colorado Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

205.    Defendants intended for Plaintiff and the Colorado Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

206. At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

207. Plaintiff and the Colorado Subclass members were injured as a result of Walmart's conduct. Had Plaintiff and the Colorado Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact. Accordingly, Plaintiffs and the other Class members overpaid for the Gift Cards and did not receive the benefit of their bargain. These injuries are the direct and natural consequences of Walmart's omissions.

G. **Claims Brought on Behalf of the Connecticut Subclass**

## VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (C.G.S. §§ 42-110A *ET SEQ.)*

208. At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

209. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

210. Plaintiff Tabitha Hofflerr-Frazier is a citizen and resident of Connecticut and was a resident of Connecticut when the data breach occurred. Plaintiff Hofflerr-Frazier brings this Count on her own behalf and on behalf of the members of the Connecticut Subclass.

211. Plaintiffs have provided notice of this action and a copy of this Complaint to the Connecticut Attorney General pursuant to Conn. Gen. Stat. § 42-110g(c).

212.    Walmart engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Conn. Gen. Stat. §42-110b, in at least the following ways:

 a. Walmart misrepresented and fraudulently advertised material facts to Plaintiff and the Connecticut Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

 b. Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff and the Connecticut Subclass members which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiff and the Connecticut Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

 c. Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiff and the Connecticut Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiff and the Connecticut Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiff and the Connecticut Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiff and the Connecticut Subclass members in a timely and accurate manner, contrary to the duties imposed by Conn. Gen. Stat. § 36a-701b; and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiff and the Connecticut Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

213.  As a direct and proximate result of Walmart's deceptive trade practices, Plaintiff and the Connecticut Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of funds associated with their Gift Cards, as a

direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendants.

214.    The above unfair and deceptive practices and acts by Walmart were improper, oppressive, and unfair. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition. Defendants knew or should have known the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of Plaintiff and the Connecticut Subclass members.

215.    Plaintiff and the Connecticut Subclass members seek relief under Conn. Gen. Stat. § 42-110a, *et seq.*, including, but not limited to, damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

H.  **Claims Brought on Behalf of the Delaware Subclass**

### VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
### (DEL. CODE ANN. TIT. 6 § 2511, ET SEQ.)

216.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

217.    Plaintiff Leonshay Tuller is a citizen and resident of Delaware and was a resident of Delaware when the data breach occurred.  Plaintiff Tuller brings this Count on her own behalf and on behalf of the members of the Delaware Subclass.

218.    Each Defendant is a "person" within the meaning of Del. Code Ann. tit. 6, § 2511(7).

219.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." Del. Code Ann. tit. 6, § 2513(a).

220.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that Gift Cards are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

221.    Walmart knew there was high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, but concealed all of that information.

222.    In purchasing the Gift Cards, Plaintiff and the Delaware Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

223.    Plaintiff and the Delaware Subclass members reasonably relied upon the Defendants' false misrepresentations. They had no way of knowing that the Defendants' representations were false and misleading.

224.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

225.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

226.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Delaware CFA.

227.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

228.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Delaware Subclass members about the true value of the Gift Cards.

229.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiff and the Delaware Subclass members.

230.    Walmart knew or should have known that its conduct violated the Delaware CFA.

231.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and that Walmart knew were either false or misleading.

232.    Walmart owed Plaintiff and the Delaware Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

      a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

      b.  Intentionally concealed the foregoing from Plaintiff and the Class; and/or

      c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

233.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiff and the Delaware Subclass members.

234.    Walmart's conduct proximately caused injuries to Plaintiff and the Delaware Subclass members.

235.    Plaintiffs and the Delaware Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's

conduct in that had Plaintiffs and the Class known about the high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact. Accordingly, Plaintiffs and the other Delaware Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Delaware CFA. These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

236.    Walmart's violations present a continuing risk to Plaintiff and the Delaware Subclass members as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

237.    Plaintiff and the Class seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983). Plaintiff and the Delaware subclass members also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

238.    Defendants' engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

I.   **Claims Brought on Behalf of the District of Columbia Subclass**

**VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT
(D.C. CODE § 28-3901 ET SEQ.)**

239.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

240.    Plaintiff John Almquist, Jr. is a citizen and resident of the District of Columbia and was a resident of the District of Columbia when the data breach occurred.  Plaintiff Almquist

brings this Count on his own behalf and on behalf of the members of the District of Columbia Subclass.

241.    Each Defendant is a "person" under the Consumer Protection Procedures Act ("District of Columbia CPPA"), D.C. Code § 28-3901(a)(1).

242.    Plaintiff and District of Columbia Class members are "consumers," as defined by D.C. Code  § 28-3901(a)(2), who purchased one or more Gift Cards.

243.    The Defendants' actions as set forth herein constitute "trade practices" under D.C. Code § 28-3901(a)(6).

244.    In the course of its business, Walmart willfully failed to disclose and/or actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that Gift Cards are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to

be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

245.    Walmart knew there was high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value but concealed all of that information.

246.    In purchasing the Gift Cards, Plaintiff and the District of Columbia Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

247.    Plaintiff and the District of Columbia Subclass members reasonably relied upon the Defendants' false misrepresentations. They had no way of knowing that the Defendants' representations were false and misleading.

248.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

249.    Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

250.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the District of Columbia CPPA.

251.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

252.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other District of Columbia Subclass members about the true value of the Gift Cards.

253.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the District of Columbia Subclass members.

254.    Walmart knew or should have known that its conduct violated the District of Columbia CPPA.

255.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

256.    Walmart owed Plaintiff and the District of Columbia Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

> a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;
>
> b.  Intentionally concealed the foregoing from Plaintiff and the Class; and/or
>
> c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

257.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiff and the District of Columbia Subclass members.

258.   Walmart's conduct proximately caused injuries to Plaintiff and the District of Columbia Subclass members.

259.   Plaintiff and the District of Columbia Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's conduct in that had Plaintiff and the District of Columbia Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact. Accordingly, Plaintiff and the other District of Columbia Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the District of Columbia CPPA.  These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

260.   Walmart's violations present a continuing risk to Plaintiff and the District of Columbia Subclass members as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

J.   **Claims Brought on Behalf of the Florida Subclass**

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT
(FLA. STAT. § 501.201, ET SEQ.)**

261.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

262.   Plaintiffs bring this Count on behalf of the members of the Florida Subclass.

263.   At all relevant times, Walmart provided goods and/or services and thereby was engaged in trade or commerce as defined in Fla. Stat. § 501.203(8).

264.    At all relevant times, Plaintiffs and the Florida Subclass members were consumers as defined in Fla. Stat. § 501.203(7).

265.    Walmart was aware of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value in connection with Walmart's business in Florida

266.    Plaintiffs and the Florida Subclass members expected, and Walmart assured card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Florid Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know. The Florida Deceptive and Unfair Trade Practices Act prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204 (1).

267.    Walmart engaged in unfair or deceptive acts and practices by the following acts, including but not limited to:

    a. Walmart misrepresented and fraudulently advertised material facts to Plaintiffs and the Florida Subclass members by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

    b. Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Florida Subclass members which amounted to deception, fraud, false pretenses, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Florida Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Florida Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiffs and the Florida Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs and the Florida Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Florida Subclass members in a timely and accurate manner; and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs and the Florida Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

268.    Walmart's practice and course of conduct, as alleged herein, is likely to mislead, and has mislead, the consumer acting reasonably in the circumstances to the consumer's detriment.

269.    Further, Walmart has engaged in an unfair practice that offends established public policy, and is one that is improper, oppressive, and unfair, and/or substantially injurious to customers.

270.    As a direct and proximate result of Walmart's conduct, Plaintiffs and the Florida Subclass members suffered actual damages and request a corresponding award of damages against Defendants, as authorized by such statute.

271.    In the alternative, Plaintiffs and the Florida Subclass members have suffered irreparable harm for which there is no adequate remedy at law as a result of Defendants' conduct, and Plaintiffs and the Florida Subclass members are entitled to appropriate temporary and permanent injunctive relief, as authorized and provided by such statutes. Plaintiffs and the Florida Subclass members are further entitled to preliminary or other relief as provided by such statutes, including statutory damages, punitive damages, costs, and reasonable attorneys' fees.

K.  **Claims Brought on Behalf of the Georgia Subclass**

## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE
## PRACTICES ACT
## (GA. CODE ANN. § 10-1-370, *ET SEQ.*)

272.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

273.     Plaintiffs bring this Count on behalf of the Georgia Subclass.

274.     Walmart and members of the Georgia Subclass are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

275.     The Georgia UDTPA prohibits "deceptive trade practices," which include the (7) misrepresentation "that goods . . . are of a particular standard, quality, or grade . . . [when] they are of another" and (12) "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

276.     Prior to the filing of this Complaint, counsel provided Walmart with a written pre-suit demand pursuant to Ga. Code Ann. § 10-1-399(b).

277.     In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices, fraud, misrepresentations, or other concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omissions, in connection with the purchase of the Gift Cards.

278.    Walmart knew or should have known of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value but concealed this information.

279.    By way of the foregoing, Walmart engaged in deceptive business practices in violation of the Georgia UDTPA.  Walmart also engaged in deceptive acts and practices in at least the following was:

      a.   Walmart misrepresented material facts (intending for others to reply upon the misrepresentations) to Plaintiffs and the Georgia Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

      b.   Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Georgia Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Georgia Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

      c.   Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Georgia

Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d. Defendants intended for Plaintiffs and the Georgia Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e. At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f. Defendants' deactivation of Plaintiffs and the Georgia Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g. Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to the Georgia Subclass members in a timely and accurate manner in violation of Ga. Code Ann. § 10-1-912; and

h. Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect the Georgia Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

280.    Walmart's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including the Plaintiffs and Georgia Subclass members, regarding the value, security and safety of its Gift Cards.

281.     Walmart intentionally and knowingly misrepresented such material facts with an intent to mislead Plaintiffs and the Georgia Subclass members.

282.     Walmart knew or should have known that its conduct violated the Georgia UDTPA.

283.     As alleged above, Walmart made material statements that were either false or misleading.

284.     Walmart owed Plaintiffs and the Georgia Subclass a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

  a. Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

  b. Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

  c. Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

285.     Walmart's representations and omissions described herein were material to Plaintiffs' and the Georgia Subclass members' decisions to purchase the Gift Cards.

286.     Plaintiffs and the Georgia subclass suffered an ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information as alleged herein.

287.    Walmart had an ongoing duty to all Walmart customers, including Plaintiffs and the Georgia Subclass members, to refrain from unfair and deceptive practices under the Georgia UDTPA.

288.    Walmart's violations presents a continuing risk to the Plaintiffs and the Georgia Subclass members, as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

289.    As a direct and proximate result of Walmart's violations of the Georgia UDTPA, Plaintiffs and the Georgia Subclass members have suffered injury-in-fact and/or actual damage. Plaintiffs seek an order enjoining Walmart's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code Ann. § 10-1-373.

L.  **Claims Brought on Behalf of the Hawaii Subclass**

### HAWAII COUNT I

**VIOLATION OF HAWAII UNFAIR PRACTICES
AND UNFAIR COMPETITION STATUTE
(HAW. REV. STAT. § 480-1, *ET SEQ.*)**

290.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

291.    Plaintiffs bring this Count on behalf of the Hawaii Subclass.

292.    Hawaii Subclass members are "consumers" as defined in Haw. Rev. Stat. § 480-1.

293.    Hawaii Subclass members purchased "goods and services" from Defendant as defined in Haw. Rev. Stat. § 480-1.

294.    Hawaii Subclass members' gift card information was accessed and stored by Defendant for personal, family, and/or household purposes, as meant by Haw. Rev. Stat. § 480-1.

295.    Walmart engaged in unfair methods of competition, unfair or deceptive acts or practices, misrepresentations, and the concealment, suppression, and/or omission of material facts with respect to the sale and advertisement of the services purchased by the Hawaii Subclass in violation of Haw. Rev. Stat. § 480-2(a), in at least the following ways:

      a.  Walmart misrepresented and fraudulently advertised material facts to Plaintiffs and the Hawaii Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

      b.  Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and Hawaii Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

      c.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and Hawaii Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

     d.   Defendants intended for Plaintiffs and Hawaii Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

     e.   At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

     f.   Defendants' deactivation of Plaintiffs and the Hawaii Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practices or the concealment, suppression, or omission of a material fact;

     g.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to the Hawaii Subclass members in a timely and accurate manner in violation of Haw. Rev. Stat. § 487N-2(a); and

     h.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs' and the Hawaii Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

296.   The above unfair and deceptive practices and acts by Walmart were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

297.   Defendants knew or should have known that their data security practices were inadequate to safeguard Hawaii Subclass members' gift card information and that risk of a data

breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Hawaii Subclass.

298.    As a direct and proximate result of Defendants' unlawful practices, Hawaii Subclass members suffered injury and/or damages.

299.    Plaintiffs and the Hawaii Subclass members seek relief under Haw. Rev. Stat. § 480-13, including, but not limited to, damages, injunctive relief, statutory damages as permitted by applicable law, attorneys' fees and costs, and treble damages.

### HAWAII COUNT II

### HAWAII UNIFORM DECEPTIVE TRADE PRACTICE ACT
#### (Haw. Rev. Stat. § 481A-1 *ET SEQ.*)

300.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

301.    Plaintiffs bring this Count on behalf of the Hawaii Subclass.

302.    The Hawaii Uniform Deceptive Trade Practice Act ("Hawaii DTPA"), Haw. Rev. Stat. § 481A-1, et seq., prohibits deceptive trade practices. Haw. Rev. Stat. § 481A-3provides that (a) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. Haw. Rev. Stat. § 481A-3.

303.    Walmart engaged in deceptive trade practices that violated the Hawaii DTPA by failing to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, including: knowingly representing that Gift Cards have uses and benefits which they do not have; advertising the Gift Cards with the intent not to sell them as advertised; representing that the subject of a transaction involving Gift Cards had been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

304.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

305.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

306.    Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

307.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Hawaii DTPA.

308.   In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

309.   Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Hawaii Subclass members about the true value of the Gift Cards.

310.   Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the Hawaii Subclass.

311.   Walmart knew or should have known that its conduct violated the Hawaii DTPA.

312.   As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

313.   Walmart owed Plaintiffs and the Hawaii Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

   a.   Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

   c.   Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

314.     Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiffs and the Hawaii Subclass.

315.     Plaintiffs and the Hawaii Subclass suffered ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information.  Had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the Nevada Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Hawaii DTPA.

316.     Walmart had an ongoing duty to all Walmart customers to refrain from unfair and deceptive practices under the Hawaii DTPA.  All owners of the Gift Cards suffered ascertainable loss; to wit: the loss of the funds associated with their Gift Cards, as a result of Walmart's deceptive and unfair acts and practices made in the course of Walmart's business.

317.     Walmart's violations present a continuing risk to Plaintiffs and the Hawaii Subclass as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

318.     As a direct and proximate result of Walmart's violations of the Hawaii DTPA, Plaintiffs and the Hawaii Subclass have suffered injury-in-fact and/or actual damage.

319.     Accordingly, Plaintiffs and the Hawaii Subclass seek their actual damages, punitive damages, an order enjoining Walmart's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Hawaii Uniform Deceptive Trade Practice Act.  Haw. Rev. Stat. § 481A-4.

M. **Claims Brought on Behalf of the Idaho Subclass**

### VIOLATION OF PRIVATE RIGHT OF ACTION FOR
### CONSUMER FRAUDS ACT
### (IDAHO CODE § 48-601, ET SEQ.)

320.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

321.    Plaintiffs bring this Count on behalf of the Idaho Subclass.

322.    Defendants are "persons" as defined by the Idaho Consumer Protection Act (Idaho CPA), Idaho Code Ann. § 48-601.

323.    Plaintiffs and the Idaho Subclass' members are "[c]onsumers" as defined by the Idaho CPA § 48-602(1).

324.    The Idaho Consumer Protection Act ("Idaho CPA") prohibits the following conduct in trade or commerce: (2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;  (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;  (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (9) Advertising goods or services with intent not to sell them as advertised; (17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer;  (18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce as provided in section 48-603C, Idaho Code.  Idaho Code § 48-603.

