IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

GRACIE FOSTER, et al.                                                    PLAINTIFFS

v.                              CASE NO. 4:19-CV-00571-BSM

WALMART INC., et al.                                                    DEFENDANTS

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL INDIVIDUAL ARBITRATION PROCEEDINGS AND STAY LITIGATION**

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ....................................................................................................2

    A.    Plaintiffs' Complaint Raises Claims That Were Previously Asserted in a
        Different Forum. ......................................................................................2

    B.    Plaintiffs' Claims Arise Out of Their Alleged Purchases of Walmart Gift
        Cards. ......................................................................................................2

    C.    Plaintiffs Accepted the Gift Card Terms and Conditions and the Terms of
        Use. ........................................................................................................3

        1.    Plaintiffs' Purchase of the Gift Cards Binds Them to the Terms of
                Use. ..........................................................................................3

        2.    Plaintiffs' Use of the Walmart.com Website Also Binds Them to
                the Terms of Use. ....................................................................4

    D.    The Terms of Use Include a Binding Arbitration Provision. ...................5

    E.    The Arbitration Provision Offers a Fair and Efficient Method for
        Resolution of Plaintiffs' Claims. ............................................................6

II.    ARGUMENT .......................................................................................................7

    A.    The FAA Establishes a Strong Policy Favoring Arbitration and Applies
        Here. .......................................................................................................7

    B.    Plaintiffs Are Bound by the Arbitration Provision. ...............................8

    C.    Plaintiffs' Claims Must be Arbitrated on an Individual Basis Because Their
        Disputes Are Within the Scope of the Arbitration Provision. ................12

    D.    Plaintiffs Should Be Compelled to Comply with the Arbitration Provision..........14

    E.    This Action Should Be Stayed Pending Individual Arbitration. ............15

III.    CONCLUSION ...................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)................................................................................8

*Ambrose v. Comcast Corp.*,
    No. 09-0182, 2010 WL 1270712 (E.D. Tenn. Mar. 31, 2010) ................................11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)................................................................................12

*Bess v. DirecTV, Inc.*,
    885 N.E.2d 488 (Ill. Ct. App. 2008) ................................................................12

*Brower v. Gateway 2000, Inc.*,
    676 N.Y.S.2d 569 (N.Y. App. Div. 1998) ................................................................12

*Clements v. DIRECTV, LLC*,
    No. 13-4048, 2014 WL 1266834 (W.D. Ark. Mar. 26, 2014)................................11

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................7

*Edwards v. Vemma Nutrition Co.*,
    No. 17-2133, 2018 WL 637382 (D. Ariz. Jan. 31, 2018) ................................11

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
    No. 06-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008) ................................9

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)................................................................................7

*Ferrie v. DirecTV, LLC*,
    No. 15-0409, 2016 WL 183474 (D. Conn. Jan. 12, 2016)................................11

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
    No. 17-0042, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019) ................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)................................................................................7

*Hoekman v. TAMKO Bldg. Prods., Inc.,*
   No. 14-1581, 2015 WL 9591471 (E.D. Cal. Aug. 26, 2015)................................10

*Hubbert v. Dell Corp.,*
   835 N.E.2d 113 (Ill. Ct. App. 2005) ...................................................12

*James v. McDonald's Corp.,*
   417 F.3d 672 (7th Cir. 2005) ...........................................................11

*Krusch v. TAMKO Bldg. Prods., Inc.,*
   34 F. Supp. 3d 584 (M.D.N.C. 2014) ...............................................11

*Major v. McCallister,*
   302 S.W.3d 227 (Mo. Ct. App. 2009)..........................................10, 12

*McCoy v. Wal-Mart Stores East, LP, et al.,*
   No. 6:18-cv-03256-BP (W.D. Mo. Aug. 13, 2018) ..............................2

*Memberworks, Inc. v. Yance,*
   899 So. 2d 940 (Ala. 2004)...............................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985)..........................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983).........................................................................12, 14

*Murphy v. Oracle Am., Inc.,*
   No. 19-1207, 2019 WL 2525727 (E.D. Mo. June 19, 2019) ................14

*N. Ind. Pub. Servs. Co. v. Platt Envtl. Servs. Inc.,*
   No. 09-0164, 2010 WL 11583134 (N.D. Ind. Sept. 15, 2010) .............11

*Nicosia v. Amazon.com, Inc.,*
   384 F. Supp. 3d 254 (E.D.N.Y. 2019) .................................................10

*O'Quin v. Verizon Wireless,*
   256 F. Supp. 2d 512 (M.D. La. 2003)..................................................11

*Parm v. Bluestem Brands, Inc.,*
   898 F.3d 869 (8th Cir. 2018) .............................................................13

*Perry v. Thomas,*
   482 U.S. 483 (1987).........................................................................7

*Pierce v. Plains Commerce Bank,*
   No. 11-1222, 2012 WL 5992730 (W.D. Mo. Nov. 29, 2012) ...............15

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ......................................................................11

*Rasschaert v. Frontier Commc'ns Corp.*,
   No. 12-3108, 2013 WL 1149549 (D. Minn. Mar. 19, 2013) ................................8, 9

