# United States Court of Appeals
### For The Eighth Circuit
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

October 08, 2021

Mr. James F. Bennett
DOWD & BENNETT
Suite 1900
7733 Forsyth Boulevard
Saint Louis, MO  63105-0000

      RE: 20-1787  Gracie Foster, et al v. Walmart, Inc., et al  4:19-cv-00571-BSM

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                          Michael E. Gans
                                          Clerk of Court

HAG

Enclosure(s)

cc:    Mr. Nickolas W. Allen
        Ms. Sharon S. Almonrode
        Mr. Donald M. Brown
        Mr. Vincent O. Chadick
        Ms. Tammy H. Downs
        Mr. Craig Richard Heidemann
        Ms. Emily E. Hughes
        Mr. Quincy Byrum Hurst Jr.
        Mr. William Kalas
        Mr. Michael W. McTigue Jr.

Ms. Meredith C. Slawe
Mr. John E. Tull III

District Court/Agency Case Number(s):   4:19-cv-00571-BSM

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

October 08, 2021

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 20-1787  Gracie Foster, et al v. Walmart, Inc., et al

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellants and appeared on the brief was James F. Bennett, of Saint Louis, MO. The following attorney(s) also appeared on the appellants' brief; John E. Tull, III, of Little Rock, AR, Vincent O. Chadick, of Springdale, AR, Meredith C. Slawe, of Philadelphia, PA, Michael W. McTigue, Jr., of Philadelphia, PA.

Counsel who presented argument on behalf of the appellees and appeared on the brief was Sharon S. Almonrode, of Rochester, MI. The following attorney(s) also appeared on the appellees' brief; Craig Richard Heidemann, of Bolivar, MO, Donald M. Brown, of Bolivar, MO, Emily E. Hughes, of Rochester, MI, Nickolas W. Allen, of Springfield, MO, William Kalas, of Rochester, MI.

The judge who heard the case in the district court was Honorable Brian S. Miller. The judgment of the district court was entered on April 9, 2020.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

HAG

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  4:19-cv-00571-BSM

United States Court of Appeals
For the Eighth Circuit
_____

No. 20-1787
_____

Gracie Foster; Pearlie Boyd; Monica Robinson; Jodie Roskydoll; Joe Esquivel; Chris Pettit; Talitha Hofflerr-Frazier; Leonshay Tuller; John Almquist, Jr.; Frederick Coffey; Gloria Czigle; Torrin Perry; Jessica Beall; Amanda Rhorer; Kris Cunningham; Mary Susan Dubinsky; Dianne Walton; Amy Slane; Tina Brown; Jennifer Edmark; Lillian Rudd; Donnie Brown; Justin Castilyn; Clarence Gaten; Brenda Shaley; Ryan D'Angelo; Brian Rush; Heidi Horne; T. W. Prescott

*Plaintiffs - Appellees*

v.

Walmart, Inc.; Walmart Stores Arkansas, LLC; Walmart Stores East, LP

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: February 18, 2021
Filed: October 8, 2021
_____

Before SMITH, Chief Judge, WOLLMAN and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

The district court ruled that an arbitration clause found in Walmart.com's terms of use was unenforceable against purchasers of gift cards. Our view is different, so we reverse and remand for a trial on the question. *See* 9 U.S.C. § 4.

### I.

More than two dozen gift-card purchasers allegedly had the experience of buying Walmart gift cards only to have them turn out to be worthless. According to the complaint, third parties tampered with the gift cards and then stole the funds that were loaded onto them. When Walmart refused to provide a refund, the plaintiffs sued the company in federal court.

Hoping to have the case litigated elsewhere, Walmart filed a motion to compel arbitration. *See* 9 U.S.C. §§ 3, 4. It relied on a notation on the back of the gift cards directing purchasers to "[s]ee Walmart.com for complete terms." If they did so, Walmart explained, they would find an arbitration provision covering "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART." Customers "accept[ed]" arbitration, according to the website, by "[u]sing or accessing the Walmart Sites."