325.     Defendants' conduct constitutes unfair and deceptive acts or practices in connection with a consumer transaction within the meaning of the Idaho CPA § 48-603.

326.     Walmart's acts and omissions affect trade and commerce and affect sponsorship of goods and services in Idaho.

327.     Walmart committed acts of unfair competition by falsely representing to the Plaintiffs and the Idaho Subclass members that the value of the Gift Card provided in the sales transactions would be safe and secure from theft and unauthorized used, when, in truth, Walmart was aware of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

328.     Walmart has violated Idaho Code § 48-603 (2) and (5) through its representations that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that it do not have…"

329.     Walmart has also violated Idaho Code § 48-603 (7) because it represented that its goods and services were of a particular standard, quality or grade, when in truth and fact, they were not.

330.     Walmart has also violated Idaho Code § 48-603 (9) and (17) because it induced transactions with consumers under the false auspices that it reasonably protected the value of the Gift Card from third-party tampering.

331.     Walmart has also violated Idaho Code § 48-603(18) by unconscionably failing to protect the value of its consumers' Gift Cards.

332.     Walmart conducted the practices alleged herein in the course of its business, pursuant to standardized practices that it engaged in both before and after the Plaintiffs and the

members of the Idaho Subclass in this case were harmed, these acts have been repeated numerous of times, and many consumers were affected.

333.    Walmart's misrepresentations and omissions were material to Plaintiffs and the Idaho Subclass member's transactions with Walmart and were made knowingly and with reason to know that Plaintiffs and the Idaho Subclass would rely on the misrepresentations and omissions. Had Plaintiffs and the Idaho Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.

334.    Plaintiffs and the Idaho Subclass reasonably relied on Walmart's misrepresentations and omissions and suffered harm as a result.  Plaintiff and the Idaho Subclass were injured in fact as all owners of the Gift Cards suffered ascertainable monetary loss, to wit: the loss of funds associated with their Gift Cards, as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendants.

335.    Had Plaintiffs and the Idaho Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact. Accordingly, Plaintiffs and the Idaho Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain.    These injuries are the direct and natural consequences of Walmart's omissions and misrepresentations, all of which have an ascertainable value to be proven at trial.

336.    Plaintiffs and the Idaho Subclass seek all remedies available under applicable law including damages, statutory damages, restitution, attorneys' fees and costs of suit.

N. **Claims Brought on Behalf of the Illinois Subclass**

### VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1, *ET SEQ.*)

337.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

338.    Plaintiffs Frederick Coffey, Gloria Czigle, and Torrin Perry are citizens and residents of Illinois and were residents of Illinois when the data breach occurred.  Plaintiffs Coffey, Czigle, and Perry bring this Count on their own behalf and on behalf of the members of the Illinois Subclass.

339.    Walmart is a "person" as that term is defined in 815 ILCS 505/1(c).

340.    Plaintiffs and the Illinois Subclass are "consumers" as that term is defined in 815 ILCS 505/1(e).

341.    Plaintiffs have provided notice of this action and a copy of this Complaint to the Illinois Attorney General to 815 Ill. Stat. § 505/6.

342.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

343.    Walmart participated in misleading, false, or deceptive practices that violated the Illinois CFA.  By failing to disclose and actively concealing the high likelihood that the Gift

Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices prohibited by the Illinois CFA.

344.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

345.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Illinois Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

346.    Defendants intended for Plaintiffs and the Illinois Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

347.    At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

348.    Had Plaintiffs and the Illinois Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid

in fact. Accordingly, Plaintiffs and the Illinois Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain. These injuries are the direct and natural consequences of Walmart's omissions.

349.     Walmart has known about the high likelihood that the Gift Cards had been tampered, with such that they had no value and/or greatly diminished value, but concealed all of that information.

350.     By failing to disclose the high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, Walmart engaged in unfair and deceptive business practices in violation of the Illinois CFA.

351.     Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Class members, to purchase the Gift Cards without revealing the high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value.

352.     Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiffs and the Illinois Subclass.

353.     Walmart knew or should have known that its conduct violated the Illinois CFA.

354.     As alleged above, Walmart made material statements about the high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value that were either false or misleading.

355.     Walmart owed Plaintiffs a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

a.   Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

356.   Walmart's representations and omissions described herein were material to Plaintiffs and the Illinois Subclass members' decisions to purchase the Gift Cards.

357.   Plaintiffs and the Illinois Subclass suffered ascertainable loss caused by Walmart's material omissions and misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs and Illinois Subclass members who purchased the Gift Cards would not have purchased the Gift Cards but for Walmart's violations of the Illinois CFA.

358.   Walmart had an ongoing duty to all Walmart customers, Plaintiffs, and the Illinois Subclass to refrain from unfair and deceptive practices under the Illinois CFA.  All owners of the Gift Cards suffered ascertainable monetary loss, to wit: the loss of funds associated with their Gift Cards, as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendant.

359.   Walmart's violations present a continuing risk to Plaintiffs and the Illinois Subclass as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

360.    As a direct and proximate result of Walmart's violations of the Illinois CFA, Plaintiffs and the Illinois Subclass have suffered injury-in-fact and/or actual damage.

361.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Illinois Subclass seek monetary relief against Walmart in the amount of actual damages, as well as punitive damages because Walmart acted with fraud and/or malice and/or was grossly negligent.

362.    Plaintiffs also seek an order enjoining Walmart's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the 815 ILCS 505/1 *et seq.*

O. **Claims Brought on Behalf of the Indiana Subclass**

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)

363.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

364.    Plaintiffs bring this Count on behalf of the Indiana Subclass.

365.    The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; ... (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; ... (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would

constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

366.    Prior to the filing of this Complaint, counsel for Plaintiffs provided Walmart with written pre-suit demands under Ind. Code § 24-5-0.5-5(a). As such, Defendants are on notice regarding the allegations under the Indiana DCSA. Because Defendants failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Indiana class are entitled.

367.    In the course of Defendants' business, they engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in violation of the Indiana DCSA in at least the following ways:

a.   Walmart misrepresented material facts to Plaintiffs and the Indiana Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

b.   Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff and the Indiana Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Indiana Subclass members when Defendants knew or should have known

that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Indiana Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiffs to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs and the Indiana Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Indiana Subclass members in a timely and accurate manner; and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy

and security measures and protect Plaintiffs and the Indiana Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

368.    In purchasing the Gift Cards, Plaintiffs and the Indiana Subclass members were deceived by Defendants' actions.

369.    Plaintiffs and the Indiana Subclass members reasonably relied upon the Defendants' false misrepresentations.

370.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

371.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

372.    The Defendants intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiffs and the Subclass.

373.    The Defendants knew or should have known that their conduct violated the Indiana DCSA.

374.    Walmart owed Plaintiffs and the Indiana Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

        a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

        b.  Intentionally concealed the foregoing from Plaintiff and the Class; and/or

        c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value,

while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

375.    Because Walmart's deception takes place in the context of consumer transactions, its deception affects the public interest.  Further, Walmart's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

376.    Walmart's conduct proximately caused injuries to Plaintiffs and the Indiana DCSA Subclass members.

377.    Plaintiffs and the other Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendants' conduct; to wit: the loss of the funds associated with their Gift Cards. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions.

378.    The Defendants' violations present a continuing risk to Plaintiffs and the Indiana Subclass members, as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

379.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and the  Indiana Subclass members seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana Class member, including treble damages up to $1,000 for Defendants' willfully deceptive acts. Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the Defendants' conduct and Defendants' high net worth.

P. **Claims Brought on Behalf of the Iowa Subclass**

**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUD ACT (IOWA CODE § 714H.1, *ET SEQ.*)**

380.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

381.    Plaintiffs bring this Count on behalf of the Iowa Subclass.

382.    Defendants each constitute a "person" under Iowa Code § 714H.2(7).

383.    Plaintiffs and the Iowa Subclass are "consumers," as defined by Iowa Code § 714H.2(3), who purchased Gift Cards.

384.    The Defendants participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), Iowa Code § 714H.1, et seq., as described herein.

385.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that Gift Cards are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be

known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

386.    Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

387.    In purchasing the Gift Cards, Plaintiffs and the Iowa Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

388.    Plaintiffs and the Iowa Subclass members reasonably relied upon the Defendants' false misrepresentations. They had no way of knowing that the Defendants' representations were false and misleading.

389.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

390.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

391.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Iowa CFA.

392.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

393.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Iowa Subclass members about the true value of the Gift Cards.

394.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiff and the Iowa Subclass.

395.    Walmart knew or should have known that its conduct violated the Iowa CFA.

396.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

397.    Walmart owed Plaintiffs a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

   a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

   b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

   c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

398.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiffs and the Iowa Subclass.

399.     Walmart's conduct proximately caused injuries to Plaintiffs and the Iowa Subclass Members.

400.     Plaintiffs and the Iowa Subclass were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's conduct in that had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the Iowa Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Iowa CFA.  These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

401.     Walmart's violations present a continuing risk to Plaintiffs and the Iowa Subclass as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

402.     Plaintiffs and the Iowa Subclass were injured by Defendants' unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H.5 of the Iowa Code. Because the Defendants' conduct was committed willfully, Plaintiffs and the Iowa Subclass seek treble damages as provided in Iowa code § 714H.5(4).

403.     Plaintiffs and the Iowa Subclass also seek court costs and attorneys' fees as a result of the Defendants' violation of Chapter 714H.3 as provided in Iowa Code § 714H.5(2).

Q.  **Claims Brought on Behalf of the Kansas Subclass**

### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (KAN. STAT. ANN. §§ 50-623, *ET SEQ.*)

404.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

405.    Plaintiff Amanda Rohrer is a citizen and resident of Kansas and was a resident of Kansas when the data breach occurred.  Plaintiff Rohrer brings this Count on her own behalf and on behalf of the members of the Kansas Subclass.

406.    Each Defendant is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

407.    Kansas Subclass members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased one or more of the Gift Cards.

408.    The sale of the Gift Cards to the Kansas Class Members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

409.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) [p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

410.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities

with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that Gift Cards are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

411. Plaintiffs have provided notice of this action and a copy of this Complaint to Kansas Attorneys General pursuant to Kan. Stat. § 50-634(g).

412. Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

413. In purchasing the Gift Cards, Plaintiffs and the Kansas Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

414.    Plaintiffs and the Kansas Subclass members reasonably relied upon the Defendants' false misrepresentations. They had no way of knowing that the Defendants' representations were false and misleading.

415.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

416.    Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

417.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Kansas CPA.

418.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

419.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members about the true value of the Gift Cards.

420.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiff and the Kansas Subclass members.

421.    Walmart knew or should have known that its conduct violated the Kansas CPA.

422.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

423.    Walmart owed Plaintiffs a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

    a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

    b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

424.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiff and the Kansas Subclass.

425.    Walmart's conduct proximately caused injuries to Plaintiffs and the Kansas Subclass Members.

426.    Plaintiff and the Kansas Subclass were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's conduct in that had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the other Kansas Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but

for Walmart's violations of the Kansas CPA.   These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

427.    Walmart's violations present a continuing risk to Plaintiffs as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

428.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs and the Kansas Class seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Plaintiff and Kansas Class member.

429.    Plaintiffs also seek an order enjoining the Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623, *et seq*.

R.  **Claims Brought on Behalf of the Kentucky Subclass**

## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### (KY. REV. STAT. §§ 367.110, *ET SEQ.*)

430.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

431.    Plaintiff Kris Cunningham is a citizen and resident of Kentucky and was a resident of Kentucky when the data breach occurred.  Plaintiff Cunningham brings this Count on his own behalf and on behalf of the members of the Kentucky Subclass.

432.    Walmart, Plaintiffs, and members of the Kentucky Subclass are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

433.    Walmart engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

434.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …." Ky. Rev. Stat. § 367.170(1).

435.   Walmart participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By claiming to adequately secure consumers' personal and financial information, when in truth and fact its security practices were inadequate, Walmart engaged in deceptive business practices prohibited by the Kentucky CPA.

436.   In the course of its business, Walmart engaged in consumer transactions with numerous Kentucky consumers in connection with the sale of the Gift Cards, yet it did not take adequate steps to protect the value of the Gift Cards from theft, and failed to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, and otherwise engaged in activities with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with its provision of credit bureau services to Kentucky citizens and businesses.

437.   Walmart has known about the high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information until recently.

438.   By failing to disclose and by actively concealing the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Kentucky CPA.

439.    In the course of Walmart's business, it willfully failed to disclose or actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

440.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Kentucky Subclass, about the true security of its Gift Card systems, the ability to provide data security, and the integrity of the Walmart company.

441.    Walmart intentionally and knowingly misrepresented materials facts regarding its services and its ability to protect consumers' gift card information with an intent to mislead Plaintiffs and the Kentucky Subclass.

442.    Walmart knew or should have known that its conduct violated the Kentucky CPA.

443.    Walmart made material statements about the security and reliability of its Gift Cards that were either false or misleading.

444.    Walmart owed Plaintiffs and the Kentucky Subclass a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

> a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;
>
> b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value,

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

445.    Because Walmart fraudulently concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Plaintiffs and the Kentucky Subclass have been harmed.

446.    Walmart's misrepresentations and omissions were material to Plaintiffs and other Class member's transactions with Walmart and were made knowingly and with reason to know that Plaintiffs and the Kentucky Subclass would rely on the misrepresentations and omissions.

447.    Plaintiffs and the Kentucky Subclass suffered ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information;  to wit, the loss of the funds associated with their Gift Cards  Had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the Kentucky Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Kentucky CPA.

448.    Walmart had an ongoing duty to all Walmart customers to refrain from unfair and deceptive practices under the Kentucky CPA. Plaintiffs, the Kentucky Subclass members, and all owners of the Gift Cards suffered ascertainable monetary loss, to wit: the loss of funds associated with their Gift Cards, as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendants.

449.   Walmart's violations present a continuing risk to Plaintiffs and the Kentucky Subclass as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

450.   As a direct and proximate result of Walmart's violations of the Kentucky CFA, Plaintiffs and the Kentucky Subclass have suffered injury-in-fact and/or actual damage.

451.   Plaintiffs and the Kentucky Subclass members seek monetary relief against Walmart in the amount of actual damages, as well as punitive damages because Walmart acted with fraud and/or malice and/or was grossly negligent.

452.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs and the Kentucky Subclass seek to recover actual damages in an amount to be determined at trial; an order enjoining Walmart's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

S.  **Claims Brought on Behalf of the Louisiana Subclass**

### LOUISIANA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION LAW
### (LA. REV. STAT. ANN. §§ 51:1401, *ET SEQ.*)

453.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

454.   Plaintiff Mary Susan Dubinsky is a citizen and resident of Louisiana and was a resident of Louisiana when the data breach occurred.  Plaintiff Dubinsky brings this Count on her own behalf and on behalf of the members of the Louisiana Subclass.

455.   Walmart, Plaintiff, and the Louisiana Subclass members are "persons" within the meaning of the La. Rev. Stat. Ann. §51:1402(8).

456.    Plaintiff and the Louisiana Subclass are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

457.    Walmart engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

458.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Walmart participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

459.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

460.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

461.    Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

462.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Louisiana CPL.

463.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Louisiana Subclass members about the true value of the Gift Cards.

464.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the Louisiana Subclass members.

465.    Walmart knew or should have known that its conduct violated the Louisiana CPL.

466.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

467.    Walmart owed Plaintiffs a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

> a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;
>
> b.  Intentionally concealed the foregoing from Plaintiffs and the Louisiana Subclass; and/or
>
> c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Louisiana Subclass that contradicted these representations.

468.    Walmart's fraudulent misrepresentations, omissions, and concealments as described herein were material to Plaintiffs and the Louisiana Subclass.