*Schwartz v. Comcast Corp.*,
   256 F. App'x 515 (3d Cir. 2007) .................................................................10

*Strange v. Comcast Corp.*,
   No. 18-4032, 2018 WL 6602072 (E.D. Pa. Dec. 14, 2018)....................................11

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
   No. 06-0891, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ................................11

*Taylor v. Samsung Elecs. Am.*,
   No. 16-50313, 2018 WL 3921145 (N.D. Ill. Aug. 16, 2018), *appeal dismissed
   sub nom. Taylor v. Samsung Elecs. Am., Inc*., No. 18-2964, 2018 WL 7575587
   (7th Cir. Oct. 2, 2018) ..............................................................................11

*U.S. Home Corp. v. Michael Ballesteros Tr*.,
   415 P.3d 32 (Nev. 2018) ............................................................................12

*Westendorf v. Gateway 2000, Inc*.,
   No. 16913, 2000 WL 307369 (Del. Ch. Mar. 16, 2000),
   *aff'd*, 763 A.2d 92 (Del. 2000).....................................................................12

*Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc.*,
   939 F. Supp. 2d 965 (D. Neb. 2012) ................................................................8

*Zahourek Sys., Inc. v. Canine Rehab. Inst., Inc*.,
   No. 12-0978, 2013 WL 2903413 (D. Colo. June 14, 2013) ...................................11

**Statutes**

9 U.S.C. § 2.................................................................................................8

9 U.S.C. § 3............................................................................................14, 15

9 U.S.C. § 4...............................................................................................14

**Other Authorities**

JAMS Rule 8(b) ...........................................................................................14

Twenty-nine Plaintiffs brought this action against Defendants Walmart Inc., Wal-Mart Stores Arkansas, LLC, and Wal-Mart Stores East, LP (collectively, "Walmart") arising out of Plaintiffs' alleged purchases of Walmart gift cards (the "Gift Cards"). The gravamen of Plaintiffs' Complaint is that sometime before Plaintiffs' alleged purchases of the Gift Cards, some unknown third party or parties compromised the Gift Cards, which made the funds on the Gift Cards unavailable. *See* Compl. ¶ 1. Plaintiffs further allege that Walmart "implicitly represented" that the Gift Cards were not comprised or failed to warn them that the Gift Cards may have been compromised. *Id.* ¶¶ 61–62. On these facts, Plaintiffs assert ten putative class-wide claims that, in turn, incorporate 54 putative "subclass" claims brought under the laws of all 50 states. *See id.* ¶¶ 74–988.

While Plaintiffs' claims lack merit for several reasons,[1] this Court is not the proper forum to resolve the dispute. Plaintiffs and Walmart are parties to a binding arbitration provision ("Arbitration Provision") that requires that an arbitrator, not a court, resolve Plaintiffs' disputes on an individual basis. Indeed, the Gift Cards themselves make clear that they are subject to the complete terms and conditions found on Walmart's website at Walmart.com. Those terms—the Walmart Gift Card Terms and Conditions—incorporate and are incorporated into the Walmart Terms of Use, which include the binding Arbitration Provision. Plaintiffs accepted the Arbitration Provision through their purchases of the Gift Cards and use of the Walmart.com website.

Accordingly, Walmart respectfully requests that this Court compel each Plaintiff to pursue his or her claims in an individual arbitration proceeding and stay this action pending resolution of those proceedings.

---

[1] On October 11, 2019, Walmart's counsel requested basic information—specifically, the gift card numbers at issue and the Plaintiffs' addresses—from Plaintiffs' counsel so that it could meaningfully investigate Plaintiffs' claims. Despite multiple requests directed to Plaintiffs' counsel, to date, Walmart has not received this information.

# I.     BACKGROUND

### A.     Plaintiffs' Complaint Raises Claims That Were Previously Asserted in a Different Forum.

Plaintiffs' Complaint (Doc. No. 1) was filed days after their counsel lost a bid to assert nationwide class claims in a materially identical action currently pending in the United States District Court for the Western District of Missouri.  *See McCoy v. Wal-Mart Stores East, LP, et al.*, No. 6:18-cv-03256-BP (W.D. Mo. Aug. 13, 2018).  Indeed, on August 12, 2019, the court in *McCoy* dismissed the claims of the putative nationwide class for lack of personal jurisdiction, agreeing with Walmart that "the Court does not have personal jurisdiction over claims of non-Missouri residents."  *See id.*, Order Re Motion to Dismiss (Doc. No. 69) at 3 n.2.  This action was filed three days later.[2]

### B.     Plaintiffs' Claims Arise Out of Their Alleged Purchases of Walmart Gift Cards.

Plaintiffs hail from 25 jurisdictions,[3] and claim to have purchased Gift Cards during a two-year span from December 2016 to December 2018.[4]  *See* Compl. ¶¶ 5–33.  Plaintiffs allege that they purchased the Gift Cards for themselves or others.  *Id.*  They claim they attempted to use the Gift Cards during the period of January 2017 to December 2018.[5]  *Id.*  Plaintiffs allege that sometime prior to the attempted use of the Gift Cards, some unspecified third party or parties compromised the Gift Cards, such that the funds were unavailable to Plaintiffs or the recipients of

---

[2]      Walmart has filed a similar Motion to Compel Arbitration in the *McCoy* action.  *See id.*, Motion to Compel Individual Arbitration and to Stay Litigation (Doc. No. 93).