The district court denied Walmart's motion on the ground that the plaintiffs never had notice of the arbitration clause. They could not assent to it, the court explained, unless they saw it first. For that reason, there was no "need" to hold "a trial on the question of arbitrability."

### II.

"[A]rbitration is a matter of contract," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), meaning that disputes are arbitrable only to the extent an agreement between the parties says so, *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The district court's task in this case was to determine

whether Walmart and the plaintiffs had an agreement to arbitrate, and, if so, what it covered.  *See United Steelworkers v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005) (discussing the "two-part test" for evaluating motions to compel).

The district court never made it past the first question.  There was no agreement to arbitrate, the court concluded, because there was no proof that the "plaintiffs saw the terms of use, were otherwise aware that the terms existed before filing this lawsuit, or saw the notice on the gift cards that [the] terms applied."  It reached this conclusion on the equivalent of a summary-judgment record: it had Walmart's motion, the plaintiff's response, and the exhibits accompanying each.  *See Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 743 (8th Cir. 2014) (recognizing that a motion to compel arbitration accompanied by materials outside the pleadings is evaluated under a summary-judgment standard).

Reviewing the district court's decision de novo, *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009), our job now is to determine if the "record reveals a material issue of fact" on whether the parties had an agreement to arbitrate.  *Neb. Mach. Co.*, 762 F.3d at 743; *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").  If it does, the Federal Arbitration Act tells us what to do next: remand for a trial on that issue.  *See Neb. Mach. Co.*, 762 F.3d at 743.

Neither side thinks a trial is necessary, though Walmart asks for one in the alternative.  Its view is that an agreement existed as early as the time of purchase and no later than when the plaintiffs accessed Walmart's website.

A.

The first possibility, which we call the point-of-purchase theory, is that the parties had a binding arbitration agreement at the moment the plaintiffs purchased their gift cards.  The reason, according to Walmart, is that every card has a notation on the back directing the customer to "[s]ee Walmart.com for complete terms."  The

-3-

arbitration provision was one of those "terms," so in Walmart's view, the plaintiffs had notice of it from the very beginning. *See Halbach v. Great-W. Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) ("[A] writing may incorporate another document if the terms of the incorporated document are known or easily available to the contracting parties.").

The arbitration provision, however, tells a different story. A customer "accept[s]" arbitration, it says, only by "using or accessing the Walmart Sites." Walmart was the "master of [its] offer" to arbitrate, *Newman v. Schiff*, 778 F.2d 460, 466 (8th Cir. 1985), so if it wished to have the arbitration agreement bind the parties at the moment of purchase, it certainly could have said so, *see* Restatement (Second) of Contracts § 60 (Am. L. Inst. 1981). Having chosen a different "manner of acceptance," Walmart cannot now change the terms and argue that acceptance occurred at some other point. *Id.*; *see also Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997).

B.

The second possibility is that the plaintiffs gave their assent in exactly the way the arbitration provision described: by accessing Walmart's website. *See* Restatement (Second) of Contracts § 50(1) (Am. L. Inst. 1981) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."). For the point-of-purchase theory, we had to ask whether the plaintiffs *could* manifest their assent that way. Now the question, given what the arbitration provision says, is whether they *did*.

1.

Internet contracts, just like other agreements, require mutual assent between the parties—a so-called "meeting of the minds." *Newman*, 778 F.2d at 464; *see also Utley v. Donaldson*, 94 U.S. 29, 47 (1876) ("There can be no contract without the mutual assent of the parties."). In the absence of direct communication between the

-4-

parties, websites have employed some unique solutions to overcome the challenges of making internet contracts. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Broadly speaking, there are two ways for a website operator to invite acceptance, with numerous "variations in between." 1 Corbin on Contracts § 2.12[2]; *see also Nguyen*, 763 F.3d at 1175–76 (discussing the "two flavors" of internet contracts).