469.    Plaintiffs and the Louisiana Subclass suffered ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information.    Had Plaintiffs and the Louisiana Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.    Accordingly, Plaintiffs and the Louisiana Class members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Louisiana CPL.

470.    Walmart had an ongoing duty to Plaintiffs and the Louisiana Subclass members to refrain from unfair and deceptive practices under the Louisiana CPL. All owners of Gift Cards suffered ascertainable loss; to wit, the loss of the funds associated with their Gift Cards, as a result of Walmart's deceptive and unfair acts and practices made in the course of Walmart's business.

471.    Walmart's violations present a continuing risk to Plaintiffs and the Louisiana Subclass members as well as to the general public.    Walmart's unlawful acts and practices complained of herein affect the public interest.

472.    As a direct and proximate result of Walmart's violations of the Louisiana CPL, Plaintiffs and the Louisiana Subclass members have suffered injury-in-fact and/or actual damage.

473.    Pursuant to La. Rev. Stat. Ann. § 51:1409, Plaintiffs and the Louisiana Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for Walmart's knowing violations of the Louisiana CPL; an order enjoining Walmart's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. Ann. § 51:1409.

T. **Claims Brought on Behalf of the Maine Subclass**

## MAINE COUNT I

### MAINE UNFAIR TRADE PRACTICES ACT
### ME. REV. STAT. ANN. TIT. 5, § 205-A ET SEQ.

474.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

475.    Plaintiffs bring this Count on behalf of members of the Maine Subclass.

476.    Maine Subclass members' gift card information was accessed and stored by the Defendants for personal, family, and/or household purposes.

477.    Prior to the filing of this Complaint, counsel for Plaintiffs provided Walmart with a written pre-suit demand pursuant to Me. Rev. Stat. Ann. Tit. 5, § 213(1-A).

478.    Walmart engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Me. Rev. Stat. tit. 5, § 207, in at least the following ways:

      a.   Walmart misrepresented and fraudulently advertised material facts to Plaintiffs and the Maine Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

      b.   Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Maine Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs

and the Maine Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Maine Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

d.  Defendants intended for Plaintiffs and the Maine Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs and the Maine Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Maine Subclass members in a timely and accurate manner contrary to the duties imposed by Me. Rev. Stat. tit. 10 § 1348(1); and

      h.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs' and the Maine Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

479.    The above unfair and deceptive practices and acts by Walmart were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

480.    Defendants knew or should have known that its data security practices were inadequate to safeguard Maine Subclass members' gift card information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and members of the Maine Subclass.

481.    As a direct and proximate result of Defendants' unlawful practices, Plaintiffs and the Maine Subclass members suffered injury and/or damages.

482.    Pursuant to Me. Rev. Stat. tit. 5, § 213, Plaintiffs and members of the Maine Subclass seek to recover proper relief including, not limited to, damages, restitution, injunctive relief, and/or attorneys' fees and costs.

U.  **Claims Brought on Behalf of the Maryland Subclass**

### MARYLAND CONSUMER PROTECTION ACT
### MD CODE COMMERCIAL LAW (§ 13-301, *ET. SEQ.*)

483.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

484.    Plaintiffs bring this Count on behalf of the Maryland Subclass.

485.   Maryland Subclass members are "consumers" as meant by Md. Code Ann., Com. Law § 13-101.

486.   The unlawful trade practices, misrepresentations, and omissions described herein did not constitute "professional services" on the part of Defendant. the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services in violation of Md. Code Ann., Com. Law §13-301, in at least the following ways:

a.   Walmart misrepresented material facts to Plaintiffs and the Maryland Subclass by representing that it would maintain adequate data privacy and security practices to protect the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

b.   Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Maryland Subclass members which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Maryland Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c.   Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Maryland

Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiffs and the Maryland Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs and the Maryland Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Maryland Subclass members in a timely and accurate manner in violation of Md. Code Ann., Com. Law § 14-3504(b)(3); and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs' and the Maryland Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

487.    The above unfair and deceptive practices and acts by Walmart improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

488.    Defendants knew or should have known that its data security practices were inadequate to safeguard Maryland Subclass members' gift card information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Maryland Subclass.

489.    As a direct and proximate result of Defendants' unlawful practices, Maryland Subclass members suffered injury and/or damages.

490.    Maryland Subclass members seek relief under Md. Code Ann., Com. Law § 13-408, including, but not limited to, damages, injunctive relief, and attorneys' fees and costs.

V.  **Claims Brought on Behalf of Massachusetts Subclass**

### MASSACHUSETTS CONSUMER PROTECTION ACT
### MASS. GEN. LAWS ANN. CH. 93A, § 1, *ET. SEQ.*

491.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

492.    Plaintiffs bring this Count on behalf of members of the Massachusetts Subclass.

493.    Prior to the filing of this Complaint, counsel for Plaintiffs provided Walmart with written pre-suit demands pursuant to Mass. Gen. Laws Ann. Ch. 93A § 9(3).

494.    Walmart operates in "trade or commerce" as meant by Mass. Gen. Laws Ann. ch. 93A, § 1.Walmart engaged in deceptive and unfair acts and practices, misrepresentation, and the

concealment, suppression, and omission of material facts with respect to the sale and advertisement of services in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a), in at least the following ways:

    a.  Walmart misrepresented material facts to Plaintiffs and the Massachusetts Subclass members by representing that it would maintain adequate data privacy and security practices to protect the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

    b.  Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Massachusetts Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Massachusetts Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

    c.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Massachusetts Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiffs and the Massachusetts Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs and the Massachusetts Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Massachusetts Subclass members in a timely and accurate manner in violation of Mass. Gen. Laws Ann. ch. 93H, § 3(a); and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Massachusetts Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

495.    The above unfair and deceptive practices and acts by Walmart were improper, oppressive, and unfair.  These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition. These acts were within the penumbra of common law, statutory, or other established concepts of unfairness.

496.     Defendants knew or should have known that its data security practices were inadequate to safeguard Plaintiffs' and the Massachusetts Subclass members' gift card information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and the members of the Massachusetts Subclass.

497.     As a direct and proximate result of Defendants' unlawful practices, Plaintiffs and the Massachusetts Subclass members suffered injury and/or damages.

498.     Plaintiffs and the Massachusetts Subclass members seek relief under Mass. Gen. Laws Ann. ch. 93A, § 9, including, but not limited to, actual damages, statutory damages, double or treble damages, injunctive and/or other equitable relief, and/or attorneys' fees and costs.

W. **Claims on Behalf of the Michigan Subclass**

## MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.901, *ET SEQ.*)

499.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

500.     Plaintiffs bring this Count on behalf of the Michigan Subclass.

501.     Plaintiffs and Michigan Subclass members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

502.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …." Mich. Comp. Laws § 445.903(1). Walmart engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that

goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). By failing to disclose and actively concealing the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices prohibited by the Michigan CPA.

503.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with its business.

504.    Walmart knew of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value but concealed this information.

505.    By way of the foregoing, in the course of its business, Walmart engaged in deceptive business practices in violation of the Michigan CPA, including but not limited to:

a. Walmart misrepresented material facts (intending for others to reply upon the misrepresentations) to Plaintiffs and the Michigan Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

b. Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Michigan Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Michigan Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c. Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Michigan Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiffs and the Michigan Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs' and the Michigan Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Michigan Subclass members in a timely and accurate manner; and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs' and the Michigan Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

506.  In the course of Walmart's business, it willfully failed to disclose and actively concealed the risk posed by the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value by failing to promptly disclose the data breaches it had suffered.

507.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Plaintiffs and Michigan Subclass members, regarding the true nature of the value, security and safety of its Gift Cards.

508.    Walmart intentionally and knowingly misrepresented such material facts with an intent to mislead Plaintiffs and the Michigan Subclass members.

509.    Walmart knew or should have known that its conduct violated the Michigan CPA.

510.    As alleged above, Walmart made material statements that were either false or misleading about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

511.    Walmart owed Plaintiffs and the Michigan Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

   a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

   b.  Intentionally concealed the foregoing from Plaintiffs and the Michigan Subclass; and/or

   c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

512.    Walmart's representations and omissions described herein were material to Plaintiffs and the Michigan Subclass members' decisions to purchase the Gift Cards.

513.    Plaintiffs and the Michigan Subclass suffered an ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information as alleged herein.

514.    Walmart had an ongoing duty to all Walmart customers, including Plaintiffs and the Michigan Subclass members, to refrain from unfair and deceptive practices under the Michigan CPA.

515.    Walmart's violations present a continuing risk to the Plaintiffs and Michigan Subclass members, as well as to the general public.   Walmart's unlawful acts and practices complained of herein affect the public interest.

516.    As a direct and proximate result of Walmart's violations of the Michigan CPA, Plaintiffs and the Michigan Subclass have suffered injury-in-fact and/or actual damage.

517.    Plaintiffs and the Michigan Subclass seek injunctive relief to enjoin Walmart from continuing its unfair and deceptive acts; monetary relief against Walmart measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

518.    Plaintiffs and the Michigan Subclass members also seek punitive damages against Walmart because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Walmart intentionally and willfully misrepresented the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value. Walmart's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## X.  Claims Brought on Behalf of the Minnesota Subclass
## MINNESOTA COUNT I

### MINNESOTA CONSUMER FRAUD ACT
### MINN. STAT. § 325F.68, *ET. SEQ.* AND MINN. STAT. § 8.31, *ET. SEQ.*

519.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

520.    Plaintiffs bring this Count on behalf of the Minnesota Subclass.

521.    Walmart engaged in unlawful practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of services in violation of Minn. Stat. Ann. § 325F.69, in at least the following ways:

    a.  Walmart omitted, suppressed, and concealed the material fact of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value;

    b.  Walmart misrepresented material facts (intending for others to reply upon the misrepresentations) to Plaintiffs and the Minnesota Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

    c.  Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Minnesota Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift

Cards to Plaintiffs and Minnesota Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

d.   Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

e.   Defendants intended for Plaintiffs and the Minnesota Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

f.   At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

g.   Defendants' deactivation of Plaintiffs and the Minnesota class members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

h.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Minnesota Subclass members in a timely and accurate manner, in violation of Minn. Stat. Ann. § 325E.61(1)(a); and

i.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Minnesota Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

522.   The above unlawful and deceptive acts and practices and acts by Walmart were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

523.   Walmart knew or should have known that its data security practices were inadequate to safeguard Minnesota Subclass members' gift card information and that risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Minnesota Subclass.

524.   As a direct and proximate result of Defendant's unlawful practices, Minnesota Subclass members suffered injury and/or damages.

525.   Minnesota Subclass members seek relief under Minn. Stat. Ann. §8.31, including, but not limited to, damages, injunctive and/or other equitable relief, and attorneys' fees and costs.

Y.  **Claims Brought on Behalf of the Mississippi Subclass**

**VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT**
**(MISS. CODE. ANN. §§ 75-24-1, *ET SEQ*.)**

526.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

527.     Plaintiff Dianne Walton is a citizen and resident of Mississippi and was a resident of Mississippi when the data breach occurred.  Plaintiff Walton brings this Count on her own behalf and on behalf of the members of the Mississippi Subclass.

528.     The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5(2).

529.     In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that Gift Cards are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be

known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

530.    Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

531.    In purchasing the Gift Cards, Plaintiffs and the Mississippi Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

532.    Plaintiffs and the Mississippi Subclass members reasonably relied upon the Defendants' false misrepresentations. They had no way of knowing that the Defendants' representations were false and misleading.

533.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

534.    Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

535.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Mississippi CPA.

536.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

537.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Mississippi Subclass members about the true value of the Gift Cards.

538.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the Mississippi Subclass.

539.    Walmart knew or should have known that its conduct violated the Mississippi CPA.

540.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

541.    Walmart owed Plaintiffs a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

a.    Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

542.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiffs and the Mississippi Subclass.

543.    Walmart's conduct proximately caused injuries to Plaintiffs and the Mississippi Subclass Members.

544.    Plaintiff and the Mississippi Subclass were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's conduct in that had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact. Accordingly, Plaintiffs and the other Iowa Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Mississippi CPA. These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

545.    Walmart's violations present a continuing risk to Plaintiffs as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

546.    As a direct and proximate result of the Defendants' violations of the Mississippi CPA, Plaintiffs and the Mississippi Subclass have suffered injury-in-fact and/or actual damage.

547.    Plaintiffs' actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

Z.  **Claims Brought on Behalf of the Missouri Subclass**

### MISSOURI MERCHANDISING PRACTICES ACT
### (MO. REV. STAT. §§ 407.010, *ET SEQ.*)

548.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

549.     Plaintiff Gracie Foster is a citizen and resident of Missouri and was a resident of Missouri when the data breach occurred.  Plaintiff Foster brings this Count on her own behalf and on behalf of the members of the Missouri Subclass.

550.     Plaintiffs bring this Count on behalf of members of the Missouri Subclass.

551.     Plaintiffs and Missouri Subclass members' gift card information was accessed and stored by the Defendant in connection with the purchase and sale of "merchandise" or services in "trade" or "commerce" as meant by Mo. Rev. Stat. § 407.010(7).

552.     Walmart engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the services in violation of Mo. Rev. Stat. § 407.020(1), in at least the following ways:

        a.  Walmart misrepresented material facts (intending for others to reply upon the misrepresentations) to Plaintiffs and the Missouri Subclass by representing that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

        b.  Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiffs and the Missouri Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the Missouri Subclass and class members when Defendants knew or should have known that the cards had been altered and that

the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c. Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the Missouri Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d. Defendants intended for Plaintiffs and the Missouri Subclass members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e. At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f. Defendants' deactivation of Plaintiffs and the Missouri Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g. Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the Missouri Subclass members in a timely and accurate manner, in violation of Mo. Rev. Stat. § 407.1500(2)(1)(a); and

h. Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect and Plaintiffs' and the Missouri Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

553. The above unlawful and deceptive acts and practices and acts by Walmart were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

554. Walmart knew or should have known that its data security practices were inadequate to safeguard and the Missouri Subclass members' gift card information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Missouri Subclass.

555. As a direct and proximate result of Defendants' unlawful practices, Missouri Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of the funds associated with their Gift Cards. Missouri Subclass members seek relief under Mo. Rev. Stat. § 407.025, including, but not limited to, injunctive relief, actual damages, punitive damages, and attorneys' fees and costs.

AA.    **Claims Brought on Behalf of the Montana Subclass**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101, *ET SEQ.*)**

556.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

557.    Plaintiffs bring this Count on behalf of members of the Montana Subclass.

558.    Defendants, Plaintiffs, and the Montana Subclass are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

559.    Montana Subclass members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

560.    The sale of the Gift Cards to Montana Subclass members occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendants committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section. 548. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103. In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as described above. Accordingly, Walmart engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of the Montana CPA.

561.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

562.     Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

563.     In purchasing the Gift Cards, Plaintiffs and the Montana Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had Plaintiffs and the Montana Subclass members reasonably relied upon the Defendants' false misrepresentations.

564.     They had no way of knowing that the Defendants' representations were false and misleading. Walmart's actions as set forth above occurred in the conduct of trade or commerce.

565.     Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

566.     By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Montana CPA.

567.     In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

568.     Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Montana Subclass members about the true value of the Gift Cards.

569.     Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the Montana Subclass.

570.     Walmart knew or should have known that its conduct violated the Montana CPA.

571.     As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

572.     Walmart owed Plaintiffs and Montana Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

      a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

      b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

      c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

573.     Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiffs and the Montana Subclass.

574.     Walmart's conduct proximately caused injuries to Plaintiffs and the Montana Subclass Members.

575.     Plaintiffs and the Montana Subclass were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's conduct in that had Class

members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the other Class members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Montana CPA.  These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

576.    Walmart's violations present a continuing risk to Plaintiffs as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

577.    Because of Walmart's unlawful methods, acts, and practices have caused Plaintiffs and Montana Subclass members to suffer an ascertainable loss of money and property, Plaintiffs and the Subclass seek from the Defendants actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

BB.    **Claims Brought on Behalf of the Nebraska Subclass**

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. § 59-1601, *ET SEQ.*)

578.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

579.    Plaintiffs bring this Count on behalf of the members of the Nebraska Subclass.

580.    The Defendants, Plaintiffs, and Nebraska Class Members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

581.    The Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

582.    The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat.  § 59-1602. The Defendants' conduct as set forth herein constitutes unfair or deceptive acts or practices.