[3]      Plaintiffs allege that they reside in the following states: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Washington, D.C., Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nevada, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Utah and Wisconsin.  *See* Compl. ¶¶ 5–33.

[4]      Plaintiff Robinson does not allege her purported date of purchase.  *See id.* ¶ 6.

[5]      Plaintiffs Robinson (Compl. ¶ 6), Perry (*id.* ¶ 15) and Castilyn (*id.* ¶ 27) do not allege the dates of attempted use of the Gift Cards.

the Gift Cards.  *Id.* ¶¶ 1, 5–33, 42–57.

     **C.**    **Plaintiffs Accepted the Gift Card Terms and Conditions and the Terms of Use.**

        **1.**    **Plaintiffs' Purchase of the Gift Cards Binds Them to the Terms of Use.**

As Plaintiffs confirm in their Complaint, at all relevant times, the Gift Cards bore the following language directing Plaintiffs to Walmart's website for the complete terms and conditions governing the Gift Cards: "See Walmart.com for complete terms."  *See* Compl. ¶ 969.  As set forth on the Gift Cards, the Gift Card Terms and Conditions are published online at Walmart's website. *See* Motion to Compel, **Exhibit A**, Putnam Decl. ¶ 5 ("Putnam Decl.") (identifying **Error! Hyperlink reference not valid.**).  Plaintiffs repeatedly acknowledge this, as they cite to and rely on the Gift Card Terms and Conditions published at Walmart.com.  *See* Compl. ¶ 72 (alleging that "Walmart publishes its Gift Card terms and conditions at [URL to Walmart's website]"); *see also id.* ¶¶ 72–73, 967–69.

The Gift Card Terms and Conditions in effect when all Plaintiffs allegedly purchased their Gift Cards are attached as **Ex. 1** to the Putnam Declaration.  *See* Putnam Decl. ¶ 5.  The Gift Card Terms and Conditions have remained the same since December 2015, well before any Plaintiff allegedly purchased a Gift Card.  *See* Putnam Decl., **Ex. 1** at 4 ("These Walmart Gift Card Terms and Conditions were last updated on December 1, 2015.").

The first line of the Gift Card Terms and Conditions, under the heading "**General Terms**" (emphasis in original), provides that the "Gift Card Terms and Conditions ('Terms and Conditions') are applicable *in addition* to the Terms of Use and Privacy Policy applicable to the Walmart.com website."  *Id.*  at 1 (emphasis added).  The expressly incorporated Terms of Use are easily accessible via a "Terms of Use" hyperlink.  *See* Putnam Decl. ¶ 6.  When users of the website like Plaintiffs access the hyperlink, they are taken directly to the Terms of Use.  *See id.* (identifying

Terms of Use available via hyperlink to https://help.walmart.com/app/ answers/detail/a_id/8).  At all times relevant to this action, the Terms of Use were accessible in this manner.  *Id.*

Just as the Gift Card Terms and Conditions incorporate the Terms of Use, the Terms of Use specifically incorporate the Gift Card Terms and Conditions.[6]  By purchasing the Gift Cards, Plaintiffs agreed to be bound by both the Gift Card Terms and Conditions and the Terms of Use.

**2.   Plaintiffs' Use of the Walmart.com Website Also Binds Them to the Terms of Use.**

There can be no dispute that Plaintiffs have used the Walmart.com website, as their Complaint repeatedly acknowledges such use, including accessing the Gift Card Terms and Conditions page that expressly incorporates the Terms of Use.  Even so, Walmart notes again that the Terms of Use are otherwise available to users of the Walmart.com website via a "Terms of Use" hyperlink, and that at all times relevant to this action, the Terms of Use were accessible in this manner.  *See id.* ¶ 6.

Since at least December 2016[7]—the date of the first alleged Gift Card purchase—the Terms of Use explained to consumers such as Plaintiffs that their use of the Walmart websites (including www.walmart.com) constitutes acceptance of the Terms of Use:

---

[6]      *See* Putnam Decl., **Ex. 3** at 2, § 1 ("Additional terms and conditions apply to some services offered on the Walmart Sites (e.g., Walmart Pharmacy, and Gift Cards).  Those terms and conditions can be found where the relevant service is offered on the Walmart Sites and are incorporated into these Terms of Use by reference."); *id.*, **Ex. 4** at 2, § 1 (same); *id.*, **Ex. 5** at 2, § 1 (same); *see also id.*, **Ex. 3** at 10, § 8.D. ("**Gift Cards**. . . .  Your purchase and use of gift cards is subject to the full terms and conditions related to gift cards, available at http://help.Walmart.com/app/answers/detail/a_id/57." (emphasis in original)); *id.*, **Ex. 4** at 11, § 8.D (same); *id.*, **Ex. 5** at 11, § 8.D (same).