The first, a so-called "clickwrap" arrangement, requires the user to explicitly assent by clicking "I agree" (or something similar) before using the website or purchasing a product. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004); *Nguyen*, 763 F.3d at 1175–76. In these types of agreements, mutual assent is rarely an issue because the user sees the list of the terms and conditions before accepting them. *See Nguyen*, 763 F.3d at 1175–76. For that reason, courts rarely find problems with clickwrap agreements. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

A "browsewrap" arrangement, on the other hand, imputes assent through the user's performance of some specific act—here, "using or accessing" Walmart's website. *See Nguyen*, 763 F.3d at 1176. In this scenario, "no [other] affirmative action is required," *id.* (quotation marks omitted), meaning that users are never asked if they agree to the terms and conditions. The terms themselves are also usually provided through a hyperlink rather than directly to the user. *See id.* So the validity of a browsewrap agreement often depends on whether there is adequate notice to create "actual or constructive knowledge of [the] website's terms and conditions." *Id.* (quotation marks omitted); *see also* 1 Corbin on Contracts § 2.12[2] ("The user of a website has a duty to read the site's terms of use only if the user knew or reasonably should have known about them.").

The parties do not dispute that this case involves a browsewrap agreement. None of the 29 plaintiffs were ever asked to agree to the terms and conditions on Walmart's website, so like most browsewrap cases, the key here is the adequacy of

-5-

the notice. *See Nguyen*, 763 F.3d at 1176; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016).

Notice can come in one of two forms. The first is actual notice, which occurs when the user is actually aware of the terms of use, most commonly after clicking on a hyperlink and reviewing them. *See Nguyen*, 763 F.3d at 1176. In those circumstances, "courts have consistently enforced browsewrap agreements." *Id.*

The other, inquiry notice, depends on "whether the website puts a reasonably prudent user on inquiry notice of the terms." *Id.* at 1177. Critical is the website's overall design and content, including whether "the existence of [the relevant] terms" are "reasonably conspicuous" to the user. *Nicosia*, 834 F.3d at 233; *accord Nguyen*, 763 F.3d at 1177; *see also* 1 Corbin on Contracts § 2.12[2] (describing the factors for determining whether the terms of use are sufficiently conspicuous). If they are, then the user "is deemed to have notice of all facts that reasonable inquiry would disclose," including the terms themselves. *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 431 (Wash. 2006); *see Nguyen*, 763 F.3d at 1177.

2.

The district court got ahead of itself when it concluded, on this "meager record[]," that inquiry notice was absent. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 28 (2d Cir. 2002). As we have recognized, the existence of mutual assent is generally a "factual question" that is resolvable at this stage only if the material facts are not in dispute. *See Grandoe Corp. v. Gander Mountain Co.*, 761 F.3d 876, 882–83 (8th Cir. 2014); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *Meyer*, 868 F.3d at 74 ("If a factual issue exists regarding the formation of the arbitration agreement, . . . remand to the district court for trial is necessary."). Here, they are.

One disputed fact is whether any of the plaintiffs actually "use[d] or access[ed]" Walmart's website. In addition to suggesting that four of the plaintiffs *may* have, the complaint references specific parts of the website, which Walmart views as a "binding admission[]" that at least some of them *did*. The plaintiffs, meanwhile, claim that only their lawyers accessed it, and even then, only in the course of preparing the complaint. *See Meyer*, 868 F.3d at 77 (concluding that "the pleading" was "not obviously a concession" because it made "no reference to [the plaintiff's] knowledge"). Further complicating the matter is that the gift cards themselves were redeemable in-store or *online*, meaning that some of the plaintiffs might have tried to use them through the website. The bottom line is that, without more information, we are left to guess. *See Neb. Mach. Co.*, 762 F.3d at 742 (remanding for a trial on whether a contract existed when "there were facts left to try").