583.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards. Accordingly, the Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that Gift Cards are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

584.    Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

585.    In purchasing the Gift Cards, Plaintiffs and the Nebraska Subclass members were deceived by Walmart's failure to disclose the high likelihood that the Gift Cards had Plaintiffs and the Nebraska Subclass members reasonably relied upon the Defendants' false misrepresentations. They had no way of knowing that the Defendants' representations were false and misleading.

586.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

587.    Defendants unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

588.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Nebraska CPA.

589.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

590.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Nebraska Subclass members about the true value of the Gift Cards.

591.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the Nebraska Subclass.

592.    Walmart knew or should have known that its conduct violated the Nebraska CPA.

593.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

594.    Walmart owed Plaintiffs and the Nebraska Subclass a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

> a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;
>
> b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or
>
> c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

595.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiffs and the Nebraska Subclass.

596.    Walmart's conduct proximately caused injuries to Plaintiffs and the Nebraska Subclass Members.

597.    Plaintiffs and the Nebraska Subclass were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Walmart's conduct in that had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards

or would not have paid the prices they paid in fact. Accordingly, Plaintiffs and the Nebraska Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Nebraska CPA. These injuries are the direct and natural consequence of Walmart's misrepresentations and/or omissions.

598.   Walmart's violations present a continuing risk to Plaintiffs as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

599.   Because the Defendants' conduct caused injury to Plaintiffs and the Nebraska Subclass members' property through violations of the Nebraska CPA, Plaintiffs and the Nebraska Subclass seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining the Defendants' unfair or deceptive acts and practices, court costs, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

CC.   **Claims Brought on Behalf of the Nevada Subclass**

### VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
**(Nev. Rev. Stat. § 598.0903, *et seq.* and Nev. Rev. Stat. § 41.600)**

600.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

601.   Plaintiffs bring this Count on behalf of the Nevada Subclass.

602.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et seq., prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7.

Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

603.    Walmart engaged in deceptive trade practices that violated the Nevada DTPA by failing to disclose the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, including: knowingly representing that Gift Cards have uses and benefits which they do not have; advertising the Gift Cards with the intent not to sell them as advertised; representing that the subject of a transaction involving Gift Cards had been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

604.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

605.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, as discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive. Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

606.    Walmart knew there was high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, but concealed all of that information.

607.    By failing to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices in violation of the Nevada DTPA.

608.    In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

609.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Nevada Subclass members about the true value of the Gift Cards.

610.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with the intent to mislead Plaintiffs and the Nevada Subclass.

611.    Walmart knew or should have known that its conduct violated the Nevada DTPA.

612.    As alleged above, Walmart made material statements about the value and utility of the Gift Cards and the Walmart knew were either false or misleading.

613.    Walmart owed Plaintiffs and the Nevada Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

> a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

b.  Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

614.    Walmart's concealment of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value was material to Plaintiffs and the Nevada Subclass.

615.    Plaintiffs and the Nevada Subclass suffered ascertainable loss caused by Walmart's misrepresentations and its concealment of and failure to disclose material information.  Had Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.  Accordingly, Plaintiffs and the Nevada Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain but for Walmart's violations of the Nevada DTPA.

616.    Walmart had an ongoing duty to all Walmart customers to refrain from unfair and deceptive practices under the Nevada DTPA.  All owners of the Gift Cards suffered ascertainable loss; to wit: the loss of the funds associated with their Gift Cards, as a result of Walmart's deceptive and unfair acts and practices made in the course of Walmart's business.

617.    Walmart's violations present a continuing risk to Plaintiffs and the Nevada Subclass as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

618.     As a direct and proximate result of Walmart's violations of the Nevada DTPA, Plaintiffs and the Nevada Subclass have suffered injury-in-fact and/or actual damage.

619.     Accordingly, Plaintiffs and the Nevada Subclass seek their actual damages, punitive damages, an order enjoining Walmart's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  Nev. Rev. Stat. § 41.600.

DD.     **Claims Brought on Behalf of the New Hampshire Subclass**

### VIOLATION OF THE N.H. CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. §§ 358-A:1, *ET SEQ.*)

620.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

621.     Plaintiffs bring this Count on behalf of the New Hampshire Subclass.

622.     The New Hampshire Consumer Protection Act ("CPA") prohibits a person, in the conduct of any trade or commerce, from engaging in "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2.

623.     Defendants are persons within the meaning of the CPA. See N.H. Rev.Stat. §358-A:1(I).

624.     In the course of Walmart's business, it willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.  Accordingly, Walmart engaged in unfair and unlawful acts.

625.     Defendants' conduct was unfair because it offends established public policy, violates or offends state and federal statutory and common law, or falls within the penumbra of

those laws, is improper, oppressive, and unfair, and caused substantial injury to consumers, including by violation of the state and federal privacy laws enumerated herein.

626.    Defendants knew or should have known that its data security practices were inadequate to safeguard Plaintiffs and the New Hampshire Subclass members' gift card information and that risk of a data breach or theft was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and the members of the New Hampshire Subclass.

627.    Defendants' unfair and deceptive acts or practices, including its failure to disclose material information, has injured Plaintiffs and the New Hampshire Subclass; to wit: the loss of the funds associated with their Gift Cards.

628.    Plaintiffs and the New Hampshire Subclass are entitled to recover the greater of actual damages or $1,000 pursuant to N.H. Rev. Stat. § 358-A:10.  Plaintiffs and the New Hampshire Subclass members are also entitled to treble damages because Defendants acted willfully in its unfair and deceptive practices.

EE. **Claims Brought on Behalf of the New Jersey Subclass**

**NEW JERSEY CONSUMER FRAUD ACT**
**N.J. STAT. ANN. § 56:8-1, *ET. SEQ***

629.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

630.    Plaintiffs bring this Count on behalf of the members of the New Jersey Subclass.

631.    Defendant sells "merchandise," as meant by N.J. Stat. Ann. § 56:8-1, by products and services to the public, and by accessing and storing Plaintiffs' and New Jersey Subclass

members' gift card information in connection with their purchase of merchandise from creditors or prospective creditors.

632.    Plaintiffs have provided notice of this action and a copy of this Complaint to the New Jersey Attorney General pursuant to N.J. Stat. Ann. § 56:8-20.

633.    Walmart engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in violation of N.J. Stat. Ann. § 56:8-2, in at least the following ways:

a.    Walmart misrepresented material facts to Plaintiffs and the New Jersey Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

b.    Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff and the New Jersey Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the New Jersey Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to

know; alternatively, Defendants omitted notification to Plaintiffs and the New Jersey Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know;

d.  Defendants intended for Plaintiffs to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.  At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.  Defendants' deactivation of Plaintiffs and the New Jersey Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the New Jersey Subclass members in a timely and accurate manner, in violation of N.J. Stat. Ann. § 56:8-163(a); and

h.  Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs and the New Jersey Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

634.    The above unfair and deceptive practices and acts by Walmart were  improper, oppressive, and unfair. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

635.    Defendants knew or should have known the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the New Jersey Subclass.

636.    As a direct and proximate result of Defendant's unconscionable or deceptive acts and practices, Plaintiffs and New Jersey Subclass members suffered an ascertainable loss in money or property, real or personal, as described above, including the loss of the loss of the funds associated with their Gift Cards.

637.    Plaintiffs and New Jersey Subclass members seek relief under N.J. Stat. Ann. § 56:8-19, including, but not limited to, injunctive relief, other equitable relief, actual damages, treble damages, and attorneys' fees and costs.

FF. **Claims Brought on Behalf of the New Mexico Subclass**

### NEW MEXICO UNFAIR PRACTICES ACT
### (N.M.S.A. § 57-12-1 *ET SEQ*.)

638.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

639.    Plaintiffs bring this Count on behalf of the New Mexico subclass

640.    Plaintiffs and class members are consumers who purchased Walmart gift cards primarily for personal, family or household purposes.

641.    Plaintiffs and Walmart are "persons" under the New Mexico Unfair Practices Act ("UPA"). N.M. State Ann. § 57-12-2 (A).

642.    The New Mexico UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce…." N.M. State Ann. § 57-12-3, including making "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services…that may, tends to or does device or mislead any person and includes: (1) representing goods or services as those of another when the goods or services are not the goods or services of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services…(7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another…(17) failing to deliver the quality or quantity of goods or services contracted for…." N.M. State Ann. § 57-12-2(D).

643.    Walmart participated in unfair, deceptive, unconscionable, false or misleading practices that violated the New Mexico UPA.  By failing to disclose and actively concealing the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, Walmart engaged in deceptive business practices prohibited by the New Mexico UPA.

644.    In the course of its business, Walmart willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, and otherwise engaged in activities with a tendency or capacity to deceive.  Walmart also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

645.    Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the New Mexico Subclass that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

646.    Defendants intended for Plaintiffs and the New Mexico Subclass to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart.

647.    At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN.

648.    Had Plaintiffs and the New Mexico Subclass members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.    Accordingly, Plaintiffs and the New Mexico Subclass members overpaid for the Gift Cards and did not receive the benefit of their bargain. These injuries are the direct and natural consequences of Walmart's omissions.

649.    Walmart has known about the high likelihood that the Gift Cards had been tampered, with such that they had no value and/or greatly diminished value, but concealed all of that information.

650.    By failing to disclose the high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, Walmart engaged in unfair and deceptive business practices in violation of the New Mexico UPA.

651.    Walmart's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Class members, to purchase the Gift Cards without revealing the high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value.

652.    Walmart intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiffs and the New Mexico Subclass.

653.    Walmart knew or should have known that its conduct violated the New Mexico UPA.

654.    As alleged above, Walmart made material statements about the high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value that were either false or misleading.

655.    Walmart owed Plaintiffs a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

      a.    Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

      b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

      c.    Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value,

while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

656.    Walmart's representations and omissions described herein were material to Plaintiffs and the New Mexico Subclass members' decisions to purchase the Gift Cards.

657.    Plaintiffs and the New Mexico Subclass suffered ascertainable loss caused by Walmart's material omissions and misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs and New Mexico Subclass members who purchased the Gift Cards would not have purchased the Gift Cards but for Walmart's violations of the New Mexico UPA.

658.    Walmart had an ongoing duty to all Walmart customers, Plaintiffs, and the New Mexico Subclass to refrain from unfair and deceptive practices under the New Mexico UPA.  All owners of the Gift Cards suffered ascertainable monetary loss, to wit: the loss of funds associated with their Gift Cards, as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendant.

659.    Walmart's violations present a continuing risk to Plaintiffs and the New Mexico Subclass as well as to the general public.  Walmart's unlawful acts and practices complained of herein affect the public interest.

660.    As a direct and proximate result of Walmart's violations of the New Mexico UPA, Plaintiffs and the New Mexico Subclass have suffered injury-in-fact and/or actual damage.

661.    Plaintiffs and the New Mexico Subclass seek monetary relief against Walmart in the amount of actual damages, treble damages, as well as punitive damages because Walmart acted with fraud and/or malice and/or was grossly negligent.

662.     Plaintiffs also seek an order enjoining Walmart's' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under N.M. State Ann. § 57-12-2 *et seq*.

GG.     **Claims Brought on Behalf of the New York Subclass**

### NEW YORK COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. GEN. BUS. LAW § 349)

663.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

664.     Plaintiffs bring this Count on behalf of the members of the New York Subclass.

665.     New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

666.     In the course of Walmart's business, it willfully failed to disclose and actively concealed that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Walmart engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. Gen. Bus. Law § 349, including engaging in conduct likely to deceive. The challenged act or practice was "consumer-oriented;" (2) that the act or practice was misleading in a material way; and (3) Plaintiffs suffered injury as a result of the deceptive act or practice. Accordingly, Defendants have violated N.Y. GEN. BUS. LAW § 349.

667.     In the course of Defendants'' business, they engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in violation of N.Y. Gen. Bus. Law § 349, in at least the following ways:

a.  Walmart misrepresented material facts to Plaintiffs and the New York Subclass
    by representing and advertising that it would maintain the adequate data privacy
    of the Gift Card's secret eight numbers and maintain security features so only the
    purchaser or recipient of the Gift Card could use the Gift Card to purchase goods
    or services from Walmart;

b.  Walmart, through its representatives and/or agents, sold Gift Cards that had been
    tampered with, made representations to Plaintiff and the New York Subclass
    which amounted to deception, fraud, false pretenses, false promise,
    misrepresentation, unfair practice or the concealment, suppression, or omission of
    a material fact, including but not limited to the fact that Defendants sold Gift
    Cards to Plaintiffs and the New York Subclass members when Defendants knew
    or should have known that the cards had been altered and that the funds associated
    with the cards were likely to be stolen or misappropriated by strangers or third
    parties;

c.  Defendants misrepresented that the Gift Card's secret eight numbers were private
    and not within the knowledge of third parties without a need to know;
    alternatively, Defendants omitted notification to Plaintiffs and the New York
    Subclass members that the Gift Card's secret eight numbers were probably and/or
    possibly not private and were within the knowledge of third parties without a need
    to know.

d.  Defendants intended for Plaintiffs to believe that its security features prevented
    anyone but the purchaser or recipient of the Gift Card to use it to purchase goods
    or services from Walmart;

e.   At all times, Walmart intended for purchasers to believe that the PIN on the Gift
Cards were not known to entities or individuals with no legitimate business
purposes to know the PIN;

f.   Defendants' deactivation of Plaintiffs and the New York Subclass members' Gift
Cards constitutes deception, fraud, false pretenses, false promise,
misrepresentation, unfair practice or the concealment, suppression, or omission of
a material fact;

g.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by
failing to disclose the data breach to Plaintiffs and the New York Subclass
members in a timely and accurate manner; and

h.   Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by
failing to take proper action following the data breach to enact adequate privacy
and security measures and protect Plaintiffs and the New York Subclass
members' Gift Cards from further unauthorized disclosure, release, data breaches,
and theft.

668.   In purchasing the Gift Cards, Plaintiffs and the New York Subclass members
were deceived by Defendants' actions.

669.   Plaintiffs and the New York Subclass members reasonably relied upon the
Defendants' false misrepresentations.

670.   Walmart's actions as set forth above occurred in the conduct of trade or
commerce.

671.   The Defendants' unfair or deceptive acts or practices were likely to and did in fact
deceive reasonable consumers.

672.   The Defendants intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiffs and the New York Subclass.

673.   The Defendants knew or should have known that their conduct violated N.Y. GEN. BUS. LAW § 349.

674.   Walmart owed Plaintiffs and the New York Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

  a.  Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

  b.  Intentionally concealed the foregoing from Plaintiff and the Class; and/or

  c.  Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

675.   Because Walmart's deception takes place in the context of consumer transactions, its deception affects the public interest. Further, Walmart's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

676.   Walmart's conduct proximately caused injuries to Plaintiffs and the New York Subclass members.

677.   Plaintiffs and the New York Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendants'

conduct; to wit: the loss of the funds associated with their Gift Cards. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions. The Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

678.     Pursuant to N.Y. GEN. BUS. LAW § 349(h), Plaintiffs and each New York Subclass member may recover actual damages, in addition to three times actual damages up to $1,000 for the Defendants' willful and knowing violation of N.Y. GEN. BUS. LAW § 349.

    HH.     **Claims on Behalf of the North Carolina Subclass**

## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

679.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

680.     Plaintiff Jennifer Edmark ("Plaintiff Edmark") is a citizen and resident of North Carolina and was a resident of North Carolina when the data breach occurred.  Plaintiff Edmark brings this Count on her own behalf and on behalf of the members of the North Carolina Subclass.