[7]      As is commonplace with commercial websites and as Plaintiffs are aware, the Terms of Use are periodically updated, with such updates published to the Walmart.com website for users to review.  Putnam Decl. ¶ 7; Compl. ¶ 969.  Consumers are notified in each iteration of the Terms of Use both that the Terms of Use may be updated and when the Terms of Use were last changed.  *Id.*  The Terms of Use effective as of **October 27, 2016** are attached as **Ex. 2** to the Putnam Decl.  The Terms of Use were updated on **November 28, 2017**, **February 4, 2019** and again on **July 25, 2019**, which is the last time the Terms of Use were updated before Plaintiffs filed their Complaint.  *Id.* ¶ 7.  These Terms of Use are attached to the Putnam Decl. as **Ex. 3** (November 28, 2017), **Ex. 4** (February 4, 2019) and **Ex. 5** (July 25, 2019), and, unless otherwise indicated, each contains verbatim the language quoted herein.

> These Terms of Use govern your access to and use of all Walmart Sites. By using the Walmart Sites, you affirm that you are of legal age to enter into these Terms of Use, or, if you are not, that you have obtained parental or guardian consent to enter into these Terms of Use. If you violate or do not agree to these Terms of Use, then your access to and use of the Walmart Sites is unauthorized.

Putnam Decl., **Ex. 3** at 2, § 1; *id.*, **Ex. 4** at 2, § 1; *id.*, **Ex. 5** at 2, § 1. Plaintiffs' admitted use of the Walmart.com website separately binds them to the Terms of Use.

    **D.**    **The Terms of Use Include a Binding Arbitration Provision.**

When Walmart updated the Terms of Use on November 28, 2017, it prominently noted on the first page that they contained a binding arbitration provision. *See* Putnam Decl., **Ex. 3** at 1 ("NEW: Please review these Updated Terms of Use (effective 11/28/2017) carefully. They include a binding arbitration clause (*see* Section 20) requiring you and us to arbitrate our claims instead of suing in court, coverage of web and mobile apps, and other new services."); *accord id.*, **Ex. 4** at 1 ("Please review these Terms of Use carefully. They include a binding arbitration clause (see Section 20) requiring you and us to arbitrate our claims instead of suing in court."); *id.*, **Ex. 5** at 1 (same).

Further, the Introduction (Section 1) of the Terms of Use reiterated the following clear and conspicuous disclosure:

> **IMPORTANT: THIS AGREEMENT CONTAINS A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN <u>SECTION 20</u> BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND WALMART ARE EACH GIVING UP OUR RIGHTS TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND.**

Putnam Decl., **Ex. 3** at 3, § 1; *id.*, **Ex. 4** at 3, § 1; *id.*, **Ex. 5** at 3, § 1 (emphasis and typography in original).

In Section 20, entitled "**Disputes & Arbitration; Applicable Law**" (emphasis in original), the Terms of Use make clear that "[u]sing or accessing the Walmart Sites constitutes your

acceptance of this Arbitration [P]rovision." *Id.*, **Ex. 3** at 27, § 20; *id.*, **Ex. 4** at 28, § 20; *id.*, **Ex. 5** at 29, § 20.

Under the Arbitration Provision, Plaintiffs and Walmart "waive any right to file a lawsuit in court or participate in a class action for matters within the terms of the Arbitration [P]rovision." *Id.*, **Ex. 3** at 27, § 20; *id.*, **Ex. 4** at 28, § 20; *id.*, **Ex. 5** at 29, § 20.  The scope of the Arbitration Provision is broad and covers all disputes that arise out of or relate to the parties' relationship:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION.

*Id.*, **Ex. 3** at 27, § 20; *id.*, **Ex. 4** at 28, § 20; *id.*, **Ex. 5** at 29, § 20 (typography in original).

**E.    The Arbitration Provision Offers a Fair and Efficient Method for Resolution of Plaintiffs' Claims.**

The Arbitration Provision provides Plaintiffs with a consumer-friendly, efficient, and flexible means of resolving their claims against Walmart.  Indeed, the Arbitration Provision requires the arbitrator to "conduct hearings, if any, by teleconference or videoconference, rather than by personal appearances, unless the arbitrator determines upon request by [Plaintiffs] or by [Walmart] that an in-person hearing is appropriate." *Id.*, **Ex. 3** at 28, § 20; *id.*, **Ex. 4** at 29, § 20; *id.*, **Ex. 5** at 29, § 20.  The Arbitration Provision requires that such a hearing "will be held at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances." *Id.*, **Ex. 3** at 28, § 20; *id.*, **Ex. 4** at 29, § 20; *id.*, **Ex. 5** at

29, § 20.  While the arbitrator may determine an arbitral location in the event the parties cannot agree on a location (*see id.*, **Ex. 3** at 28, § 20; *id.*, **Ex. 4** at 29, § 20; *id.*, **Ex. 5** at 29, § 20), Walmart agrees to arbitrate this dispute in a locale convenient to Plaintiffs and their counsel, should they request an in-person hearing.