Nor is the record clear about the structure and design of the website itself. In an exhibit to its motion to compel arbitration, Walmart provided a printed copy of the website's online terms and conditions, which provides some insight. But without more, it is difficult to determine whether a reasonably prudent user would have known to inquire further. Among the yet-unanswerable questions are the exact location and prominence of the terms-of-use hyperlink, how many clicks it would have taken for the user to discover the arbitration provision, and whether the website changed during the relevant period. *See Nguyen*, 763 F.3d at 1177–78 (reviewing a record containing similar evidence); *Specht*, 306 F.3d at 23–24 (same). "[A]nswers to factual questions like these" are essential to determining whether "this case belongs in arbitration or litigation." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 979 (10th Cir. 2014).

Similar questions exist about the gift cards themselves. According to the complaint, the back side of the cards had a notation directing customers to "Walmart.com for complete terms." In theory, this directive could have put the plaintiffs on notice to inquire further by telling them where to go for more information. *Cf. Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019)

(concluding that an online agreement was not enforceable in part because the company "never directed" the user's "attention to the Terms & Conditions hyperlink" (internal quotation marks omitted)). But the record is lacking in specifics, including the size and placement of the notation on the back, which are relevant to determining whether the plaintiffs would have been on notice to inquire further.[1] *Cf. Cicle v. Chase Bank USA*, 583 F.3d 549, 554–55 (8th Cir. 2009) (concluding that the terms of an arbitration agreement were printed in a sufficiently conspicuous fashion).

In sum, "material disputes of fact . . . exist on the question [of] whether the parties agreed to arbitrate." *Howard*, 748 F.3d at 978. In these circumstances, the Federal Arbitration Act required the district court to "proceed summarily to [a] trial." 9 U.S.C. § 4; *Neb. Mach. Co.*, 762 F.3d at 742–44.

---

[1] It also does not appear that the district court ever made a choice-of-law determination. To be sure, the plaintiffs filed the lawsuit in Arkansas, and the forum state's choice-of-law rules govern. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123 (8th Cir. 2012) ("In determining which state's law applies, we generally employ the forum state's choice-of-law rules."). But the record says nothing about where the plaintiffs purchased their gift cards or tried to use them, which were critical facts in choosing which states' laws would apply. *See Scottsdale Ins. Co. v. Morrow Land Valley Co.*, 411 S.W.3d 184, 189 (Ark. 2012) (discussing "the place of contracting," "the place of negotiation of the contract," and "the place of performance [of the contract]" as factors in determining the choice of law in a breach-of-contract case (quotation marks omitted)); *see also Howard*, 748 F.3d at 982 (concluding that there were "material factual disputes" that "preclude[d] a definitive [choice-of-law] ruling" on a contract-formation question).

III.

We accordingly reverse the judgment of the district court, remand for a trial,[2] and deny the pending motion to consolidate as moot.

_____

---

[2]Based on our decision to send this case back for a trial, we decline to answer whether the parties' agreement to arbitrate, if it existed, would cover this particular dispute or be unconscionable if it did. *See BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 549 (8th Cir. 2018) (declining to consider arguments that the district court never analyzed).

-9-

| | |
|---|---|
| **From:** | ca08ml_cmecf_Notify@ca8.uscourts.gov |
| **Subject:** | 20-1787 Gracie Foster, et al v. Walmart, Inc., et al "Signed Opinion Filed" (4:19-cv-00571-BSM) |
| **Date:** | Friday, October 8, 2021 8:21:56 AM |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 10/08/2021

**Case Name:** Gracie Foster, et al v. Walmart, Inc., et al
**Case Number:** 20-1787
**Document(s):** Document(s)

**Docket Text:**
OPINION FILED - THE COURT: Lavenski R. Smith, Roger L. Wollman and David R. Stras
AUTHORING JUDGE: David R. Stras
The [4944109-2] motion to consolidate is denied as moot. (PUBLISHED) [5085210] [20-1787] (Hillary Grupe)