681.     1968. Defendants engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

682.     The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). In the course of Walmart's business, it willfully failed to disclose and actively concealed that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair and deceptive trade practices because they (1) had the capacity or tendency to

deceive, (2) offend public policy, (3) are improper, oppressive, and unfair, or (4) cause substantial injury to consumers.

683.    In the course of Defendants'' business, they engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in violation of N.C. GEN. STAT. § 75-1.1(a), in at least the following ways:

    a.  Walmart misrepresented material facts to Plaintiffs and the North Carolina Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

    b.  Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff and the North Carolina Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that Defendants sold Gift Cards to Plaintiffs and the North Carolina Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

    c.  Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the North Carolina Subclass members that the Gift Card's secret eight numbers were probably and/or

possibly not private and were within the knowledge of third parties without a need to know;

d. Defendants intended for Plaintiffs to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e. At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f. Defendants' deactivation of Plaintiffs and the North Carolina Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g. Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the North Carolina Subclass members in a timely and accurate manner; and

h. Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Plaintiffs and the North Carolina Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

684.    In purchasing the Gift Cards, Plaintiffs and the North Carolina Subclass members were deceived by Defendants' actions.

685.   Plaintiffs and the North Carolina Subclass members reasonably relied upon the Defendants' false misrepresentations.

686.   Walmart's actions as set forth above occurred in the conduct of trade or commerce.

687.   The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

688.   The Defendants intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiffs and the Subclass.

689.   The Defendants knew or should have known that their conduct violated the North Carolina UDTPA.

690.   Walmart owed Plaintiffs and the North Carolina Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

      a.   Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

      b.   Intentionally concealed the foregoing from Plaintiff and the Class; and/or

      c.   Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

691.   Because Walmart's deception takes place in the context of consumer transactions, its deception affects the public interest.  Further, Walmart's unlawful conduct constitutes unfair

acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

692.     Walmart's conduct proximately caused injuries to Plaintiffs and the North Carolina Subclass members.

693.     Plaintiffs and the other Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendants' conduct; to wit: the loss of the funds associated with their Gift Cards. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions. The Defendants' violations present a continuing risk to Plaintiffs, North Carolina Subclass members, as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

694.     Plaintiffs and the North Carolina Subclass seek an order for treble their actual damages, court costs, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

695.     Plaintiffs and the North Carolina Subclass also seek punitive damages against the Defendants because the Defendants' conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

II. **Claims Brought on Behalf of the North Dakota Subclass**

### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE § 51-15-01 ET SEQ.)

696.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

697.     Plaintiffs bring this claim on behalf of the North Dakota Subclass.

698.     Plaintiffs, the North Dakota Subclass members, and each of the

699.     Defendants are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

700.     The Defendants engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

701.     The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. CENT. CODE § 51-15-02. As set forth above and below, the Defendants committed deceptive acts or practices, with the intent that North Dakota Subclass members rely thereon in connection with their purchase the Gift Cards.

702.     In the course of Defendants' business, they engaged in unconscionable and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in violation of N.D. CENT. CODE § 51-15-02, et. seq, in at least the following ways:

a.      Walmart misrepresented material facts to Plaintiffs and the North Dakota Subclass by representing and advertising that it would maintain the adequate data privacy of the Gift Card's secret eight numbers and maintain security features so only the purchaser or recipient of the Gift Card could use the Gift Card to purchase goods or services from Walmart;

b.      Walmart, through its representatives and/or agents, sold Gift Cards that had been tampered with, made representations to Plaintiff and the North Dakota Subclass which amounted to deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact, including but not limited to the fact that

Defendants sold Gift Cards to Plaintiffs and the North Dakota Subclass members when Defendants knew or should have known that the cards had been altered and that the funds associated with the cards were likely to be stolen or misappropriated by strangers or third parties;

c.     Defendants misrepresented that the Gift Card's secret eight numbers were private and not within the knowledge of third parties without a need to know; alternatively, Defendants omitted notification to Plaintiffs and the North Dakota Subclass members that the Gift Card's secret eight numbers were probably and/or possibly not private and were within the knowledge of third parties without a need to know.

d.     Defendants intended for Plaintiffs to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods or services from Walmart;

e.     At all times, Walmart intended for purchasers to believe that the PIN on the Gift Cards were not known to entities or individuals with no legitimate business purposes to know the PIN;

f.     Defendants' deactivation of Plaintiffs and the North Dakota Subclass members' Gift Cards constitutes deception, fraud, false pretenses, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of a material fact;

g.     Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the data breach to Plaintiffs and the North Dakota Subclass members in a timely and accurate manner; and

h.     Walmart engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the data breach to enact adequate privacy and security

measures and protect Plaintiffs and the North Dakota Subclass members' Gift Cards from further unauthorized disclosure, release, data breaches, and theft.

703.    In purchasing the Gift Cards, Plaintiffs and the North Dakota Subclass members were deceived by Defendants' actions.

704.    Plaintiffs and the North Dakota Subclass members reasonably relied upon the Defendants' false misrepresentations.

705.    Walmart's actions as set forth above occurred in the conduct of trade or commerce.

706.    The Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

707.    The Defendants intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiffs and the Subclass.

708.    The Defendants knew or should have known that their conduct violated the North Dakota CFA.

709.    Walmart owed Plaintiffs and the North Dakota Subclass members a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walmart:

a.      Possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised;

b.      Intentionally concealed the foregoing from Plaintiff and the Class; and/or

c.      Made incomplete representations about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, while

purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

710.    Because Walmart's deception takes place in the context of consumer transactions, its deception affects the public interest.  Further, Walmart's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

711.    Walmart's conduct proximately caused injuries to Plaintiffs and the North Dakota Subclass members.

712.    Plaintiffs and the other Subclass members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of the Defendants' conduct; to wit: the loss of the funds associated with their Gift Cards. These injuries are the direct and natural consequence of the Defendants' misrepresentations and omissions. The Defendants' violations present a continuing risk to Plaintiffs and the North Dakota Subclass members, as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

713.    North Dakota Subclass members seek punitive damages against the Defendants because the Defendants' conduct was egregious. The Defendants' egregious conduct warrants punitive damages.

714.    Further, the Defendants knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, the Defendants are liable to Plaintiffs and the North Dakota Subclass for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining the Defendants' unfair and/or

deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

JJ. **Claims Brought on Behalf of the Ohio Subclass**

## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
## (OHIO REV. CODE ANN. § 1345.01, *ET SEQ.*)

710.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

711.    Plaintiff Lillian Rudd is a resident of the above state and was also a resident of such state when her funds were used without authorization, misappropriated, and/or stolen. Plaintiff brings this Count on Plaintiff's own behalf and on behalf of members of the above state Subclass.

712.    Defendants are "persons" as defined by the Ohio Consumers Sales Practices Act, Ohio Rev. Code Ann. ("Ohio CSPA") § 1345.01(B).

713.    Plaintiff and the Ohio Subclass' members are "[c]onsumers" as defined by the Ohio CSPA § 1345.01(D).

714.    Defendants' conduct constitutes unfair and deceptive acts or practices in connection with a consumer transaction within the meaning of the Ohio CSPA § 1345, *et. seq.*

715.    Defendants' misrepresentations and omissions were material to Plaintiff and Ohio Subclass members' transactions with Defendants, and were made knowingly and with reason to know that Plaintiff and Ohio Subclass members would rely on such misrepresentations and omissions.

716.    Plaintiff and Ohio Subclass members reasonably relied on Defendants' misrepresentations and omissions and suffered harm as a result. Plaintiff and Ohio Subclass members were injured in fact from a loss of their funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards, as well as  time and expense related to the

general nuisance and annoyance of dealing with the issues resulting from the Defendants' misconduct, and costs associated with the loss of productivity from taking time to ameliorate the actual and future consequences of Defendants' misconduct, all of which have an ascertainable monetary value to be proven at trial.

717.     As a result of Defendants' unfair and deceptive acts or practices, Plaintiff and Ohio Subclass members suffered injury in fact and lost property and/or money.

718.     Plaintiff and Ohio Subclass members seek restitution, injunctive relief and statutory damages, to the extent permitted by applicable law, on behalf of the Class.

719.     Defendants conducted the practices alleged herein in the course of business, pursuant to standardized practices that it engaged in both before and after the Plaintiff and Ohio Subclass members in this case were harmed. These acts have, upon information and belief, been repeated t numerous  times, and many consumers were affected.

### KK.     Claims Brought on Behalf of the Oklahoma Subclass
### OKLAHOMA CONSUMER PROTECTION ACT
### OKLA. STAT. ANN. TIT. 15, § 751, *ET. SEQ.*

720.     Plaintiffs incorporate the above allegations by reference.

721.     Plaintiff Donnie Brown is a resident of the above state and was also a resident of such state when his funds were used without authorization, misappropriated, and/or stolen. Plaintiff brings this Count on Plaintiff's own behalf and on behalf of members of the above state Subclass.

722.     Plaintiff and the Oklahoma Subclass' members purchased "merchandise," as meant by Okla. Stat. tit. 15, § 752, from Defendants.

723.     Plaintiff and the Oklahoma Subclass members' interactions with the Defendants constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752.

724.    Defendants, acting in the course of business, intentionally and willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

725.    Defendants engaged in unlawful, unfair, and deceptive trade practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the relevant Gift Cards in violation of Okla. Stat. tit. 15, § 753, in at least the following ways:

a.      Defendants misrepresented and/or concealed material facts to the Plaintiff and the Oklahoma Subclass' members by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff and the Oklahoma Subclass members' personal funds from unauthorized use, misappropriation, and/or theft in violation of Okla. Stat. tit. 15, § 753(5) and (8);

b.      Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their protections for Plaintiff and the Oklahoma Subclass' members' funds, in violation of Okla. Stat. tit. 15, § 753(5) and (8);

c.      Defendants engaged in unlawful, unfair, and deceptive trade practices by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds, in violation of Okla. Stat. Ann. tit. 24, § 163(A);

d.   Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures to protect Plaintiff and the Oklahoma Subclass' members' funds from unauthorized use, misappropriation, and/or theft.

726.   The above unlawful, unfair, and deceptive trade practices and acts by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

727.   Defendants knew, or reasonably should have known, that its protections were inadequate to safeguard Plaintiff and Oklahoma Subclass' members' funds and that risk of an unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the members of the Oklahoma Subclass.

728.   As a direct and proximate result of Defendants' deceptive acts and practices, the Plaintiff and the Oklahoma Subclass' members suffered injury and/or damages.

729.   Plaintiff and Oklahoma Subclass' members seek relief under Okla. Stat. Ann. tit. 15, § 761.1 including, but not limited to, injunctive relief, actual damages, statutory damages, and attorneys' fees and costs.

LL. **Claims Brought on Behalf of the Oregon Subclass**

**OREGON UNLAWFUL TRADE PRACTICES ACT
OR. REV. STAT. § 646.605, *ET SEQ.***

730.   Plaintiffs incorporate the above allegations by reference.

731.    This Count is brought on behalf of members of the above state Subclass.

732.    Defendants are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

733.    The relevant Gift Cards are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

734.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if [they] are of another; (i) Advertis[ing] … goods or services with intent not to provide [them] as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

735.    Defendants' actions as alleged herein occurred in the ordinary course of business and in the conduct of trade or commerce.

736.    Defendants knowingly, intentionally, and willfully failed to disclose and actively concealed their deficient security measures discussed herein in a manner that was false and misleading, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the provision of the relevant Gift Cards.

737.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with its provision of Gift Cards.

738.    Defendants knew, or reasonably should have known, that the protections for the relevant Gift Cards were inadequate and that consumers' funds were at risk of unauthorized use, misappropriation, and/or theft. Defendants, upon information and belief, knew and concealed this information prior to the Class members' purchases.

739.    Defendants were also aware, and actively concealed, that they valued profits over the security of consumers' funds, and that Defendants were inadequately protecting consumers' funds from unauthorized use, misappropriation, and/or theft.

740.    Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Oregon Subclass' members, into believing the relevant Gift Cards were secure and/or otherwise safe to use.

741.    Defendants owed the Oregon Subclass a duty to disclose the truth pertaining to the inadequacy of their measures to ensure consumers' funds were adequately protected because Defendants:

a.      Possessed exclusive knowledge that it valued profits and cost-cutting over the security and/or integrity of the relevant Gift Cards;

b.      Intentionally concealed the foregoing from the Oregon Subclass; and/or

c.      Made incomplete representations about the security and integrity of its Gift Cards generally, while purposefully withholding material facts from the Oregon Subclass that contradicted these representations.

742.    Defendants' misrepresentations and/or omissions as alleged herein were material to the Oregon Subclass.

743.    The Oregon Subclass suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information. The Oregon Subclass' members would have taken steps to prevent the unauthorized use, misappropriation, and/or theft of their funds if they were aware of the foregoing by, for example, refraining from purchasing the relevant Gift Cards.

744.    Defendants' violations present a continuing risk to the Oregon Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

745.    As a direct and proximate result of Defendants' violations of the Oregon UTPA, the Oregon Subclass' members have suffered injury-in-fact and/or actual damages.

746.    Defendants had an ongoing duty to all Defendants' customers to refrain from unfair and deceptive practices under the Oregon UTPA. The Oregon Subclass' members suffered ascertainable loss, including a total or partial loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards as well as out-of-pocket expenses and time associated with attempting to remedy the consequences of Defendants' deceptive and unfair acts and practices.

747.    The Oregon Subclass' members are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). The Oregon Subclass is also entitled to punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

MM.    **Claims Brought on Behalf of the Pennsylvania Subclass**

### PENNSYLVANIA UNFAIR TRADE PRACTICES ACT
### (73 PA CONS. STAT. ANN. § 201-1, *ET. SEQ.)*

748.    Plaintiffs incorporate the above allegations by reference.

749.    Plaintiffs Justin Castilyn, Clarence Gaten, and Brenda Shaley are residents of the above state and were also residents of such state when their funds were used without authorization, misappropriated, and/or stolen. Plaintiffs bring this Count on Plaintiffs' own behalf and on behalf of members of the above state Subclass.

750.    Plaintiffs and the Pennsylvania Subclass members' funds were implicated in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), for personal, family, and/or household purposes, *i.e.*, in connection with those members' consumer transactions for those personal, family, and/or household purposes.

751.    Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

752.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the relevant Gift Cards in violation of 73 Pa. Cons. Stat. § 201-3, in at least the following ways:

> a.    Defendants misrepresented and/or concealed material facts to Plaintiffs and the Pennsylvania Subclass' members by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard Plaintiffs' and the Pennsylvania Subclass' members' funds from unauthorized use, misappropriation, and/or theft in violation of 73 Pa. Cons. Stat. § 201-3(4)(v), (ix), and (xxi);

b.  Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their protections for Plaintiffs' and Pennsylvania Subclass' members' funds in violation of 73 Pa. Cons. Stat. § 201-3(4)(v), (ix), and (xxi);

c.  Defendants engaged in unlawful, unfair, and deceptive acts and practices by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds, in violation of 73 Pa. Cons. Stat. § 2303(a);

d.  Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures to protect Plaintiffs' and Pennsylvania Subclass members' funds from unauthorized use, misappropriation, and/or theft.

753.    The above unlawful, unfair, and deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

754.    Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard Plaintiffs' and Pennsylvania Subclass' members' funds and that risk of an unauthorized use, misappropriation, and/or theft was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Plaintiffs and members of the Pennsylvania Subclass.

755.   As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and the Pennsylvania Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including a total or partial loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards.

756.   Plaintiffs and the Pennsylvania Subclass' members seek relief under 73 Pa. Cons. Stat. § 201-9.2, including, but not limited to, injunctive relief, actual damages or $100 per Class member, whichever is greater, treble damages, and attorneys' fees and costs.