The Arbitration Provision provides that the arbitration proceeding "will be administered by Judicial Arbitration Mediation Services, Inc. ('JAMS') pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the 'JAMS Rules') and as modified by this agreement to arbitrate."  *Id.*, **Ex. 3** at 27–28, § 20 *id.*, **Ex. 4** at 28–29, § 20; *id.*, **Ex. 5** at 29, § 20. The Arbitration Provision otherwise identifies the location of the "JAMS Rules, including instructions for bringing arbitration, [which] are available on the JAMS website at http://www.jamsadr.com/rules-streamlined-arbitration[.]"  *Id.*, **Ex. 3** at 28, § 20; *id.*, **Ex. 4** at 29, § 20; *id.*, **Ex. 5** at 29, § 20.

## II.    ARGUMENT

### A.    The FAA Establishes a Strong Policy Favoring Arbitration and Applies Here.

Congress has expressed a strong public policy favoring arbitration, and courts are commanded to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" and to place them on "the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms."); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing the FAA as "'a congressional declaration of a liberal federal policy favoring arbitration

agreements'" (citation omitted)); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").

Arbitration agreements must meet only two conditions for the FAA to apply: (1) they must be in writing; and (2) they must be part of "a contract evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2.[8]  Agreements that satisfy both of those requirements are "valid, irrevocable, and enforceable" under federal law. *Id.*

Both elements are satisfied here. The parties' agreement is in writing and evidences a transaction in interstate commerce, namely the sale of gift cards. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995) (holding that FAA applies broadly to reach transactions "affecting" commerce). Accordingly, the FAA applies.

### B.     Plaintiffs Are Bound by the Arbitration Provision.

Courts routinely recognize and uphold the enforceability of terms and conditions referenced in connection with consumer transactions and contained in full online. "Facilitating customer payment and subscription before the full terms of service are revealed is not an uncommon business practice." *Rasschaert v. Frontier Commc'ns Corp.*, No. 12-3108, 2013 WL 1149549, at *6 (D. Minn. Mar. 19, 2013) (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997)). "In fact, most courts that have considered the issue 'have upheld arbitration and forum selection clauses in so-called 'clickwrap' or 'shrinkwrap' form contracts,' which occur 'when the terms are provided online, or only after plaintiffs have manifested assent.'" *Id.* (quoting *Siebert v. Amateur Athletic Union of the U.S., Inc.*, 422 F. Supp. 2d 1033, 1040 (D. Minn. 2006); citing *Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009)). The court in

---

[8]     "[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties." *Wojtalewicz v. Pioneer Hi-Bred Int'l, Inc.*, 939 F. Supp. 965, 972 (D. Neb. 2012) (citation and quotation marks omitted) (alterations in original).

*Rasschaert* held that plaintiffs were bound to an arbitration provision added to the terms and conditions applicable to their receipt of telecommunications services from defendant, where notice of the arbitration provision was sent to plaintiffs with their monthly bill statements and referred plaintiffs to the online terms and conditions. *See id.* at *3, *6; *accord Enderlin v. XM Satellite Radio Holdings, Inc.*, No. 06-0032, 2008 WL 830262, at *6 (E.D. Ark. Mar. 25, 2008) (enforcing arbitration provision included in updated terms and conditions where "[p]laintiff had the opportunity to read, and in fact confirmed that he read and agreed to the Terms and Conditions, when he activated his account in June of 2003 . . . . Furthermore, Plaintiff continued to receive [defendant's] services after [defendant] sent notice of the 2007 changes to the Agreement. Therefore, Plaintiff assented to the arbitration agreements contained in both the original Agreement and the 2007 Agreement." (citations and quotation marks omitted)).  The same result follows here.

Here, Plaintiffs accepted the Gift Card Terms and Conditions, including the Terms of Use, and the Arbitration Provision, through their purchases of the Gift Cards.  Plaintiffs had notice of the Gift Card Terms and Conditions prior to sale, as each Gift Card expressly directed Plaintiffs to them.  Plaintiffs' Complaint acknowledges this fact.  *See* Compl. ¶ 969 (alleging that Gift Cards stated, in part, "See Walmart.com for complete terms").  Further, as set forth above, the Gift Card Terms and Conditions specifically incorporate the Terms of Use, which in turn clearly incorporate the Gift Card Terms and Conditions.  *See* Putnam Decl., **Ex. 1**, Gift Card Terms and Conditions at 1; **Ex. 2** at 10, § 11; **Ex. 3** at 10, § 8.D; **Ex. 4** at 11, § 8.D; **Ex. 5** at 11, § 8.D.  Thus, Plaintiffs' purchases of the Gift Cards bind them to all of the terms contained and incorporated in the Gift Card Terms and Conditions, including the Arbitration Provision in the Terms of Use.