**Notice will be electronically mailed to:**

Mr. Nickolas W. Allen: nick@dhhlawfirm.com, victoria@dhhlawfirm.com
Ms. Sharon S. Almonrode: ssa@millerlawpc.com, aad@millerlawpc.com, aad@ecf.courtdrive.com
Mr. James F. Bennett: jbennett@dowdbennett.com, mguzy@dowdbennett.com
Mr. Donald M. Brown: donald@dhhlawfirm.com, tammy@dhhlawfirm.com
Mr. Vincent O. Chadick: vchadick@qgtlaw.com
Ms. Tammy H. Downs, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Craig Richard Heidemann: craig@dhhlawfirm.com
Mr. Quincy Byrum Hurst, Jr.: qbyrum@hurstlaw.org, linda@hurstlaw.org, mae7964@hotmail.com
Mr. William Kalas: wk@millerlawpc.com, lkb@millerlawpc.com, lkb@ecf.courtdrive.com, wk@ecf.courtdrive.com
Mr. Michael W. McTigue, Jr.: MMcTigue@cozen.com, gpowell@cozen.com, mbronzini@cozen.com, michael-mctigue-3501@ecf.pacerpro.com, dclayton@cozen.com
Ms. Meredith C. Slawe: mslawe@cozen.com, mbronzini@cozen.com, gpowell@cozen.com, meredith-slawe-7764@ecf.pacerpro.com, dclayton@cozen.com
Mr. John E. Tull, III: jtull@qgtlaw.com, kwycoff@qgtlaw.com
MO Lawyers Weekly: michaelh@mesjassociates.com, slauck@molawyersmedia.com
West Publishing: us.coa.8@content.thomsonreuters.com

**Notice will be mailed to:**

Ms. Emily E. Hughes
MILLER LAW FIRM
Suite 300
950 W. University Drive
Rochester, MI 48307

The following document(s) are associated with this transaction:
**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/HillaryGrupe_201787_5085210_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=10/08/2021] [FileNumber=5085210-1]
[88a994714aa627d2f75a08961746be2a3eb5e1dc6c9a658de4cc9b7eff5539d89eb911fa146cb06c647d7b71c54d2ac2955ce3c80e2ac68717ff1c1c1371f3f1]]
**Recipients:**

- Mr. Nickolas W. Allen
- Ms. Sharon S. Almonrode
- Mr. James F. Bennett
- Mr. Donald M. Brown
- Mr. Vincent O. Chadick
- Ms. Tammy H. Downs, Clerk of Court
- Mr. Craig Richard Heidemann
- Ms. Emily E. Hughes
- Mr. Quincy Byrum Hurst, Jr.
- Mr. William Kalas
- Mr. Michael W. McTigue, Jr.
- Ms. Meredith C. Slawe
- Mr. John E. Tull, III

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/HillaryGrupe_201787_5085210_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=10/08/2021] [FileNumber=5085210-2]
[ca5ed2f15230493434d470ecf9c3710f95b73872c2207987e416ad5e70b84702b7eb69bfaf3157598e3e018229b4b1d667503f54a0f622b3a037da73c17f0928]]
**Recipients:**

- MO Lawyers Weekly
- West Publishing

**Document Description:** Published Signed Opinion
**Original Filename:** 201787P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=10/08/2021] [FileNumber=5085210-0]
[b9bbeeb168f1796e7c075bb67b725f9069c8eb951ff5d035d4e69767c743e0248297b8f7764fd6a7bf951c48ef5398ce327294af2b79977959cba3cc5b4cb949]]


The following information is for the use of court personnel:


**DOCKET ENTRY ID:** 5085210
**RELIEF(S) DOCKETED:**
  to Consolidate
  for Calendar
  for publication
**DOCKET PART(S) ADDED:** 6867391, 6867392, 6590019, 6595146, 6867393