NN.   **Claims Brought on Behalf of the Rhode Island Subclass**

**RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT
(R.I. GEN. LAWS § 6-13.1, *ET. SEQ.*)**

757.   Plaintiffs incorporate the above allegations by reference.

758.   Plaintiffs bring this count on behalf of members of the above state Subclass.

759.   The Rhode Island Subclass' members purchased goods and services in "trade" and "commerce," as meant by R.I. Gen. Laws § 6-13.1-1(5).

760.   Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

761.   Defendants engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the relevant Gift Cards in violation of R.I. Gen. Laws Ann. § 613.1-2, in at least the following ways:

a.   Defendants misrepresented and/or concealed material facts to the Rhode Island Subclass by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard the

Rhode Island Subclass' members' funds from unauthorized use, misappropriation, and/or theft in violation of R.I. Gen. Laws Ann. § 6-13.1- 1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

b. Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their security protections for the Rhode Island Subclass' members' funds in violation of in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6)(v), (vii), (ix), (xii), (xiii), and (xiv);

c. Defendants engaged in unlawful, unfair, and deceptive acts and practices by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds, in violation of R.I. Gen. Laws Ann. § 11-49.2-3(a);

d. Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures to protect the Rhode Island Subclass' members' funds from unauthorized use, misappropriation, and/or theft.

762. The above unlawful, unfair, and deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

763. Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard the Rhode Island Subclass' members' funds and that risk of an unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in

engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Rhode Island Subclass.

764.    As a direct and proximate result of Defendants' deceptive acts and practices, the Rhode Island Subclass' members suffered an ascertainable loss of money or property, real or personal, as described above, including a total or partial loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards.

765.    The Rhode Island Subclass' members seek relief under R.I. Gen. Laws § 6-13.1-5.2, including, but not limited to, injunctive relief, other equitable relief, actual damages or $200 per Class member, whichever is greater, punitive damages, and attorneys' fees and costs.

OO.    **Claims Brought on Behalf of the South Carolina Subclass**

## VIOLATIONS OF THE SOUTH CAROLINA
## UNFAIR TRADE PRACTICES ACT
## (S.C. CODE ANN. §§ 39-5-10, *ET SEQ.*)

766.    Plaintiffs incorporate the above allegations by reference.

767.    Plaintiffs bring this Count on behalf of members of the above state Subclass.

768.    Defendants are "person[s]" within the meaning of S.C. Code Ann. § 39-5-10(a).

769.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).

770.    Defendants' actions as alleged herein occurred in the ordinary course of business and in the conduct of trade or commerce.

771.    Defendants knowingly, intentionally, and willfully failed to disclose and actively concealed their deficient security measures discussed herein in a manner that was false and misleading, and otherwise engaged in activities with a tendency or capacity to deceive.

Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the provision of the relevant Gift Cards.

772.    By failing to disclose that the Gift Card protections were inadequate or otherwise easily circumvented, and by presenting themselves as a reputable and otherwise concerned with protecting and/or safeguarding consumers' funds, Defendants engaged in deceptive business practices in violation of the South Carolina UTPA.

773.    Defendants unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the South Carolina Subclass, about the adequacy of Defendants' protections for the relevant Gift Cards, and the likelihood that funds loaded onto, accessible from, or otherwise contained on such cards would be used without authorization, misappropriated, and/or stolen.

774.    Defendants owed the South Carolina Subclass a duty to disclose the true nature of the inadequate means utilized to safeguard consumers' funds because Defendants:

        a.   Possessed exclusive knowledge that it valued profits and cost-cutting over the security of consumers' funds;

        b.   Intentionally concealed the foregoing from the South Carolina Subclass; and/or

        c.   Made incomplete representations about the security and integrity of the relevant Gift Cards generally, while purposefully withholding material facts from Plaintiff and the South Carolina Subclass that contradicted these implicit and /or explicit representations.

775.    Defendants' claims and/or representations concerning the integrity and security of the relevant Gift Cards were material to the South Carolina Subclass.

776.    Defendants' violations present a continuing risk to the South Carolina Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

777.    The South Carolina Subclass suffered ascertainable loss caused by Defendants omissions and/or misrepresentations and its concealment of and failure to disclose material information. The South Carolina Subclass' members would not have purchased the relevant Gift Cards but for Defendants' violations of the South Carolina UTPA.

778.    As a direct and proximate result of Defendants' violations of the South Carolina UTPA, the South Carolina Subclass' members have suffered injury-in fact and/or actual damage, including a total or partial loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards,  as well as out of pocket expenses and time associated with attempting to remedy the consequences of Defendants' deceptive and unfair acts and practices.

779.    Pursuant to S.C. Code Ann. § 39-5-140(a), the South Carolina Subclass' members seek monetary relief against Defendants to recover for their economic losses. Because Defendants' actions were willful and knowing, the South Carolina Subclass members' damages should be trebled. *Id.*

780.    The South Carolina Subclass' members further allege that Defendants' malicious and deliberate conduct warrants an assessment of punitive damages because Defendants carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting the South Carolina Subclass to cruel and unjust hardship as a result. Defendants intentionally and willfully misrepresented the adequacy of their protections for consumers'

funds, deceived the South Carolina Subclass' members, and concealed material facts that only Defendants knew. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

781.   The South Carolina Subclass' members further seek an order enjoining Defendants' unfair and deceptive acts or practices.

PP. **Claims Brought on Behalf of the South Dakota Subclass**

### SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT (S.D. CODIFIED LAWS § 37-24-1, *ET. SEQ.*)

782.   Plaintiffs incorporate the above allegations by reference.

783.   Plaintiffs bring this Count on behalf of members of the above state Subclass.

784.   Defendants advertise and sell "goods or services" and/or "merchandise" in "trade" and "commerce," as meant by S.D. Codified Laws § 37 24-1.

785.   Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

786.   Defendants engaged in deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the relevant Gift Cards in violation of S.D. Codified Laws § 37-24-6, in at least the following ways:

      a.   Defendants knowingly and intentionally misrepresented material facts to the South Dakota Subclass' members by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard the South Dakota Subclass' members' funds from

unauthorized use, misappropriation, and/or theft in violation of S.D. Codified Laws § 37-24-6(1):

b.  Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their security protections for the South Dakota Subclass' members' funds in violation of S.D. Codified Laws § 37-24-6(1);

c.  Defendants knowingly and intentionally engaged in deceptive acts and practices by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds in violation of S.D. Codified Laws § 37-24-6(1);

d.  Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in deceptive acts and practices by failing to enact adequate measures to protect the South Dakota Subclass members' funds from unauthorized use, misappropriation, and/or theft, in violation of S.D. Codified Laws § 37-24-6(1).

787.   The above deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

788.   Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard the South Dakota Subclass members' funds and that risk of an unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the South Dakota Subclass.

789.    As a direct and proximate result of Defendants' deceptive acts and practices, the South Dakota Subclass' members were adversely affected, injured, and/or damaged.

790.    The South Dakota Subclass members seek relief under S.D. Codified Laws § 37-24-31, including, but not limited to, actual damages.

QQ.    **Claims Brought on Behalf of the Tennessee Subclass**

### TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN. § 47-18-101, *ET. SEQ.*)

791.    Plaintiffs incorporate the above allegations by reference.

792.    Plaintiff Ryan D'Angelo is a resident of the above state and was also a resident of such state when his funds were used without authorization, misappropriated, and/or stolen. Plaintiff brings this Count on Plaintiff's own behalf and on behalf of members of the above state Subclass.

793.    Defendants advertised and sold "goods" or "services" in "trade" and "commerce," as meant by Tenn. Code Ann. § 47-18-103.

794.    Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

795.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in violation Tenn. Code Ann. § 47-18-104, in at least the following ways:

> a. Defendants misrepresented and/or concealed material facts to Plaintiff and the Tennessee Subclass by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to

safeguard Plaintiff and the Tennessee Subclass members' funds from unauthorized, use, misappropriation, and/or theft in violation of Tenn. Code Ann. § 47-18-104(b)(5), (b)(9), (b)(21) and/or (27);

b.  Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their security protections for Plaintiff and the Tennessee Subclass members' funds in violation of Tenn. Code Ann. § 47-18-104(b)(5), (b)(9), (b)(21) and/or (27);

c.  Defendants engaged in unlawful, unfair, and deceptive acts and practices by failing to disclose the inadequacy of their measures to safeguard consumers' funds in a timely and accurate manner, in violation of Tenn. Code Ann. § 47-18-104(b)(5) and/or (9);

d.  Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures to protect Plaintiff and Tennessee Subclass' members' funds from unauthorized use, misappropriation, and/or theft in violation of Tenn. Code Ann. § 47-18-104(b)(5) and/or (9).

796.   The above unlawful, unfair, and deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

797.   Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard Plaintiff and Tennessee Subclass' members' funds and that a risk of

unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and members of the Tennessee Subclass.

798.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Tennessee Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards.

799.    Plaintiff and Tennessee Subclass members seek relief under Tenn. Code Ann. § 47-18-109, including, but not limited to, injunctive relief, actual damages, treble damages for each willful or knowing violation, and attorneys' fees and costs.

RR.      **Claims Brought on Behalf of the Texas Subclass**

**TEXAS DECEPTIVE TRADE PRACTICES
AND CONSUMER PROTECTION ACT
TEX. BUS. & COM. CODE § 17.41, *ET. SEQ.***

800.    Plaintiffs incorporate the above allegations by reference.

801.    Plaintiff Brian Rush is a resident of the above state and was also a resident of such state when his funds were used without authorization, misappropriated, and/or stolen. Plaintiff brings this Count on Plaintiff's own behalf and on behalf of members of the above state Subclass.

802.    Plaintiff sent a demand for relief to Defendants on behalf of the Texas Subclass prior to the filing of this complaint.

803.    Plaintiffs and Texas Subclass members are "consumers," as defined in Tex. Bus. & Com. Code § 17.45(4).

804. Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

805. Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code § 17.46, in at least the following ways:

   a. Defendants misrepresented and/or concealed material facts to Plaintiff and the Texas Subclass by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard Plaintiff and Texas Subclass members' funds from unauthorized use, misappropriation, and/or theft, in violation of Tex. Bus. & Com. Code § 17.46(b)(5), (7), (9), and (24);

   b. Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their protections for Plaintiff and Texas Subclass' members' funds, in violation of Tex. Bus. & Com. Code § 17.46(b)(5), (7), (9), and (24) and §17.50(d);

   c. Defendants engaged in unconscionable trade acts or practices in violation of Tex. Bus. & Com. Code § 17.50(a)(3) and §17.50(d) by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds;

   d. Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unconscionable trade acts or practices in violation of Tex. Bus. & Com. Code § 17.50(a)(3) and §17.50(d) by failing to enact adequate measures to protect Plaintiff and the Texas Subclass members' funds from unauthorized use, misappropriation, and/or theft.

806. The above unfair and deceptive practices and acts by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

807. Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard Plaintiff and the Texas Subclass' members' funds and that a risk of unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in

engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and members of the Texas Subclass.

808.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and Texas Subclass members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards.

809.    Plaintiff and Texas Subclass members seek relief under Tex. Bus. & Com. Code § 17.50, including, but not limited to, economic damages, damages for mental anguish, treble damages, injunctive relief, restitution, and attorneys' fees and costs.

SS. **Claims Brought on Behalf of the Utah Subclass**

**UTAH CONSUMER SALES PRACTICES ACT**
**UTAH CODE ANN. §§ 13-11-1, *ET SEQ.***

810.    Plaintiffs incorporate the above allegations by reference.

811.    Plaintiff Heidi Horne is a resident of the above state and was also a resident of such state when his funds were used without authorization, misappropriated, and/or stolen. Plaintiff brings this Count on Plaintiff's own behalf and on behalf of members of the above state Subclass.

812.    The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade,

style, or model, if it is not." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

813.   Defendants' actions as alleged herein occurred in the ordinary course of business and in the conduct of trade or commerce.

814.   Defendants knowingly, intentionally, and willfully failed to disclose and actively concealed their deficient security measures discussed herein in a manner that was false and misleading, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the provision of the relevant Gift Cards.

815.   By failing to disclose that the Gift Card protections were inadequate or otherwise easily circumvented, and by presenting themselves as reputable and/or otherwise concerned with protecting and/or safeguarding consumers' funds, Defendants engaged in deceptive business practices in violation of the Utah CSPA.

816.   Defendants were also aware, and actively concealed, that they valued profits over the security of consumers' funds, and that Defendants were inadequately protecting consumers' funds from unauthorized use, misappropriation, and/or theft.

817.   Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Plaintiff and the Utah Subclass, about the adequacy of Defendants' protections for the relevant Gift Cards, and the likelihood that funds loaded onto,

accessible from, or otherwise contained on such cards would be used without authorization, misappropriated, and/or stolen.

818. Defendants owed Plaintiff and the Utah Subclass a duty to disclose the true nature of the deficient security measures alleged herein because Defendants:

   a. Possessed exclusive knowledge that it valued profits and cost-cutting over computer and data security, and that it had suffered numerous data breaches;

   b. Intentionally concealed the foregoing from Plaintiff and the Utah Subclass; and/or

   c. Made incomplete representations about the security and integrity of its computer and data systems generally, and its numerous data breaches in particular, while purposefully withholding material facts from Plaintiff and the Utah Subclass that contradicted these representations.

819. Defendants' misrepresentations and/or omissions as alleged herein were material to Plaintiff and the Utah Subclass.

820. Plaintiff and the Utah Subclass suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information. Class members would have taken steps to prevent the loss of their personal and financial information, and would not have had their information stolen from Defendants but for Defendants' violations of the Utah CSPA.

821. Defendants' violations present a continuing risk to Plaintiff and the Utah Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

822. As a direct and proximate result of Defendants' violations of the Utah CSPA, the Plaintiff and the Utah Subclass' members have suffered injury-in fact and/or actual damage.

823.    Defendants had an ongoing duty to all Defendants' customers to refrain from unfair and deceptive practices under the Utah CSPA. Plaintiff and the Utah Subclass' members suffered ascertainable loss, including a total or partial loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards,  as well as out of pocket expenses and time associated with attempting to remedy the consequences of Defendants' deceptive and unfair acts and practices.

824.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and the Utah Subclass seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff and each Utah Subclass member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

TT. **Claims Brought on Behalf of the Vermont Subclass**

## VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451, *ET. SEQ.*)

825.    Plaintiffs incorporate the above allegations by reference.

826.    Plaintiffs brings this Count on behalf of members of the above state Subclass.

827.    The Vermont Subclass' members are "consumers" as meant by Vt. Stat. Ann. tit. 9, § 2451a.

828.    The Vermont Subclass' members purchased "goods" or "services," as meant by Vt. Stat. Ann. tit. 9, § 2451a., from Defendants.

829.    Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

830.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the relevant Gift Cards in violation of Vt. Stat. Ann. tit. 9, § 2453, in at least the following ways:

      a. Defendants misrepresented and/or concealed material facts to the Vermont Class by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard the Vermont Subclass' members' personal funds from unauthorized use, misappropriation, and/or theft, in violation of Vt. Stat. Ann. tit. 9, § 2435(b)(1);

      b. Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their protections for the Vermont Subclass members' funds, in violation of Vt. Stat. Ann. tit. 9, § 2435(b)(1);

      c. Defendants engaged in unlawful, unfair, and deceptive acts and practices by failing to disclose the inadequacy of their measures to safeguard consumers' funds in a timely and accurate manner, in violation of Vt. Stat. Ann. tit. 9, § 2435(b)(1);

      d. Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures and protect the Vermont Subclass' members' funds from unauthorized use, misappropriation, and/or theft.

831.    The above unlawful, unfair, and deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the

consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

832.    Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard the Vermont Subclass' members' personal funds and that risk of an unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Vermont Subclass.

833.    As a direct and proximate result of Defendants' deceptive acts and practices, the Vermont Subclass members suffered injury and/or damages.