While a few of the Plaintiffs[9] allege they purchased Gift Cards prior to the inclusion of the Arbitration Provision in the Terms of Use on November 28, 2017, these Plaintiffs (and the rest of the Plaintiffs who did purchase Gift Cards after November 28, 2017) are all separately bound by the Terms of Use because they were aware of the Terms of Use, including that they may be updated, and because they used the Walmart.com website following the implementation of the Arbitration Provision. First, Plaintiffs concede that the Gift Cards bore the language "Terms and Conditions subject to change without notice. See Walmart.com for complete terms." Compl. ¶ 969. In addition, they explicitly confirm accessing the website. *See, e.g.*, *id*. ¶¶ 42, 44, 72. Those admissions establish that all Plaintiffs were on both actual and inquiry notice of the Terms of Use. *See, e.g.*, *id*. ¶¶ 42, 44, 72, 967.[10] "'[Plaintiffs are] nevertheless bound by such terms if [they are] on inquiry notice of them and assent[] to them through conduct that a reasonable person would understand to constitute assent.'" *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019) (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019)). "A website user is deemed to be on inquiry notice of contract terms so long as the 'design and content' of the webpage renders 'existence' of those terms 'reasonably conspicuous.'" *Id.* (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016)); *see also Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. Ct. App. 2009) ("***Failure to read an enforceable online agreement, as with any binding contract, will not excuse compliance with its terms. A customer on notice of contract terms available on the internet is bound by those terms***." (citation and quotation marks omitted) (emphasis added)).[11]

---

[9]     Plaintiffs Walton, D'Angelo, Czigle, Almquist, Jr., Boyd, Castilyn, Rudd, Esquivel, Rhorer, Prescott and Pettit.

[10]     In addition, several Plaintiffs affirmatively allege that they "filed a complaint with Walmart online" at times when the Arbitration Provision was in effect. *See* Compl. ¶¶ 7, 10, 13.

[11]     Both the Gift Card Terms and Conditions and the Terms of Use provide that California law shall apply and California "[c]ourts have repeatedly upheld arbitration provisions that come in the form of shrinkwrap agreements." *Hoekman v. TAMKO Bldg. Prods., Inc.*, No. 14-1581, 2015 WL 9591471, at *5 (E.D. Cal. Aug. 26, 2015). This is consistent with the laws of the states from which Plaintiffs hail. *See, e.g.*, *Schwartz v. Comcast*

*Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (enforcing arbitration clause under Pennsylvania law because plaintiff "accepted the service" and "the terms of the contract were available to [plaintiff] via the web site, and thus they are binding, despite the fact that he was unaware of them"); *James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005) (affirming order compelling arbitration under Kentucky law after finding that there was sufficient notice to consumer of terms and conditions when terms were posted within stores and referenced on product containers because to "require [defendant's] cashiers to recite to each and every customer the fourteen pages of the Official Rules, and then have each customer sign an agreement to be bound by the rules, would be unreasonable and unworkable"); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) (enforcing shrinkwrap terms and conditions because "[v]endors can put the entire terms of a contract on the outside of a box only by using microscopic type" and further noting that "[t]ransactions in which the exchange of money precedes the communication of detailed terms are common"); *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 17-0042, 2019 WL 4647305, at *11 (S.D. Ohio Sept. 24, 2019) (enforcing browsewrap agreement and noting that courts have found that "constructive knowledge alone is sufficient to establish consent to 'browsewrap' terms and conditions when the website host placed the notice of the terms and agreements 'prominently' and provided 'easy access' to the full terms" (citations omitted)); *Strange v. Comcast Corp.*, No. 18-4032, 2018 WL 6602072, at *4 (E.D. Pa. Dec. 14, 2018) (enforcing arbitration provision "based on Louisiana law and Defendant's uncontested affidavit attesting to [its] business practice, that Plaintiff received a copy of the Subscriber Agreement with his . . . billing statement and, therefore, agreed to its arbitration provisions when he continued his use of the [defendant's] internet service"); *Taylor v. Samsung Elecs. Am.*, No. 16-50313, 2018 WL 3921145, at *4 (N.D. Ill. Aug. 16, 2018) (holding that plaintiff had reasonable notice of arbitration clause under Illinois law because a "company's posting of its terms and conditions on its website provides users of its products a reasonable opportunity to read them"), *appeal dismissed sub nom. Taylor v. Samsung Elecs. Am., Inc.*, No. 18-2964, 2018 WL 7575587 (7th Cir. Oct. 2, 2018); *Edwards v. Vemma Nutrition Co.*, No. 17-2133, 2018 WL 637382, at *3 (D. Ariz. Jan. 31, 2018) (applying Arizona law and noting, "a contracting party agrees to terms and conditions in an extrinsic document if the agreement being executed clearly and unequivocally refers to the extrinsic document, the party consents to the incorporation by reference, and the terms of the incorporated document are 'known or easily available to the contracting parties'" (citation omitted)); *Ferrie v. DirecTV, LLC*, No. 15-0409, 2016 WL 183474, at *10 (D. Conn. Jan. 12, 2016) (finding that under Connecticut law, plaintiff was bound by arbitration clause in terms and conditions that were emailed to him after he signed up for defendant's services over the phone "even if the customer never expected the Order Confirmation E-mail to contain additional terms, precisely because the existence of additional terms is so conspicuously announced once the Order Confirmation E-mail"); *Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 590 (M.D.N.C. 2014) (enforcing arbitration provision under North Carolina law on theory of constructive notice where "the [product] stated that the purchase of that [product] was subject to a limited warranty, which was expressly incorporated by reference into the purchase transaction" through reference to defendant's website); *Clements v. DIRECTV, LLC*, No. 13-3048, 2014 WL 1266834, at *3 (W.D. Ark. Mar. 26, 2014) (enforcing an arbitration clause under Arkansas law despite plaintiff's argument that she never viewed the terms of agreement that were mailed to her and posted online because these circumstances nonetheless indicated that "notice of the arbitration provision to Plaintiffs can be reasonably inferred and a mutual agreement to arbitrate disputes existed"); *Zahourek Sys., Inc. v. Canine Rehab. Inst., Inc.*, No. 12-0978, 2013 WL 2903413, at *2 (D. Colo. June 14, 2013) (enforcing arbitration provision under Colorado law where plaintiff was provided with a hyperlink to defendant's terms and conditions and was informed that "[p]ayment for the item(s) represents that you have read, understood, and accept the . . . terms"); *N. Ind. Pub. Servs. Co. v. Platt Envtl. Servs., Inc.*, No. 09-0164, 2010 WL 11583134, at *1 (N.D. Ind. Sept. 15, 2010) (holding that there was an enforceable arbitration clause under Indiana law based on the actions of the parties where plaintiff provided defendant with terms and conditions that would govern their relationship and defendant implicitly accepted by not objecting to those terms even though the parties never signed the terms or a formal agreement); *Ambrose v. Comcast Corp.*, No. 09-0182, 2010 WL 1270712, at *3 (E.D. Tenn. Mar. 31, 2010) (enforcing arbitration clause under Tennessee law and holding that mailing terms to a consumer after purchase "is valid even though the party did not read the contract terms, sign any documents explicitly containing the contract terms, or know about the contract terms at the time the party entered into the agreement" (citation and quotation marks omitted)); *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 06-0891, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007) (finding a valid agreement existed and noting, "the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site"); *O'Quin v. Verizon Wireless*, 256 F. Supp. 2d 512, 516 (M.D. La. 2003) (enforcing arbitration provision under Louisiana law where terms were included inside of product packaging and noting that "courts have found nothing overwhelmingly objectionable in the 'money now, terms later' approach to