834.    Plaintiff and Vermont Subclass members seek relief under Vt. Stat. Ann. tit. 9, § 2461, including, but not limited to, injunctive relief, restitution, actual damages, disgorgement of profits, exemplary damages, and attorneys' fees and costs.

UU.    **Claims Brought on Behalf of the Virginia Subclass**

### VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*)

835.    Plaintiffs incorporate the above allegations by reference.

836.    Plaintiffs bring this Count on behalf of members of the above state Subclass.

837.    The Virginia Consumer Protection Act ("Virginia CPA") prohibits "…(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code Ann. § 51-200(A).

838.    Defendants are "person[s]" as defined by Va. Code Ann. § 59.1-198. The transactions between Plaintiff and the Virginia Subclass members on the one hand and Defendants on the other, leading to the purchase of the relevant Gift Cards, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198.

839.    Defendants' actions as alleged herein occurred in the ordinary course of business and in the conduct of trade or commerce.

840.    Defendants knowingly, intentionally, and willfully failed to disclose and actively concealed their deficient security measures discussed herein in a manner that was false and misleading, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the provision of the relevant Gift Cards.

841.    Accordingly, Defendants engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including representing that the relevant Gift Cards have characteristics, uses, benefits, and qualities which they do not have; representing that the protections for the relevant Gift Cards were of a particular standard and quality when they are not, and otherwise engaging in conduct likely to deceive.

842.    By failing to disclose that the Gift Card protections were inadequate or otherwise easily circumvented, and by presenting themselves as reputable and/or otherwise concerned with protecting and/or safeguarding consumers' funds, Defendants engaged in deceptive business practices in violation of the Virginia CPA.

843.     Defendants were also aware, and actively concealed, that they valued profits over the security of consumers' funds, and that Defendants were inadequately protecting consumers' funds from unauthorized use, misappropriation, and/or theft.

844.     Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Virginia Subclass' members, about the adequacy of Defendants' protections for the relevant Gift Cards and the likelihood that funds loaded onto, accessible from, or otherwise contained on such cards would be used without authorization, misappropriated, and/or stolen.

845.     Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Virginia Subclass' members, about the adequacy of Defendants' protections for the relevant Gift Cards and the likelihood that funds loaded onto, accessible from, or otherwise contained on such cards would be used without authorization, misappropriated, and/or stolen.

846.     Defendants the Virginia Subclass a duty to disclose the true nature of the deficient security measures alleged herein because Defendants:

>    a.  Possessed exclusive knowledge that it valued profits and cost-cutting over the security of consumers' funds;
>
>    b.  Intentionally concealed the foregoing from the Virginia Subclass; and/or
>
>    c.  Made incomplete representations about the security and integrity of its Gift Cards generally, while purposefully withholding material facts from the Virginia Subclass that contradicted these representations.

847.     Defendants' misrepresentations and/or omissions as alleged herein were material to the Virginia Subclass.

848.    The Virginia Subclass' members suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Virginia Subclass would have taken steps to prevent the theft of their funds but for Defendants' violations of the Virginia CPA.

849.    Defendants' violations present a continuing risk to Plaintiff and the Virginia Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

850.    As a direct and proximate result of Defendants' violations of the Virginia CPA, the Virginia Subclass' members have suffered injury-in-fact and/or actual damage. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

851.    Defendants had an ongoing duty to all Defendants customers to refrain from unfair and deceptive practices under the Virginia CPA. The Virginia Subclass' members suffered ascertainable loss in the form of, for example, a total or partial loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards, as well as out of pocket expenses and time associated with attempting to remedy the consequences of Defendants' deceptive and unfair acts and practices.

852.    Defendants actively and willfully concealed and/or suppressed the material facts regarding the Gift Cards with the intent to deceive and mislead Plaintiff and the Virginia Subclass. Plaintiff and the Virginia Subclass members therefore seek treble damages.

VV.    **Claims Brought on Behalf of the Washington Subclass**

**WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE § 19.86.020, *ET. SEQ.*)**

853.    Plaintiffs incorporate the above allegations by reference.

854.    Plaintiffs bring this Count on behalf of members of the above state Subclass.

855.   Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

856.   Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code § 19.86.020, in at least the following ways:

    a.  Defendants omitted, suppressed, and/or concealed material facts to the Washington Subclass' members by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard the Washington Subclass members' funds from unauthorized use, misappropriation, and/or theft, in violation of Wash. Rev. Code § 19.255.010(1);

    b.  Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their security protections the Washington Subclass' members' funds, in violation of Wash. Rev. Code § 19.255.010(1);

    c.  Defendants engaged in deceptive, unfair, and unlawful trade acts and practices by failing to disclose the inadequacy of their measures to safeguard consumers' funds in a timely and accurate manner, contrary to the duties imposed by Wash. Rev. Code § 19.255.010(1);

    d.  Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in deceptive, unfair, and unlawful trade acts or practices by failing to enact adequate measures to protect the Washington Subclass members' funds from unauthorized

use, misappropriation, and/or theft in violation of Wash. Rev. Code §
19.255.010(1).

857.   The above unfair and deceptive practices and acts by Defendants were
improper, oppressive, and unfair. These acts caused substantial injury to consumers that
these consumers could not reasonably avoid; this substantial injury outweighed any
benefits to consumers or to competition.

858.   Defendants knew, or reasonably should have known that their protections
were inadequate to safeguard the Washington Subclass's members' funds and that risk of
an unauthorized use, misappropriation, and/or theft of such funds was likely.
Defendants' actions in engaging in the abovenamed unfair practices and deceptive acts
were negligent, knowing and willful, and/or wanton and reckless with respect to the
rights of members of the Washington Subclass.

859.   As a direct and proximate result of Defendants' deceptive trade practices,
the Washington Subclass' members suffered injury and/or damages, including the loss of
funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift
Cards.

860.   The Washington Subclass' members seek relief under Wash. Rev. Code §
19.86.090, including, but not limited to, actual damages, treble damages, injunctive
relief, and attorneys' fees and costs.

WW.   **Claims Brought on Behalf of the West Virginia  Subclass**

### WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE § 46A-6-101, *ET. SEQ.*)

861.   Plaintiffs incorporate the above allegations by reference.

862.     Plaintiffs brings this Count on behalf of members of the above state Subclass, who are residents of the above state and were also residents of such state when their funds were used without authorization, misappropriated, and/or stolen.

863.     Plaintiffs sent a demand for relief to Defendants on behalf of the West Virginia Subclass prior to the filing of this complaint.

864.     Members of the West Virginia Subclass relied on Defendants' services in "trade" or "commerce," as meant by W. Va. Code Ann. § 46A-6-102, for personal, family, and/or household purposes.

865.     Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

866.     Defendants engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the relevant Gift Cards in violation of W. Va. Code Ann. § 46A-6-104, in at least the following ways:

       a.   Defendants misrepresented and/or concealed material facts to the West Virginia subclass' members by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard the Vermont Subclass' members' funds from unauthorized use, misappropriation, and/or theft in violation of W. Va. Code Ann. § 46A-6-102(7)(E), (I), (L), (M), and (N);

b. Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their security protections for the West Virginia Subclass' members' funds in violation of W. Va. Code Ann. § 46A-6-102(7)(E), (I), (L), (M), and (N);

c. Defendants engaged in unlawful, unfair, and deceptive acts and practices by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds, in violation of W.Va. Code § 46A-2A-102(a);

d. Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures to protect the West Virginia Subclass members' funds from unauthorized use, misappropriation, and/or theft, in violation of W.Va. Code § 46A-2A-102(a).

867.    The above unlawful, unfair, and deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

868.    Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard the West Virginia Subclass' members' funds and that a risk of unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the members of the West Virginia Subclass.

869. As a direct and proximate result of Defendants' deceptive acts and practices, the West Virginia Subclass' members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards.

870. The West Virginia Subclass' members seek relief under W. Va. Code § 46A-6-106 and 46A-5-104, including, but not limited to, injunctive relief, actual damages or $200, whichever is greater, and attorneys' fees and costs.

XX. **Claims Brought on Behalf on the Wisconsin Subclass**

**WISCONSIN DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 110.18 ET SEQ.)**

871. Plaintiffs incorporate the above allegations by reference.

872. Plaintiff T.W. Prescott is a resident of the above state and was also a resident of such state when his funds were used without authorization, misappropriated, and/or stolen. Plaintiff brings this Count on Plaintiff's own behalf and on behalf of members of the above state Subclass.

873. Defendants are "person[s], firm[s], corporation[s] or association[s]" within the meaning of Wis. Stat. § 100.18(1).

874. Plaintiff and Wisconsin Subclass Members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

875. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

876. Defendants' actions as alleged herein occurred in the ordinary course of business and in the conduct of trade or commerce.

877.    In the course of business, Defendants knowingly, intentionally, and willfully failed to disclose and actively concealed their deficient security measures discussed herein in a manner that was false and misleading, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the provision of the relevant Gift Cards.

878.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with its provision of Gift Cards.

879.    By failing to disclose that the Gift Card protections were inadequate or otherwise easily circumvented, and by presenting themselves as reputable and/or otherwise concerned with protecting and/or safeguarding consumers' funds, Defendants engaged in deceptive business practices in violation of the Wisconsin DTPA.

880.    Defendants were also aware, and actively concealed, that they valued profits over the security of consumers' funds, and that Defendants were inadequately protecting consumers' funds from unauthorized use, misappropriation, and/or theft.

881.    Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Wisconsin Subclass' members, about the adequacy of Defendants' protections for the relevant Gift Cards and the likelihood that funds loaded onto, accessible from, or otherwise contained on such cards would be used without authorization, misappropriated, and/or stolen.

882.    Defendants owed Plaintiff and the Wisconsin Subclass a duty to disclose the true nature of the deficient security measures alleged herein because Defendants:

a.  Possessed exclusive knowledge that it valued profits and cost-cutting over the security of consumers' funds;

b.  Intentionally concealed the foregoing from Plaintiff and the Wisconsin Subclass; and/or

c.  Made incomplete representations about the security and integrity of its Gift Cards generally, while purposefully withholding material facts from Plaintiff and the Wisconsin Subclass that contradicted these representations.

883.    Defendants' misrepresentations and/or omissions as alleged herein were material to Plaintiff and the Wisconsin Subclass.

884.    Plaintiff and the Wisconsin Subclass suffered ascertainable loss caused by Defendants' misrepresentations, and failure to disclose material information. Plaintiff and the Virginia Subclass would have taken steps to prevent the theft of their funds but for Defendants' violations of the Wisconsin DTPA.

885.    Defendants' violations present a continuing risk to Plaintiff and the Wisconsin Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

886.    As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, Plaintiff and the Wisconsin Subclass have suffered injury-in fact and/or actual damage.

887.    Defendants had an ongoing duty to all Defendants' customers to refrain from unfair and deceptive practices under the Wisconsin DTPA. Plaintiff and the Wisconsin Subclass' members suffered ascertainable loss, including a total or partial loss of funds that were loaded

onto, accessible from, or otherwise contained on the relevant Gift Cards,  as well as out of pocket expenses and time associated with attempting to remedy the consequences of Defendants' deceptive and unfair acts and practices.

888.    Plaintiff and the Wisconsin Subclass are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because Defendants' conduct was committed knowingly and/or intentionally, Plaintiff and the Wisconsin Subclass are entitled to treble damages.

889.    Plaintiff and the Wisconsin Subclass also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

YY.    **Claims Brought on Behalf of Wyoming Subclass**

### WYOMING CONSUMER PROTECTION ACT
### (W. S. 1977 § 40-12-101 ET SEQ.)

890.    Plaintiffs incorporate the above allegations by reference.

891.    Plaintiffs bring this Count on behalf of members of the above state Subclass.

892.    Plaintiffs sent a demand for relief to Defendants on behalf of the Wyoming Subclass prior to the filing of this complaint.

893.    Plaintiff and the Wyoming Subclass relied on Defendants' services in "consumer transactions" as meant by W. S. 1977 § 40-12-102, for personal, family, and/or household purposes.

894.    Defendants, acting in the course of business, willfully failed to disclose and actively concealed their inadequate security measures discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.

895.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect

to the sale and advertisement of the relevant Gift Cards in violation of W. S. 1977 § 40-12-105, in at least the following ways:

a. Defendants misrepresented and/or concealed material facts to the Wyoming Subclass' members by representing that the Gift Cards were safe to use, and that Defendants would maintain adequate security practices and procedures to safeguard the Wyoming Subclass' members' personal funds from unauthorized use, misappropriation, and/or theft, in violation of W. S. 1977 § 40-12-105(a)(i), (iii), (viii), (xv);

b. Defendants omitted, suppressed, and/or concealed material facts regarding the inadequacy of their security protections for the Wyoming Subclass' members' funds, in violation of W. S. 1977 § 40-12-105(a)(i), (iii), (viii), (xv);

c. Defendants engaged in unlawful, unfair, and deceptive acts and practices by failing to disclose, in a timely and accurate manner, the inadequacy of Defendants' measures to safeguard consumers' funds, in violation of W. S. 1977 § 40-12-502(a);

d. Defendants, upon learning or otherwise becoming aware of the security vulnerability affecting and inherent to the relevant Gift Cards, engaged in unlawful, unfair, and deceptive acts and practices by failing to enact adequate measures to protect the Wyoming Subclass' members' funds from unauthorized use, release, misappropriation, and/or theft, in violation of W. S. 1977 § 40-12-502(a).

896. The above unlawful, unfair, and deceptive acts and practices by Defendants were improper, oppressive, and unfair. These acts caused substantial injury to consumers that the

consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

897.    Defendants knew, or reasonably should have known, that their protections were inadequate to safeguard the Wyoming Subclass' members' funds and that risk of an unauthorized use, misappropriation, and/or theft of such funds was likely. Defendants' actions in engaging in the abovenamed deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Wyoming Subclass.

898.    As a direct and proximate result of Defendants' deceptive acts and practices, the Wyoming Subclass' members suffered an ascertainable loss of money or property, real or personal, as described above, including the loss of funds that were loaded onto, accessible from, or otherwise contained on the relevant Gift Cards.

899.    The Wyoming Subclass' members seek relief under W. S. 1977 § 40-12-108(b), including, but not limited to, injunctive relief, actual damages or $200, whichever is greater, and attorneys' fees and costs.

## COUNT II—BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER § 2-315 OF THE UNIFORM COMMERCIAL CODE

900.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

901.    At the time of sale and/or contracting, Walmart had reason to know particular purposes for which the Gift Cards were required.

902.    The particular purposes described above include but are not limited to the purchase of goods both in-store and online.

903.    The buyers of the Gift Cards, including Plaintiffs, relied upon Walmart's skill or judgment to select or furnish suitable goods.

904.    Walmart's Gift Card terms and conditions do not exclude, modify or limit this implied warranty that the goods shall be fit for such purposes.

905.    Walmart breached its warranty in one or more material respects described more fully above.

906.    As a direct and proximate result, Plaintiffs and Class members have been damaged.

## COUNT III-BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER § 2-314 OF THE UNIFORM COMMERCIAL CODE

907.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

908.    At all times pertinent to this action, Defendants were merchants as that term is defined in section 2-104 of the Uniform Commercial Code.

909.    Defendants sold Plaintiffs the Gift Cards described more particularly above; however, at the time of the sale, one or more of the Gift Cards were not merchantable at the time of the sale because third parties had tampered with the Gift Cards and had stolen the PIN from the cards.

910.    One or more of the Gift Cards Defendants sold Plaintiffs were not fit for the ordinary purpose for which they were typically used because the secret eight digits were known to third parties at the time of sale rendering the Gift Cards insecure and the balance of the Gift Cards subject to loss.

911.    One or more of the Gift Cards was not fit for the ordinary purpose for which they were typically used because Walmart improperly deactivated the card prior to the first time

Plaintiffs or their designees attempted to withdraw the balance from the card and thereafter refused to refund or replace the Gift Card purchase.