The presentation of the Walmart website satisfies these standards, as the Terms of Use hyperlink is displayed on each page of the Walmart.com website.  Putnam Decl. ¶ 6.

Should any of the Plaintiffs offer admissible evidence that creates a genuine issue of material fact on contract formation notwithstanding his or her admissions, Walmart respectfully requests a trial on that issue pursuant to 9 U.S.C. § 4.

### C.    Plaintiffs' Claims Must be Arbitrated on an Individual Basis Because Their Disputes Are Within the Scope of the Arbitration Provision.

Any questions regarding whether a dispute is covered by an agreement to arbitrate must be decided "with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration

---

sales of consumer goods"); *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 36 (Nev. 2018) ("Though arbitration agreements often appear in conventional two-party contracts, they can also arise from other written records where signatures are not required."); *Major*, 302 S.W.3d at 230 (upholding online browsewrap agreement under Missouri law); *Bess v. DirecTV, Inc.*, 885 N.E.2d 488, 497 (Ill. Ct. App. 2008) (applying Illinois law and noting that imputing acceptance of terms and conditions is "typical of consumer agreements for computer, credit card, and other online or catalog purchases wherein the agreements are delivered with the product or the first billing and consumers may approve or reject the terms on receipt of  the agreement," while further recognizing that "[c]ompetent adults are bound by such documents, read or unread" (citing *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997))); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122 (Ill. Ct. App. 2005) (applying Texas law and enforcing arbitration clause posted on website during online purchase of computer where "statement that the sales were subject to the defendant's 'Terms and Conditions of Sale,' combined with making the 'Terms and Conditions of Sale' accessible online by blue hyperlinks, was sufficient notice to the plaintiffs that purchasing the computers online would make the 'Terms and Conditions of Sale' binding on them"); *Memberworks, Inc. v. Yance*, 899 So. 2d 940, 943 (Ala. 2004) (applying Alabama law and finding that plaintiff was bound by arbitration agreement despite the fact that he never viewed the terms and conditions that were mailed to him post-transaction because he received notice of the terms and failed to affirmatively renounce the business relationship); *Westendorf v. Gateway 2000, Inc.*, No. 16913, 2000 WL 307369 (Del. Ch. Mar. 16, 2000) (enforcing arbitration clause found in terms and conditions mailed to plaintiff after purchase where plaintiff manifested assent to the terms by retaining and using the purchased product, despite not otherwise manifesting assent), *aff'd*, 763 A.2d 92 (Del. 2000); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 572 (N.Y. App. Div. 1998) (applying New York law and approvingly citing an approach to "examination of the formation of the contract [that] takes note of the realities of conducting business in today's world" and further noting that "[t]ransactions involving 'cash now, terms later' have become commonplace").

clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" (citations omitted)).   "The question *is not* whether there was a way to interpret the claims as falling outside the scope of the agreements; instead, where a valid arbitration agreement exists, *the claims are arbitrable unless* it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018) (citation and quotation marks omitted) (emphasis added).