912.    As a direct and proximate result of the defective nature of the cards at the time Defendants sold the Gift Cards to Plaintiffs, Plaintiffs and Class members suffered injury and damage in the form of the lost funds that they had loaded onto the Gift Cards.

913.    Defendants received actual notice of the defective nature of the Gift Cards within a reasonable time of the sale of the defective Gift Cards through Plaintiffs' and Class members' complaints about the defective nature of the Gift Cards and loss of funds.

## COUNT IV—UNJUST ENRICHMENT

914.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

915.    Defendants have received money under such circumstances that, in equity in good conscience, it ought not to retain specifically as to:

> a.  The monetary balance of the Gift Cards which Walmart improperly deactivated and thereafter neither refunded nor replaced;
>
> b.  The amount of funds loaded onto Gift Cards which Walmart knew or should have known were insecure because the secret eight digits were known to third parties lacking a need to know such digits.

916.    A benefit was conferred upon Defendants at the Plaintiffs' and Class members' expense under circumstances that would make Defendants retention of the money unjust.

917.    Specifically, Defendants received money from the sale of the Gift Cards and Plaintiffs and Class members received nothing of value in return.

918.    Defendants enjoyed enrichment by retaining the profits associated with the sale of merchandise.

919.    Plaintiffs and Class members suffered an economic detriment and loss.

920.    There is a direct connection between the enrichment of Defendant and the impoverishment of Plaintiffs and Class members.

921.    There was an absence of justification for the enrichment and the impoverishment.

922.    Defendants have appreciated the benefit and had knowledge and awareness that it was, in fact, receiving a benefit.

### COUNT V—NEGLIGENT MISREPRESENTATION

923.    Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

924.    In the course of its business, Defendants represented to Plaintiffs and all Class members that it was selling Gift Cards that were original, usable, secure, valuable, and free from fraud, tampering or compromise.

925.    Alternatively, in the course of its business, Defendants failed to disclose to Plaintiffs and all Class members that it was selling Gift Cards that were not original, usable, secure, valuable, and free from fraud, tampering or compromise.

926.    In the course of its business, Defendants failed to disclose to Plaintiffs that it was aware that it was probable and possible that third parties knew the secret eight digits and PIN on the Gift Card inventory offered for sale.

927.    Defendants represented that it would not deactivate Gift Cards purchased by Plaintiffs without refunding or replacing the balance on the cards.

928.    Alternatively, Defendants omitted the fact that it would deactivate Gift Cards

purchased by Plaintiffs without refunding or replacing the balance on the cards.

929.   Defendants made these representations and omissions to Plaintiffs in connection with Plaintiffs' purchase of Walmart Gift Cards.

930.   These representations and omissions were material to Plaintiffs' decisions to purchase the Gift Cards.

931.   Because of Defendants' failure to use reasonable care, Defendants' representations and omissions were false because the Gift Cards were not original and usable because third parties had tampered with the cards to obtain the unique PIN associated with the Gift Cards and because Defendant did reserve the right to deactivate loaded cards without refunding or replacing them.

932.   Plaintiffs justifiably relied on Defendants' representations and omissions about the condition of the Gift Cards because Defendants had superior knowledge about the cards' condition and Walmart's reservation of rights to deactivate the cards without refund or replacement.

933.   As a direct and proximate result of Plaintiffs' reliance on Defendants' representations about the Gift Cards, Plaintiffs and Class members have suffered pecuniary loss in an amount determined to be fair and reasonable, but which is equivalent to the funds loaded onto the Gift Cards.

## COUNT VI—FRAUD BY OMISSION

934.   Plaintiffs incorporate the foregoing paragraphs by reference as if set forth more fully herein.

935.   Defendants, at or before the time of sale, fraudulently omitted, concealed, and otherwise failed to disclose their knowledge of material information germane to the significant security vulnerability with the Walmart Gift Cards.

936.   By means of numerous customer complaints, Defendants knew about the widespread problem of third parties tampering with Walmart Gift Cards in order to obtain the unique PIN and improperly misappropriate customer funds. At the very least, Defendants had knowledge of the problem at or around January 10, 2017, when Plaintiff Walton was unable to access funds on her card and subsequently complained at the local Walmart store as well as filed a complaint with Walmart's customer service department.

937.   Defendants had a duty to disclose this information to Plaintiffs and Class members because they had superior knowledge as to the facts related to their omissions and/or concealments.

938.   Defendants failed to disclose to Plaintiffs and Class members that third parties had tampered with the Gift Cards – or were otherwise capable of doing so – such that the Plaintiffs and Class members funds would be used, stolen, or otherwise misappropriated.

939.   Further, Defendants failed to disclose to Plaintiffs and Class members that Walmart did not have adequate systems, policies, and security practices to secure customers' Gift Card account information and Gift Card funds

940.   Plaintiffs and Class members had no reasonable means available to discover the materially omitted information at or before the time of sale.

941.   No reasonable consumer would have purchased a Walmart Gift Card if the materially-omitted information was sufficiently disclosed at the time of sale.

942.    Defendants intended for Plaintiffs to rely upon their omissions and concealment by purchasing Walmart Gift Cards.

943.    Plaintiffs and Class members materially relied upon the omissions and concealment by purchasing tampered with Gift Cards.

944.    Plaintiffs' and Class members' reliance was justifiable and reasonable because they were not aware of the ease by which a third party could misappropriate funds loaded onto the card, nor were they aware of the probability that a Gift Card had been or could be tampered with or otherwise compromised.

945.    Plaintiffs lacked knowledge that Defendants' statements and omissions were false.

946.    As a direct and proximate result, Plaintiffs were damaged by the loss of the funds they loaded onto the tampered with Gift Cards.

947.    Defendants' actions were evil, wanton, reckless and intentional so as to justify the imposition of punitive damages.

948.    Plaintiffs are entitled to punitive damages to punish Defendants and to deter Defendants and others from engaging in similar conduct in the future.

### COUNT VII—BREACH OF CONTRACT

949.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

950.    Each and every sale of a Gift Card constitutes a lawful contract between Walmart and the purchaser. Plaintiffs and the Class members agreed to provide funds to Defendant in exchange for a Gift Card that could be redeemed to purchase merchandise online or at Walmart retail stores.

951.    Plaintiffs and the other Class members bargained for a Gift Card that would securely store their funds until such a time when Plaintiffs and the other Class members, or their beneficiaries, could use and/or redeem the aforementioned funds to make a purchase. Plaintiffs and Class members purchased Gift Cards and tendered the price of payment at the point of sale. In exchange, Defendants were obligated to honor the Gift Cards and furnish goods in an amount up to and including the sum of funds exchanged for, or otherwise loaded onto the Gift Cards by Plaintiffs and the Class members.

952.    Plaintiffs and the Class members fully complied with their obligations pursuant to the contract with Defendant.

953.    Plaintiffs and the other Class members did not receive the benefit of their bargain. Walmart materially breached these contracts by, among other things, selling to Plaintiffs and the other Class members Gift Cards that were compromised; misrepresenting or failing to disclose its knowledge that the Gift Cards have a significant security vulnerability that could result in a total loss of all funds loaded onto such cards due to improper misappropriation by a third party; and failing or otherwise refusing to provide use or access to funds up to and including the amount exchanged for, or otherwise loaded onto, the Gift Cards.

954.    Walmart's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of the Gift Cards. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased these Gift Cards.

955.    As a direct and proximate result of Walmart's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not

limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VIII—BREACH OF IMPLIED CONTRACT

956.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

957.    When Plaintiffs and Class members provided funds to the Defendants in exchange for a Gift Card, Plaintiffs and members of the Class entered into implied contracts with Defendants pursuant to which Defendants agreed to take reasonable measures to safeguard and protect such funds or otherwise prevent improper use and appropriation by a third party.

958.    Defendants solicited and invited Plaintiffs and members of the Class to use Gift Cards in order to store funds and otherwise facilitate transactions at Walmart stores. Plaintiffs and members of the Class accepted Defendants' offers and entrusted the Defendants with funds in order to withdraw, access, or otherwise use such funds when transacting at Walmart stores.

959.    Plaintiffs and Class members would not have provided and entrusted funds to Defendants in the absence of the implied contract between them and Defendants.

960.    Plaintiffs and members of the Class fully performed their obligations under the implied contracts with Defendants.

961.    Defendants breached the implied contracts it made with Plaintiffs and Class members by failing to adequately safeguard and protect the funds entrusted by Plaintiffs and members of the Class and, in some instances, freezing Plaintiffs and Class members Gift Card accounts or otherwise preventing them from accessing their funds.

962.   The losses and damages sustained by Plaintiffs and Class members as described herein were the direct and proximate result of Defendants breaches of the implied contracts between Defendants and Plaintiffs and members of the Class.

## COUNT IX – DECLARATORY JUDGMENT

963.   Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

964.   An actual, justiciable controversy exists between the parties.

965.   Plaintiffs seeks a declaration of the rights of the parties under the Federal Declaratory Judgment Act.

966.   Plaintiffs lack an adequate remedy at law.

967.   One or more Defendants purport(s) to bind Plaintiffs to the terms and conditions set forth at: http://help.walmart.com/app/answers/detail/a_id/57/~/gift-card-terms-and-conditions?u1=&oid=223073.1&wmlspartner=bipa7LLjXFc&sourceid=06169867294246116240&affillinktype=10&veh=aff.

968.   The terms of service state:

> Lost or Stolen Gift Card. Lost or stolen cards will not be replaced. Neither Wal-Mart.com USA, LLC nor Wal-Mart Stores Arkansas, LLC shall have liability to you for (i) lost or stolen Walmart Gift Cards or (ii) use of any Walmart Gift Cards by third parties through your Walmart.com account. You are solely responsible for keeping the password for your Walmart.com account safe and for any activity conducted under your account.

969.   The terms on the back of the card state in part, "The balance of this card is a liability of Wal-Mart Stores Arkansas, LLC.  This card cannot be redeemed for cash except where required by state law.  Lost or stolen cards will not be replaced.  In the case of fraud, misrepresentation, abuse or violation of the terms and conditions, Walmart reserves the right to

refuse acceptance of this card and to take all available action, including the forfeiture of any remaining card balance. Terms and conditions subject to change without notice. See Walmart.com for complete terms."

970. Despite the fact that the Gift Cards are sold by either (a) Walmart Inc.; or (b) Walmart Stores East LP, the terms and conditions state, "The balance on any Gift Card is solely the liability of Wal-Mart Stores Arkansas, LLC."

971. Defendant sellers cannot, as a matter of law, unilaterally disclaim or assign liability for loss, conversion, or destruction of the balance on the Gift Cards where the funds placed on the cards are fully retained by (a) Walmart Inc.; or (b) Walmart Stores East LP.

972. Walmart contends that the "lost or stolen Gift Card" terms as well as the terms on the back of the card apply under circumstances where the secret eight digits are known to third parties without a need to know prior to the first sale of the cards.

973. As a matter of law, these terms do not apply where the secret eight digits are known to third parties without a need to know prior to the first sale of the cards.

974. Walmart contends that the "lost or stolen Gift Card" terms apply and it has no refund/replacement obligations as to card balances where, after a card is sold by Walmart and loaded with money by the consumer, the card balance is depleted by unauthorized third parties who knew obtained the secret eight digit combination on the back of the card.

975. As a matter of law, the "lost or stolen Gift Card" paragraph does not apply where after a card is sold by Walmart and loaded with money by the consumer, the card balance is depleted by unauthorized third parties who knew obtained the secret eight digit combination on the back of the card in that the card itself was never lost or stolen at any point in the sales chain and purchases on the account were not made through the purchaser's Walmart.com account.

)

976.    The terms and conditions published unilaterally by Walmart online and on the card are not part of or merged into the Gift Card consumer sales transaction between the parties as a matter of law.

977.    All or part of the terms of service online and on the back of the card are unenforceable as to Plaintiff as being a contract of adhesion in that:

   a.  The terms are outside and beyond the reasonable expectations of the person purchasers of the Gift Cards and/or

   b.  Walmart failed to make the terms and conditions reasonably available to Plaintiff prior to the sale of the Gift Cards;

   c.   The reasonable expectations of the parties are gathered not only by the words of the terms of service, but by all the circumstances of the transaction and/or

   d.  The terms of service are written boilerplate language and/or

   e.  The terms of service are prepared by Walmart who is the stronger party and presented to Plaintiff who is the weaker party on a take it or leave it basis and/or

   f.  The terms of service were not negotiated between two contracting parties.

978.    Walmart may not unilaterally change the terms and conditions without notice to purchasers as a matter of law.

## COUNT X – BAILMENT

979.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

980.    Plaintiff and class members entered into a bailment contract with Wal-Mart Stores Arkansas LLC.

981.    There was agreement among the parties.

)

982.    The bailment property consisted of money was delivered in the form of money "loaded" onto the gift cards.

983.    The bailment property was accepted by Defendant Wal-Mart Stores Arkansas LLC at the time WalMart employees purposefully loaded the money onto Plaintiff and class members gift cards accounts maintained on computer servers kept in the sole custody of Wal-Mart Stores Arkansas LLC and/or third parties hired by and under the control of Wal-Mart Stores Arkansas LLC to safeguard Plaintiff and class members gift card funds until the time of use or consumer withdrawal.

984.    Defendant Wal-Mart Stores Arkansas LLC, individually and/or collectively, had an obligation to utilize reasonable care to protect and safeguard the bailed property from foreseeable risks that might cause harm or loss to the bailed property.

985.    Defendants, individually and/or collectively, failed to use reasonable care in one or more of the respects described above.

986.    Defendant Wal-Mart Stores Arkansas LLC was obligated to return to Plaintiff and class members property to them in cash upon demand.

987.    Defendant Wal-Mart Stores Arkansas LLC failed and refused to return the bailed property upon reqeust.

988.    As a direct and proximate result Plaintiff and members of the class have been damaged.

)

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of the classes described above, respectfully request the following relief:

1.      That the Court certify this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and, pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiffs to be Class representatives and their undersigned counsel to be Class counsel;

2.      That the Court award Plaintiffs and the Classes appropriate relief, including actual and statutory damages, exemplary and punitive damages as allowable;

3.      Equitable relief including, but not limited to, restitution and disgorgement;

4.      That the Court award Plaintiffs and the Class equitable, injunctive and declaratory relief as maybe appropriate under applicable state laws.

5.      That the Court award Plaintiffs and the Classes pre-judgment and post judgment interest;

6.      That the Court award Plaintiffs and the Classes reasonable attorney fees and costs as allowable by law;

7.      Such additional orders or judgments as maybe necessary to prevent these practices and to restore any interest or any money or property which may have been acquired by means of the violations set forth in this Complaint;

8.      That the Court award Plaintiffs and the Classes such other, favorable relief as allowable under law or at equity.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**DOUGLAS, HAUN & HEIDEMANN PC**


By:   *Donald M. B*

Donald M. Brown
Ark Bar No. 2019029
Craig R. Heidemann
Missouri Bar No. 42778
901 E. St. Louis St., Suite 1200
Springfield, MO 65806
Telephone (417) 326-5261
Fax:  (417) 326-2845
don@dhhlawfirm.com
craig@dhhlawfirm.com

**HURST LAW GROUP**

Q. Byrum Hurst
Arkansas Bar No. 74082
Hurst Law Group
518 Ouachita Avenue
Hot Springs, Arkansas 71901
(501) 623-2565 Telephone
(501) 623-9391 Facsimile
qbyrum@hurstlaw.org


**THE MILLER LAW FIRM, P.C.**

E. Powell Miller (Michigan Bar No. P39487)
Sharon S. Almonrode (Michigan Bar No. P33938)
Emily E. Hughes (Michigan Bar No. P68724)
William Kalas (Michigan Bar No. P82113)
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
wk@millerlawpc.com


*Attorneys for Plaintiffs and the Putative Class*

(