Plaintiffs' claims against Walmart are centered on their alleged purchases of Walmart Gift Cards.  Specifically, Plaintiffs claim that Walmart "implicitly" represented to them that the Gift Cards they purchased were "not tampered with or adulterated," (Compl. ¶ 61), or alternatively failed to warn them "of the probability and/or possibility that their Gift Cards had been tampered with[.]" *Id.* ¶ 62.

Based on these allegations, Plaintiffs attempt to assert claims against Walmart arising out of the consumer protection statutes of all 50 states and the District of Columbia (Count I, Claims A–YY), in addition to claims for Breach of Warranty of Fitness for a Particular Purpose (Count II); Breach of Implied Warranty of Merchantability (Count III); Unjust Enrichment (Count IV); Negligent Misrepresentation (Count V); Fraud by Omission (Count VI); Breach of Contract (Count VII); Breach of Implied Contract (Count VIII); Declaratory Judgment (Count IX); and Bailment (Count X).  These claims clearly fall within the broad scope of the Arbitration Provision with Walmart, which requires arbitration of "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY[.]"  Putnam Decl., **Ex. 3** at 27,

§ 20 (typography in original); *id.*, **Ex. 4** at 28, § 20; *id.*, **Ex. 5** at 29, § 20.

In any event, if Plaintiffs were to argue that some or all of their claims are outside the scope of the Arbitration Provision, the parties agreed that any such challenge must be heard by arbitrators. Specifically, the Arbitration Provision incorporates the JAMS Rules. *See* Putnam Decl., **Exs. 3–5**, § 20. Under those rules:

> [A]rbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rule 8(b). By incorporating these rules, the parties agreed to delegate to an arbitrator threshold questions of arbitrability. *See, e.g.*, *Murphy v. Oracle Am., Inc.*, No. 19-1207, 2019 WL 2525727, at *2 (E.D. Mo. June 19, 2019) (holding that an arbitration agreement's incorporation of an ***identical rule*** found in JAMS Employment Arbitration Rules (and similar rule in American Arbitration Association Rules) evinced the parties' delegation of the arbitrability question to the arbitrator) (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) and *Fallo v. HighBTech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009))).

Accordingly, not only must any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration, but also any challenge to the scope of the Arbitration Provision is for an arbitrator, not the Court, to decide.

**D.      Plaintiffs Should Be Compelled to Comply with the Arbitration Provision.**

Because the Arbitration Provision is governed by the FAA and the dispute falls within its scope, Walmart respectfully submits that this Court must compel arbitration of Plaintiffs' claims. *See* 9 U.S.C. §§ 3, 4; *see also Moses H. Cone*, 460 U.S. at 22 ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.").

14

"[T]he FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Pierce v. Plains Commerce Bank*, No. 11-1222, 2012 WL 5992730, at *2 (W.D. Mo. Nov. 29, 2012) (citation and quotation marks omitted) (emphasis in original).

        **E.     This Action Should Be Stayed Pending Individual Arbitration.**

Section 3 of the FAA provides that, in any lawsuit "referable to arbitration," the Court "***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Because there is a binding Arbitration Provision that applies to Plaintiffs' claims, they must comply with that provision, and the Court should stay this action pending the outcome of any arbitration. *See id.*; *see also Pierce*, 2012 WL 5992730, at *2 (explaining the FAA leaves courts no discretion but to compel arbitration on claims within the scope of the arbitration agreement).

### III.      <u>CONCLUSION</u>

For the foregoing reasons, Walmart respectfully requests that the Court compel Plaintiffs to comply with the written Arbitration Provision and stay this action in its entirety during the pendency of individual arbitration proceedings.

Respectfully submitted,

Dated: December 4, 2019                By: /s/ Michael W. McTigue Jr.
                                        Michael W. McTigue Jr. (PA Bar No. 69548)
                                        Meredith C. Slawe (PA Bar No. 201489)
                                        AKIN GUMP STRAUSS HAUER & FELD LLP
                                        Two Commerce Square
                                        2001 Market Street, Suite 4100
                                        Philadelphia, Pennsylvania 19103
                                        Telephone: (215) 965-1200
                                        Facsimile: (215) 965-1210
                                        mmctigue@akingump.com
                                        mslawe@akingump.com

Elizabeth D. Scott (TX Bar No. 24059699)
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 North Field Street, Suite 1800
Dallas, Texas 75201
(214) 969-2800 (telephone)
(214) 969-4343 (facsimile)
edscott@akingump.com

Vincent O. Chadick (94075)
QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
Facsimile: (479) 444-6647
vchadick@qgtlaw.com

John E. Tull III (84150)
Chad W. Pekron (2008144)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
cpekron@qgtlaw.com

*Attorneys for Defendants Walmart Inc., Wal-Mart Stores Arkansas, LLC, and Wal-Mart Stores East, LP*